## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01946-MEH

**LISA COWLES**, a citizen of Wisconsin,

Plaintiff,

v.

**BONSAI DESIGN LLC**, a Colorado limited liability company with its principal place of business in Colorado and with three members, who citizens of Colorado and/or citizens of North Carolina;
**BONSAI DESIGN, INC.**, a Colorado corporation with its principal place of business in Colorado;
**BONSAI VENTURES, INC.**, a Colorado corporation with its principal place of business in Colorado;
**VAIL RESORTS, INC.**, a Delaware corporation with its principal place of business in Colorado;
**VAIL RESORTS HOLDINGS, INC.**, a Colorado corporation with its principal place of business in Colorado;
**THE VAIL CORPORATION**, a Colorado corporation with its principal place of business in Colorado;
**VAIL RESORTS MANAGEMENT COMPANY**, a Colorado corporation with its principal place of business in Colorado;
**VAIL RESORTS LODGING COMPANY**, a Delaware corporation with its principal place of business in Colorado;
**VAIL RESORTS DEVELOPMENT COMPANY**, a Colorado corporation with its principal place of business in Colorado;
**VAIL TRADEMARKS, INC.**, a Colorado corporation with its principal place of business in Colorado;
**VAIL SUMMIT RESORTS, INC.**, a Colorado corporation with its principal place of business in Colorado; and
**BRECKENRIDGE RESORT PROPERTIES, INC.**, a Colorado corporation with its principal place of business in Colorado,

Defendants.

## FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Lisa Cowles, by and through her attorneys, and as her First Amended Complaint against the Defendants and each of them, states and alleges as follows:

## INTRODUCTION

1.     This is a product liability action to recover damages suffered by the Plaintiff, Lisa Cowles, arising out of a zip-lining accident on or about July 7, 2017 in Vail, Colorado. On that date, Plaintiff, Lisa Cowles, suffered serious injuries including but not limited to traumatic knee fractures and a traumatic brain injury as a result of the unreasonably dangerous and defective design, manufacture, installation, and maintenance of the "Game Creek" zip-line course in Vail, Colorado. The zip-line course and fixtures, equipment, and components in use on that course on were designed, tested, engineered, manufactured, built, constructed, installed, inspected, maintained, prepared, marketed, owned, and/or operated by the Defendants. Plaintiff, Lisa Cowles, has experienced and continues to experience to date significant pain and suffering, physical disfigurement, and permanent physical impairment as a result of her injuries caused by the Defendants' dangerously defective products and otherwise negligent and unlawful conduct.

## PARTIES

2.     Plaintiff, Lisa Cowles, is a citizen and resident of the State of Wisconsin.

3.     Defendant Bonsai Design LLC is a Colorado limited liability company or business entity with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating zip-line courses and zip-line course components and equipment across the United States including in Colorado.

2

4.     At all relevant times, the members of Defendant Bonsai Design LLC were Thaddeus Shrader, Sarah Shrader, and John Walker.

5.     At all relevant times, all members of Defendant Bonsai Design LLC were citizens and residents of the State of Colorado and/or the State of North Carolina and were domiciled in the State of Colorado and/or the State of North Carolina.

6.     Specifically, at all relevant times, Thaddeus Shrader was domiciled in Grand Junction, Colorado; Sarah Shrader was domiciled in Grand Junction, Colorado and/or Biltmore Lake, North Carolina; and John Walker was domiciled in Ridgway, Colorado.

7.     Defendant Bonsai Design, Inc., is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating zip-line courses and zip-line course components and equipment across the United States including in Colorado.

8.     Defendant Bonsai Ventures, Inc., is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating zip-line courses and zip-line course components and equipment across the United States including in Colorado.

9.     Defendants Bonsai Design LLC, Bonsai Design, Inc., and Bonsai Ventures, Inc., may hereinafter be collectively referred to as "Bonsai," "Bonsai Design," or "the Bonsai Defendants."

10.     Defendant Vail Resorts, Inc., is a Delaware corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering,

3

manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating outdoor recreational facilities across the United States including the Game Creek zip-line course in Vail, Colorado.

11.     Defendant Vail Resorts Holdings, Inc., is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating outdoor recreational facilities across the United States including the Game Creek zip-line course.

12.     Defendant The Vail Corporation is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating outdoor recreational facilities across the United States including the Game Creek zip-line course.

13.     Defendant Vail Resorts Management Company is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating recreational facilities across the United States including the Game Creek zip-line course.

14.     Defendant Vail Resorts Lodging Company is a Delaware corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating recreational facilities across the United States including the Game Creek zip-line course.

4

15.     Defendant Vail Resorts Development Company is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating recreational facilities across the United States including the Game Creek zip-line course.

16.     Defendant Vail Trademarks, Inc., is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating recreational facilities across the United States including the Game Creek zip-line course.

17.     Defendant Vail Summit Resorts, Inc., is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating recreational facilities across the United States including the Game Creek zip-line course.

18.     Defendant Breckenridge Resort Properties, Inc., is a Colorado corporation with its principal place of business in Colorado, and is engaged in the business of designing, testing, engineering, manufacturing, constructing, installing, inspecting, preparing, maintaining, marketing, and/or operating recreational facilities across the United States including the Game Creek zip-line course.

19.     Defendants Vail Resorts, Inc., Vail Resorts Holdings, Inc., The Vail Corporation, Vail Resorts Management Company, Vail Resorts Lodging Company, Vail Resorts Development Company, Vail Trademarks, Inc., Vail Summit Resorts, Inc., and Breckenridge Resort Properties, Inc. may hereinafter be collectively referred to as "Vail" or "the Vail Defendants."

## JURISDICTION AND VENUE

20.     This Court has personal jurisdiction over the Defendants because Defendants have transacted and continue to transact business in Colorado and/or business that is purposefully directed at Colorado and at consumers in Colorado, and because Defendants have committed the tortious acts and omissions complained of herein in the State of Colorado.

21.     Plaintiff claims damages in excess of $75,000 in this action, excluding costs and interest.

22.     This Court is vested with jurisdiction of this action by the diversity statute, 28 U.S.C. § 1332.

23.     This Court is vested with venue of this accident because a substantial portion of the events or omissions giving rise to the claim occurred in this judicial district, making venue appropriate pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### Basic Principles of Zip-Line Design and Operation

24.     "Zip-lines" in one form or another have been used by humans for centuries.

25.     A simple zip-line consists of a pulley suspended on a cable, usually made of stainless steel, that is mounted between two points on a slope.

26.     The zip-line uses gravity to transport cargo or persons down the slope from the top point to the bottom point of the zip-line.

27.     Cargo or persons are attached (or hold onto) the freely moving pulley, which then engages gravity to assist its speed of movement down the slope.

28.     The basic design of zip-lines, and comparable ropeways or aerial cables, has been

6

used as a method of transportation in mountainous areas for centuries.

29.     The use of gravity to assist in the transportation of cargo or persons along the cable is the defining feature of the zip-line and distinguishes zip-lines from other forms of ropeways or aerial cables.

### Rapid Growth of the Commercial Zip-Line Industry

30.     In recent years, zip-lines have been adapted for commercial use in tourism and outdoor recreation in the United States and elsewhere.

31.     Zip-lines built for recreational purposes range from small-scale, low to ground zip-lines in playgrounds to large-scale elevated zip-line courses built high across forested or mountainous terrain.

32.     Commercial zip-line "tours" are now a popular vacation activity, with zip-line courses found at upscale resorts and outdoor adventure camps where they may be included as an element on a larger challenge such as a hike or ropes course.

33.     Commercial zip-lining has seen rapid expansion in recent years with the growth of zip-lining as a popular tourism activity.

34.     In 2000, for example, there were only ten commercial zip-lines operating in the United States.

35.     By 2016, there were more than four hundred commercial zip-lines operating in the United States.

36.     Today, commercial operators like the Vail Defendants may charge hundreds of dollars for a single "tour" down a large-scale zip-line course.

37.     The growth of commercial zip-lining has fueled explosive growth in a cottage industry of companies marketing zip-line design, manufacturing, construction, installation, and

training services, as well as design, engineering, and manufacturing of zip-line equipment, fixtures, and components.

38.     These companies, like Defendant Bonsai Design, have achieved enormous financial success in marketing their services to major resort operators such as the Vail Defendants, securing lucrative contracts to design and build complex, large-scale zip-line courses including all course infrastructure, myriad components and equipment, harnesses for guests, and training programs for zip-line course guides.

39.     The commercial success of zip-line manufacturers like Defendant Bonsai Design has been supported by keeping in-house the design, engineering, and manufacturing of customized zip-line course equipment, fixtures, and components such as trolleys, braking systems, cable clamps, pulling hardware, tower systems, and anchoring attachments.

**Large-Scale Commercial Zip-Line Courses and "Canopy Tours"**

40.     The union of major resort operators like Vail and commercial zip-line manufacturers like Bonsai has fueled the development of larger and larger scale zip-lining courses intended to generate larger and larger profits for the industry.

41.     For example, "canopy tours," as known in the industry, typically provide a route through a forested or mountainous landscape by making primary use of multiple zip-lines and aerial bridges between platforms built into trees or atop fabricated towers.

42.     These large-scale zip-line courses typically involve multiple zip-lines stretching hundreds or even thousands of feet between tower platforms ranging from tens to hundreds of feet above the ground.

43.     The larger scale of such courses typically means that riders are transported at speeds considerably faster than those found on small recreational zip-lines and smaller zip-line courses.

8

44.     As a servicer of major resort operators engaged in developing large-scale zip-line courses to increase tourism revenues in the summer months, Defendant Bonsai has marketed its "flagship" canopy tours featuring multiple zip-lines, adventure elements, and tree- or tower-based platforms capable of "through-putting" in excess of two hundred guests daily.

45.     Similarly, Defendant Bonsai has marketed "Sky Rider" and "Big Zip" course designs incorporating multiple zip-lines stretching up to 5,000 feet in length with other adventure elements such as "sky-bridges," rappels, and swings capable of "through-putting" as many as four hundred paying guests per day.

46.     Bonsai has specifically marketed such large-scale course designs to resort operators like Vail as featuring "quick turn-around times, or 'cycles'" that allow course operators to achieve "high-throughput" [sic] of guests through the course, so as to "elevate [operators'] business to new heights."

47.     In other words, Bonsai has marketed its designs to major resort operators like Vail by highlighting how a large-scale course can allow the course operator to charge hundreds of guests hundreds of dollars each for zip-line tours in a single day, thus generating tens of thousands of dollars in daily revenues during the off-season and summer months.

48.     Canopy tours have developed as a popular form of recreational zip-lining, including at upscale resorts like Vail, alternately being marketed to consumers and tourists as a form of ecotourism and as an adventure sport.

49.     At all relevant times, Defendant Vail characterized the Game Creek course as a "canopy tour" in its submissions to the State of Colorado for a license to operate the course.

### Development of Custom Zip-Lining Equipment for Large-Scale Commercial Zip-Lines

50.     The rapid development of large-scale zip-line courses and canopy tours has spurred

9

equally rapid development of custom zip-line equipment specifically designed to facilitate operation of these large-scale commercial attractions.

51.    Large-scale canopy tours such as the Game Creek zip-line course at Vail, for example, typically make use of a type of pulley with a grooved wheel known as a sheave, with the pulley turning as it travels along, reducing friction and enabling greater speed than would otherwise be possible.

52.    Canopy tours like Game Creek also make use of a zip-line "trolley," which is the frame or assembly housing the pulley that runs along the zip-line cable.

53.    On a canopy tour like Game Creek, the trolley is typically attached to a harness or seat that attaches to the pulley by a pivoting link or carabiner which secures the load, allowing the rider to travel down the zip-line while suspended from the trolley.

54.    Zip-line manufacturers like Bonsai have developed customized sheaves, trolleys, harnesses, and related zip-lining gear specifically for use on large-scale zip-line courses featuring longer zip-lines and faster rider speeds, like the Game Creek zip-line course.

55.    Zip-line manufacturers like Bonsai have also developed various braking systems and applications specifically for use on such large-scale zip-line courses featuring longer zip-lines and faster rider speeds.

56.    At all relevant times, for example, Bonsai marketed various custom designed and manufactured braking system components including, for example, its "All-Stop terminus block," "Butterfly brake shuttle," single and twin-line "EAD system[s],"[1] "Sky-Rider brake bobbin," and "Zip E-Brake."

57.    At all relevant times, Bonsai's marketing materials for its canopy tour, "Sky Rider,"

---

[1] "EAD" stands for "emergency arrest device."

10

and "Big Zip" course designs similarly touted its customized "mechanized brake systems," "redundant braking systems," "redundant failsafe back-ups for braking systems," optional hand-brakes, and "the most technologically advanced braking systems in the industry."

58.   At all relevant times, Bonsai marketed these and other braking system components as providing redundancy in braking systems integrated into its course designs so as "eliminate" the possibility of "patron-to-structure contact," i.e., riders crashing at high speeds into towers, platforms, equipment, fixtures, and other obstacles on a zip-line course.

59.   Upon information and belief, at all relevant times, Bonsai had a practice of designing, engineering, and manufacturing additional custom braking systems and braking system equipment and components and then integrating those systems, equipment, and components into its large-scale course designs for commercial clients like Vail.

**Safety Risks and Hazards With Commercial Zip-Lines**

60.   The explosive growth of the commercial zip-line industry has occurred in the absence of consistent or coordinated regulatory oversight.

61.   The relative lack of regulatory oversight combined with the increasing scale of zip-line course design has created new and enhanced safety risks and hazards attendant to recreational zip-lining, especially on large-scale courses and canopy tours like Game Creek, including risks and hazards associated with the construction of tall zip-lines and zip-line tower platforms, high-speed zip-lines, zip-lines of thousands of feet in length, and zip-lines integrating customized braking systems and braking system equipment and components.

62.   As the commercial zip-line industry has grown in the United States, so has the rate of serious injuries and deaths on commercial zip-line courses. According to a 2015 study from the American Journal of Emergency Medicine, emergency room visits for zip-line injuries in the

United States increased from a few hundred in 1997 to more than 3,600 in 2012, with the total number of injuries estimated at 16,850. Another study found that almost twelve percent of injuries involved serious fractures or other injuries requiring hospitalization and that seven percent involved traumatic brain injuries.

63.    Accidents and injuries on commercial zip-line courses have been widely reported in the news media and well-known in the industry for years. Dozens of zip-lining injuries and deaths have been reported in the news media in recent years including, by way of example only, fatal accidents on a Delaware zip-line course in August, 2016; on a zip-line course at a Utah ski resort in May, 2016; on another Utah course in July, 2015; on a North Carolina course in June, 2015; on Hawaii zip-line course in May, 2014; and at another Hawaii zip-line course in September, 2011.

### Development and Construction of the Game Creek Zip-Line Course

64.    Upon information and belief, prior to April, 2015, Defendant Bonsai contracted with the Vail Defendants to design and build the Game Creek zip-line course in the Game Creek bowl on the back side of Vail Mountain.

65.    Vail's Game Creek project was part of its push to grow its ski resort operations by expanding off-season recreational opportunities including zip-lines, adventure courses, and alpine coasters at its ski resort properties across the United States.

66.    Vail marketed the Game Creek project as the "crown jewel" of its Epic Discovery development, a mountaintop attraction which included adventure courses and alpine coasters on Vail Mountain and was intended to generate more tourism and revenue on Vail's ski property in the off-season months.

67.    The Game Creek contract was part of Bonsai's concerted effort to break into large-scale zip-line course design and construction at Vail Resorts properties across the United States

including Vail, Breckenridge, Heavenly ski area in Nevada, and Snowbasin resort in Utah.

68.    Landing the Game Creek contract was a huge commercial opportunity for Bonsai.

69.    Upon information and belief, Vail commissioned Bonsai to design a large-scale, canopy tour-style zip-line course traveling across and down the Game Creek bowl, featuring an array of zip-lines and aerial bridges suspended among multiple landing platforms constructed atop elevated towers.

70.    Upon information and belief, Vail retained authority under the Defendants' agreements to provide specifications for the design of the course and fixtures, equipment, and components used on the course, and to approve and ratify the same.

71.    Bonsai designed the Game Creek course to include a total of at least seven ziplines spanning a total of approximately 10,000 feet.

72.    Bonsai designed the Game Creek course to include one zip-line more than a half mile in length, another that propelled guests at speeds of fifty to sixty miles per hour, and another that carried guests approximately 300 feet above the ground.

73.    Upon information and belief, Bonsai's contract for the Game Creek project included designing the entire course and all course fixtures, equipment, and components; designing, engineering, building, and installing all zip-lines, platforms, and towers on the course; designing, manufacturing, and installing all zip-lining equipment used on the course including but not limited to pulleys, sheaves, trolleys, harnesses, braking systems, and braking system equipment and components; and providing training to resort employees and operational support including maintenance and inspection of the course and all course fixtures, equipment, and components including but not limited to braking systems and braking system equipment and components.

74.    Upon information and belief, the value of Bonsai Design's Game Creek contract

with Vail was well into seven or eight figures.

75.    Upon information and belief, the Game Creek project was the largest or one of the largest zip-line course design and construction project(s) ever undertaken by Bonsai.

76.    Upon information and belief, the Game Creek contract was the largest or one of the largest commercial contract(s) and/or a part of one of the largest commercial contract(s) ever secured by Bonsai.

77.    Upon information and belief, Bonsai Design completed work on the Game Creek zip-line course in 2015.

78.    Vail obtained a license from the State of Colorado to commercially operate the Game Creek zip-line course in 2015.

79.    Vail opened the Game Creek zip-line course to the public in July, 2016.

80.    Vail subsequently contracted with Bonsai Design to design and build additional zip-line courses and canopy tours at its other ski resort properties including Breckenridge, Beaver Creek, Heavenly, Snowbasin, and Jackson Hole, as well as additional zip-line and adventure courses at Vail and elsewhere.

### Design and Operation of the Game Creek Zipline Course

81.    Bonsai designed the Game Creek zip-line course to utilize a cable-and-pulley system common to modern, commercial, and large-scale zip-line courses.

82.    Bonsai's design included a pulley encased inside a trolley that attached to a free-spinning harness or seat in which a guest would be secured.

83.    Bonsai's design called for guests to travel down the zip-line while suspended from the trolley by the harness or seat.

84.    Bonsai's design was for guests to travel down individual zip-lines suspended

between elevated platforms constructed on top of towers built by Bonsai around the course.

85.    Guests would travel from a platform at the top end of the zip-line to a platform at the bottom end of the zip-line, utilizing gravity to carry them down the line.

86.    Some towers were designed and built with platforms that secured the bottom end of one zip-line and the top end of another zip-line.

87.    Other towers were designed and built with platforms that secured the top or bottom end of a single zip-line and were then connected to other zip-line towers by rope-bridges, belaying stations, and similar "adventure" features.

### Defendants' Braking Systems on the Game Creek Zip-Line Course

88.    Safe operation of Bonsai's design required braking systems to slow and stop guests coming down a zip-line towards a platform.

89.    Bonsai's design included a braking system of its own design.

90.    Bonsai designed, engineered, manufactured, and installed all fixtures, equipment, and components of the braking system that were used on the Game Creek zip-line course.

91.    Bonsai's design did not include hand brakes.

92.    Bonsai's design did not include any braking equipment or components that could be controlled by a guest on the zip-line.

93.    Bonsai's design did not include any means by which a guest could stop themselves on approach to a landing platform.

94.    Under Bonsai's design, guests on the Game Creek course depended entirely on properly functioning braking systems and braking system equipment and components to stop their forward motion towards the braking equipment, platform, tower, fixtures, and end of the zip-line cable.

95.   Bonsai's design placed all control over the braking system and braking system equipment and components with the course operator and guides charged with accompanying and guiding guests down the zip-line course.

## Defendants' Operation of the Game Creek Zip-Line Course

96.   Bonsai provided training and operational support as part of the Game Creek project including but not limited to maintenance and inspection of the course and all course fixtures, components, and equipment including but not limited to braking systems.

97.   Upon information and belief, Bonsai shared responsibility with Vail for developing and implementing policies and procedures for safe operation of the Game Creek zip-line course.

98.   Upon information and belief, such policies and procedures included but were not limited to policies and procedures for "sending" guests down the zip-line and for "receiving" guests coming down the zip-line.

99.   Upon information and belief, such policies and procedures included but were not limited to policies and procedures for re-setting, re-positioning, and re-securing braking system equipment and components after one guest was received from the zip-line and before the next guest was sent down the zip-line.

100.   Upon information and belief, such policies and procedures included but were not limited to policies and procedures requiring guides to maintain constant radio communications while on the course and during all course operations including as it relates to sending and receiving zip-line guests.

101.   Upon information and belief, guides on the platforms at the top and bottom of the zip-line were required to radio each other to advise when a guest had been received and removed from the line at the bottom platform, when the braking system and braking system equipment and

components had been re-set, re-positioned, and re-secured on the zip-line, and when it was safe for the guide on the top platform to be sent down the zip-line.

102.   The design of Bonsai's braking system equipment and components required guides on the course to re-set, re-position, and re-secure the equipment and components on the zip-line after receiving a guest at the bottom platform.

103.   The design of Bonsai's braking system equipment and components required guides on the course to re-set, re-position, and re-secure the braking equipment and components on the zip-line before another guest was sent down the zip-line from the top platform.

104.   Re-setting the equipment and components entailed, *inter alia*, re-positioning and re-securing the equipment and components in the proper position so that the equipment and components were ready to successful slow, stop, and arrest the forward motion of a guest coming down the zip-line.

105.   Bonsai and/or Vail equipped the braking system equipment and components on each of the Game Creek zip-lines with red or orange "flags" showing that the equipment and components were properly set and positioned to receive and stop a guest coming down the zip-line.

106.   Under the Defendants' policies and procedures, guides on the Game Creek zip-line course were required to instruct guests to look for the red or orange flag showing the braking system was properly set and positioned on their approach towards the equipment and platform.

107.   The design of Bonsai's braking system equipment and components was such that the equipment and components could fail to properly slow, stop, or arrest the forward motion of a guest if not properly and timely re-set, re-positioned, and/or re-secured in place before a guest was sent down the zip-line.

108.   The design of Bonsai's braking system equipment and components was such that the equipment and components would allow a guest to crash into the equipment, components, and other fixtures at the bottom end of the line if not properly and timely re-set, re-positioned, and/or re-secured in place before a guest was sent down the zip-line.

109.   Upon information and belief, any redundancies built into Defendants' braking systems and/or braking system equipment and components would fail to stop, slow, or arrest the forward motion of a guest if braking system equipment and components were not properly and timely re-set, re-positioned, and/or re-secured before a guest was sent down the zip-line.

110.   At all relevant times, Defendants knew or should have known of these and other safety risks and hazards attendant to the design and operation of their braking systems and braking system equipment and components.

### Plaintiff's Zip-Line Tour on Defendants' Game Creek Zip-Line

111.   Plaintiff, Lisa Cowles, and her husband traveled to Vail from their home in Wisconsin for a short summer vacation in early July, 2017.

112.   On July 7, 2017, Mrs. Cowles and her husband paid for a zip-lining tour on the Game Creek zip-line course.

113.   On that date, Mrs. Cowles's and her husband's tour was supposed to begin at 1:30 p.m. but was delayed due to inclement weather in the area and/or due to the large number of guests who had signed up for zip-lining tours.

114.   After the delay, Mrs. Cowles and her husband were told that their tour was a "go."

115.   Mrs. Cowles and her husband were then provided with zip-lining gear including a harness and helmet and provided short instruction on how to use that gear by Vail and/or Bonsai employees and guides.

18

116.   Mrs. Cowles and her husband were then led from the lodge atop Vail Mountain to the first tower on the Game Creek zip-lining course.

117.   Mrs. Cowles and her husband were led to the course as part of a group of six to eight guests.

118.   The group was led by two guides.

119.   Upon information and belief, at all relevant times, the two guides were employees and/or agents of the Vail Defendants and/or the Bonsai Defendants and were acting within the course and scope of their employment and/or within their actual or apparent authority as agents of the Defendants.

## Defendants Instruct and Guide Plaintiff Through the First Three Zip-Lines on the Game Creek Zip-Line Course

120.   On the platform atop the first tower, the two guides provided additional instruction to Mrs. Cowles, her husband, and the rest of the group.

121.   At that time, the two guides instructed the group on how to launch down the zip-line from the platform and what to expect as they neared the next platform at the bottom of the zip-line.

122.   At that time, the two guides instructed the group to look for a red or orange flag atop the braking system equipment and components as they approached the landing platform at the bottom of the zip-line.

123.   The two guides instructed the group to then look for the guide waiting at the landing platform and to look for the guide giving certain arm and/or hand signals.

124.   The two guides instructed the group that certain arm and/or hand signals meant the guest should try to gain speed by tucking into a cannonball-type position.

125.   The two guides instructed the group that certain other arm and/or hand signals meant

the guest should try to slow down by stretching out their body into a wider position including extending and spreading their legs.

126.   The two guides repeatedly instructed the group to "trust the equipment" and reassured them that the braking system equipment and components would stop them at the bottom of the zip-line.

127.   The two guides repeatedly instructed the group to "trust the equipment" and reassured them that the braking system equipment and components would stop them at the bottom of the zip-line regardless of their body position on approaching the bottom of the zip-line.

128.   The two guides, as well as other supervisors, guides, and personnel at Vail, repeatedly instructed Mrs. Cowles, her husband, and other guests on the course and in the lodge to "trust the equipment" on July 7, 2017.

129.   The two guides also repeatedly instructed Mrs. Cowles, her husband, and the group that they might not have enough momentum on approaching the platform at the bottom of a zip-line to actually reach the platform and that they could wind up stopping short of the platform if they did not have sufficient momentum to reach the platform.

130.   The two guides repeatedly advised Mrs. Cowles, her husband, and the group that "someone would have to come out [onto the zip-line] to get them" if their momentum failed to carry them all the way to the platform and were stopped short of the platform.

131.   The two guides repeatedly advised Mrs. Cowles, her husband, and the group that "someone would have to come out [onto the zip-line] to get them" if they stopped short of the platform.

132.   After providing instruction to the group, one of the two guides clipped their harness onto the trolley and launched down the first zip-line from the first tower towards the second tower.

133.   After receiving an "all clear" by radio from the first guide, the second guide then sent each member of the group down the first zip-line from the first tower towards the second tower.

134.   Each guest in the group was sent down the first zip-line and received at the second tower.

135.   The second guide then traveled down the first zip-line and was received at the second tower.

136.   Throughout this entire procedure, the two guides were supposed to remain in constant radio contact so as to advise each other when a guest had been received, when the braking system had been re-set, re-positioned, and re-secured such that another guest could be safely sent, and when another guest had been sent down the zip-line.

137.   After completing the first zip-line, the two guides led the group to the second zip-line and sent and received each guest down that line in similar fashion and without apparent incident.

138.   The two guides then led the group to the third zip-line and sent and received each guest down that line in similar fashion and without apparent incident.

### Defendants Temporarily Suspend Zip-Line Tour Operations on the Game Creek Zip-Line Course Due to Inclement Weather

139.   The guides were then contacted by the course supervisor via radio and instructed to suspend operations and return with the group to the lodge due to lightning in the area.

140.   The guides led the group down off the tower and to a waiting vehicle which drove the group back to the lodge atop Vail Mountain.

141.   The group did not complete the fourth zip-line on the course before being guided back to the lodge.

21

142.   Upon returning to the lodge, Mrs. Cowles and her husband joined a larger group of other guests waiting to see whether the tour would be resumed after the weather cleared.

143.   Upon returning to the lodge, Mrs. Cowles and her husband did not see the two guides again during the remainder of their day on the zip-line course.

144.   Upon returning to the lodge, Mrs. Cowles and her husband assumed their zip-line tour was over due to inclement weather.

145.   Shortly after returning to the lodge, however, the course supervisor advised Mrs. Cowles, her husband, and other waiting guests that they had the option to either end their tour, take the gondola down to the base area, and obtain a fifty percent refund or to be led back out onto the course and to resume their tour being guided down the remaining zip-lines.

146.   Upon information and belief, at all relevant times, the course supervisor was an employee and/or agent of the Vail Defendants and/or the Bonsai Defendants and was acting within the course and scope of his employment and/or within his actual or apparent authority as an agent of the Defendants.

147.   Mrs. Cowles and her husband elected to be led back out onto the course and to resume their tour being guided down the remaining zip-lines on the Game Creek course.

148.   A number of other guests waiting in the lodge also elected to be led back out onto the course and to resume their tours being guided down the remaining zip-lines.

149.   The course supervisor then advised Mrs. Cowles, her husband, and the other guests that they would be led down the remaining zip-lines one at a time rather than in small groups as had been done during the first half of the tour.

150.   The course supervisor advised Mrs. Cowles, her husband, and the other guests that they were not to wait for other guests on the platform after being received from the zip-line, as had

been done during the first half of the tour, but were to proceed immediately to the next zip-line, where they would then be sent down the zip-line by a waiting guide.

151. Mrs. Cowles and her husband then observed the course supervisor instructing the guides waiting in the lodge that they were each going to be stationed at individual tower platforms along the remaining zip-lines, where they would send and receive guests one at a time, rather than being assigned to accompany and guide a small group of guests down the remaining zip-lines on the course as had been done during the first half of the tour.

152. Mrs. Cowles and her husband observed that some of the waiting guides appeared confused by this instruction.

153. Mrs. Cowles and her husband observed that some of the waiting guides appeared confused as to what radio channel or channels they were supposed to use in communicating with other guides while stationed on the platforms connecting the remaining zip-lines and while sending and receiving guests down the remaining zip-lines.

154. At no time did the course supervisor or any other employee or agent of the Defendants tell Mrs. Cowles or her husband that ordinary course operation procedures would be disregarded during their resumed tour down the Game Creek zip-line course.

155. At no time did the course supervisor or any other employee or agent of the Defendants tell Mrs. Cowles or her husband that the guides sent back out onto the course might be tasked with continuing course operations under procedures with which they were not familiar or trained or as to which they were confused.

156. At no time did the course supervisor or any other employee or agent of the Defendants tell Mrs. Cowles or her husband that the guides might be tasked with or otherwise asked or made to send guests down the zip-lines without first obtaining or receiving radio

confirmation that the braking system and braking system equipment and components had been safely re-set, re-positioned, and re-secured at the bottom of the zip-line.

**Defendants Resume Zip-Line Tour Operations on the Game Creek Zip-Line Course Including Plaintiff's Zip-Line Tour**

157.   Mrs. Cowles and her husband were then led from the lodge to the next tower on the Game Creek course with a group of ten to twelve other guests.

158.   Mrs. Cowles, her husband, and the other guests were led to the platform atop the tower by a single guide, who then began sending guests down the next zip-line one at a time as instructed by the course supervisor.

159.   Upon information and belief, this was the longest zip-line on the Game Creek course.

160.   Upon information and belief, this zip-line was approximately one-half mile in length.

161.   The zip-line was designed to travel through a cluster of trees before it emerged from the trees just before a tower landing platform at the bottom of the zip-line.

162.   The cluster of trees obscured the view of the platform at the bottom of the zip-line from the platform at the top of the zip-line, and vice versa.

163.   A guide or guest standing on the platform at the top of the zip-line could not see the platform at the bottom of the zip-line due to the distance and the cluster of trees between the top platform and the bottom platform, and vice versa.

164.   As the guide began to send the other guests in the group down the zip-line, Mrs. Cowles and her husband did not observe the guide regularly using radio communications to obtain confirmation from the guide waiting at the bottom of the zip-line that a guest had been received at the bottom platform or that it was safe to send the next guest down the zip-line.

24

165.   As the guide began to send the other guests in the group down the zip-line, Mrs. Cowles and her husband did not observe the guide regularly waiting for a radio communication from the guide at the bottom tower that the braking system and braking system equipment and components had been re-set, re-positioned, and re-secured such that it would be safe to send the next guest down the zip-line.

166.   The guide on the platform sent each of the other guests down the zip-line, one at a time, leaving Mrs. Cowles and her husband as the last two guests waiting on the platform.

167.   As the guide sent the other guests down the zip-line, Mrs. Cowles and her husband observed the guide asking guests if they "wanted a push" to get them started down the zip-line.

168.   Mrs. Cowles and her husband observed some guests answering that they "wanted a push" and receiving a "push" from the guide as they started off the platform down the zip-line including a young girl.

169.   The guide advised Mrs. Cowles and her husband that this was the longest and slowest zip-line on the entire Game Creek course.

170.   Mrs. Cowles thus anticipated that the zip-line would be slower or, at most, approximately the same speed as the other zip-lines she had been guided down earlier in the day.

171.   While clipping Mrs. Cowles's harness onto the trolley, the guide asked Mrs. Cowles if she wanted a "push" to get her started down the zip-line.

172.   Mrs. Cowles declined the guide's offer.

173.   The guide also advised Mrs. Cowles to be ready to tuck into a cannonball-type position if it appeared on her approach to the bottom tower that she was not going to have enough momentum to reach the platform at the end of the zip-line.

174.   The guide then sent Mrs. Cowles down the zip-line.

25

## Plaintiff Suffers Serious and Permanent Injuries in the
## Subject Zip-Line Accident

175.   Upon emerging from the trees near the bottom of the zip-line, Mrs. Cowles found herself traveling down the zip-line at a much faster speed than she had anticipated and been informed by the guide.

176.   Upon emerging from the trees near the bottom of the zip-line, Mrs. Cowles found the bottom tower approaching at a much faster rate than she had anticipated and been informed by the guide.

177.   Upon emerging from the trees near the bottom of the zip-line, Mrs. Cowles looked for the red or orange flag on the braking system equipment and components as previously instructed by the guides throughout the day.

178.   Upon emerging from the trees near the bottom of the zip-line, Mrs. Cowles looked for the red or orange flag on the braking system equipment and components as previously instructed by the guides throughout the day but could not see a flag.

179.   At that time, Mrs. Cowles looked for the guide on the bottom platform giving her the arm and/or hand signals discussed by the guides earlier that day.

180.   At that time, Mrs. Cowles observed that the guide on the bottom platform was not giving her the arm and/or hand signals discussed by the guides earlier that day.

181.   Instead, Mrs. Cowles saw the guide jumping up and down and waving his arms.

182.   At that time, it appeared to Mrs. Cowles that the guide was trying to verbally call out to her as well.

183.   At that time, Mrs. Cowles could not hear what the guide was saying.

184.   At that time, Mrs. Cowles realized she was going to collide with the braking system equipment and components on the zip-line at a high rate of speed.

185.   At that time, Mrs. Cowles braced herself for the impact.

186.   At that time, Mrs. Cowles was confident that she would be fine if she "trusted the equipment" to safely stop her as previously instructed by the guides throughout the day.

187.   As she approached the bottom tower, Mrs. Cowles observed the guide on the platform running and/or jumping out of the way to avoid being struck as she approached the platform at a high rate of speed.

188.   Mrs. Cowles then collided with the first component of the braking system on the zip-line at a high rate of speed.

189.   The first component of the braking system failed to slow, stop, or arrest Mrs. Cowles' momentum down the zip-line.

190.   The first component of the braking system appeared to break, fail, or explode as Mrs. Cowles struck it.

191.   After striking the first component of the braking system, Mrs. Cowles continued down the zip-line towards the remaining components of the braking system and towards the tower and landing platform at a high rate of speed.

192.   Mrs. Cowles then collided with other components of the braking system and/or with the tower, landing platform, and/or other fixtures, equipment, or components on the zip-line at a high rate of speed.

193.   The impact of Mrs. Cowles's crash was so powerful as to be audible to her husband and the guide waiting at the top tower approximately one half-mile up the zip-line.

194.   The impact of Mrs. Cowles's crash was so powerful as to cause the entire zip-line and the top tower to shake and/or sway approximately one half-mile away.

195.   Mrs. Cowles suffered significant injuries as a result of colliding with the braking

system equipment and course fixtures including but not limited to a type 1 open patellar fracture, traumatic right knee arthrotomy, sprained right ankle, sprained left great toe, multiple bruises, lacerations, and abrasions to her legs and face, and a concussion and traumatic brain injury.

196.   Immediately after the crash, Mrs. Cowles and her husband both heard the guide on the bottom tower platform screaming into the radio that Mrs. Cowles's braking equipment had "exploded" when she hit it.

197.   Immediately after the crash, Mrs. Cowles and her husband both heard the guide on the bottom tower platform screaming into the radio, "do not send next zip-liner," or words to that effect.

198.   Mrs. Cowles was belayed down from the tower platform to the ground and transported by gurney to a waiting ATV, which drove her to the top of the gondola where she was met by her husband.

199.   Mrs. Cowles and her husband were transported by gondola down to the base area at Vail, where an ambulance took Mrs. Cowles to a local hospital to receive emergency medical care for her injuries.

200.   Mrs. Cowles was subsequently admitted to a local hospital for emergency knee surgery and spent several days there before being released to fly back home to Wisconsin.

### Vail Conducts an Internal Post-Incident Investigation but Fails to Share Complete or Accurate Information as to the Cause of the Subject Accident with State Regulators

201.   Pursuant to Colorado law, Vail was required to obtain a license to operate the Game Creek zip-line course from the Division of Oil and Public Safety – Amusement Rides and Devices Program, within the Colorado Department of Labor and Employment.

202.   As a condition of its licensure by the State of Colorado, Vail was required to report

Mrs. Cowles's injury event to state authorities within 72 hours of learning of her injury. *See* 7 CCR 1101-12:4-1.

203.   Vail completed and submitted an injury report to the Division on or about July 10, 2017.

204.   Although the Division's "Amusement Rides and Devices Injury Report" form required amusement operators like Vail to state on the form "what happened to cause the injury," Vail failed to include any such information on the form it submitted to the Division on July 10, 2017.

205.   Upon information and belief, Vail never provided complete or accurate information to the Division concerning the cause of the subject accident.

206.   Upon information and belief, the Division subsequently deemed further investigation of the cause of the subject accident "unnecessary" both because it lacked the resources to undertake such an investigation and because of Vail's stonewalling and refusal to be forthcoming with complete and accurate information as to the cause of the subject accident.

207.   Upon information and belief, Vail initiated its own internal investigation into the cause of the accident within approximately one day of Mrs. Cowles's injuries.

208.   Upon information and belief, Vail brought representatives of Defendant Bonsai into its internal investigation of the cause of the accident within several weeks of Mrs. Cowles's injuries.

209.   Upon information and belief, Vail and Bonsai did not share complete and accurate information concerning the results of their internal investigation with state regulators.

210.   Upon information and belief, Vail was never issued a notice of violation by the State of Colorado or subjected to any enforcement action by the State of Colorado.

211.   Upon information and belief, Vail closed down and did not reopen the Game Creek zip-line course for the remainder of the 2017 summer tourism season.

212.   Upon information and belief, the closing of the Game Creek zip-line course cost Vail millions of dollars in lost revenue during the 2017 summer tourism season.

213.   Upon information and belief, the closing of the Game Creek zip-line course ultimately resulted in the replacement of all braking system equipment and components on the entire Game Creek course.

### Vail's Post-Incident Communications with Plaintiff and Her Husband

214.   Mrs. Cowles's husband was contacted by a representative of Vail within one to two months of Mrs. Cowles's injuries in the subject accident of July 7, 2017.

215.   Vail's representative asked the Cowles to provide medical records, medical bills, and updated information on Mrs. Cowles's injuries and medical treatment, which was ongoing for months after the subject accident (and which is still ongoing to date).

216.   From that time and continuing for a period of at least six to seven months thereafter, the Cowles obliged Vail's request and sent all information and documents requested by Vail's representative.

217.   Over the next several months, Vail's representative repeatedly indicated to the Cowles that Vail would be assuming responsibility for the accident and was prepared to compensate Mrs. Cowles for her injuries in that accident.

218.   Over the next several months, Vail's representative repeatedly advised Mrs. Cowles and her husband that Vail would "take care of everything" and that Mrs. Cowles "did not do anything wrong" to cause the subject accident.

219.   In or about August, 2018, Vail's representative advised Mrs. Cowles that Vail had

30

determined that the accident was caused by defective braking system equipment designed and manufactured by Bonsai and that Vail was not responsible for the accident or her injuries.

220.   At that time, Vail's representative advised Mrs. Cowles that Vail was "tendering the claim" to Bonsai and provided Mrs. Cowles with contact information for an insurance adjuster representing Bonsai's liability insurance carrier.

221.   Upon information and belief, the internal investigation of the subject accident initiated by Vail and later joined by Bonsai was inconclusive as to the cause of the accident, with Vail and Bonsai failing to reach agreement as to the cause of the accident and effectively blaming one another for the accident.

222.   Upon information and belief, Vail approved and ratified the conduct of its guides, supervisors, and employees involved in the subject accident as part of its internal investigation.

223.   Upon information and belief, Bonsai maintained that one or more of Vail's guides, supervisors, and employees bore responsibility for causing the subject accident.

224.   Upon information and belief, Vail re-opened the Game Creek zip-line course in time for the 2018 summer tourism season.

225.   Upon information and belief, the Game Creek zip-line course may have generated tens of millions of dollars from resumed operation since Mrs. Cowles's injuries in the subject accident of July 7, 2017.

226.   As noted above, Bonsai continues to design and build outdoor recreational attractions for major resort clients like Vail including large-scale zip-lining courses and canopy tours at Vail ski resort properties throughout the United States.

227.   Some of the allegations herein have been made and/or may be perceived to have been made in the alternative. *Accord* Fed. R. Civ. P. 8(d)(2). Plaintiff will elect which claims and

31

allegations she intends to pursue before the time of trial.

## COUNTS AGAINST BONSAI DEFENDANTS

### COUNT I
### Strict Liability v. Bonsai Defendants

228.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

229.   At all relevant times, the Bonsai Defendants were in the business of designing, engineering, testing (or failing to adequately test), manufacturing, constructing, building, installing, maintaining, preparing, and/or inspecting zip-line courses and zip-line equipment and components including but not limited to the Game Creek course, and including but not limited to the braking system equipment and components used on the subject zip-line where Mrs. Cowles's accident occurred on July 7, 2017.

230.   The Bonsai Defendants designed, engineered, tested (or failed to adequately test), manufactured, constructed, built, installed, maintained, prepared, and/or inspected the subject Game Creek zip-line course, all fixtures on the course such as zip-lines, towers, and platforms, and all zip-line equipment and components used on the course on the date of Mrs. Cowles's zip-line accident, including but not limited to all braking systems and braking system equipment and components.

231.   At the time the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were sold and left the control of the Bonsai Defendants, they were defective and unreasonably dangerous to a person who might reasonably be expected to use them. The subject equipment and components were defective and unreasonably dangerous in one or more respects as set forth elsewhere herein.

232.   The subject zip-line equipment and components, including but not limited to the

32

subject braking system equipment and components, were insufficient to provide reasonable protection to guests on the Game Creek zip-line tour including but not limited to Plaintiff, Lisa Cowles.

233.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, failed to properly slow, stop, and arrest Plaintiff's forward motion down the subject zip-line, allowing her to crash at high speed and causing her to suffer serious and permanent injuries.

234.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably susceptible to failing while being used in their intended manner.

235.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, lacked reasonable resistance to failing during foreseeable use.

236.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were designed and manufactured in a manner that resulted in failure during foreseeable use.

237.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were not appropriate or fit to be used to slow, stop, and arrest riders approaching the bottom of the zip-line or to otherwise protect their safety and protect them from risk of serious injury or death on the course.

238.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably dangerous and defective and not appropriate or fit for their intended use because they lacked a sufficient passive braking

system and a sufficient secondary or emergency braking system.

239.  The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably dangerous and defective and not appropriate or fit for their intended use because they lacked any means for a guest on the course to independently slow or stop themselves so as to avoid a serious accident while on the course.

240.  The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably dangerous and defective and not appropriate or fit for their intended use because they lacked sufficient padding or other protective gear.

241.  The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, lacked adequate warnings regarding their deficiencies and propensity to fail under foreseeable use and conditions.

242.  It is believed that the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, may suffer from additional unspecified defects which will be ascertained and confirmed upon the opportunity to conduct reasonable discovery.

243.  The subject zip-line course was also designed and built by Defendants in an unreasonably dangerous and defective manner.

244.  The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built to cause guests like Plaintiff to arrive at the landing platform at the bottom of a zip-line at an unreasonably fast and dangerous rate of speed.

245.  The subject zip-line course was itself unreasonably dangerous and defective insofar

as it was designed and built in a fashion that deprived guests like Plaintiff of the ability to clearly see and perceive the landing platform at the bottom of a zip-line from a safe distance up the zip-line.

246.   The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built in a fashion that deprived guests like Plaintiff of the ability to clearly see and perceive the braking systems and braking system equipment and components at the bottom of a zip-line from a safe distance up the zip-line.

247.   The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built in a fashion that deprived guests like Plaintiff of the ability to independently slow, stop, and arrest their speed on approaching a landing platform at the bottom of a zip-line.

248.   At the time the subject zip-line course was sold and left the control of the Bonsai Defendants, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it.

249.   At the time of the subject accident, the subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, were being used in a manner and fashion that was foreseeable to the Bonsai Defendants and in a manner in which they were intended to be used.

250.   The subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, were defective and unreasonably dangerous because their design, construction, manufacturing and/or installation processes created a risk of harm to persons which would not ordinarily be expected and which was not outweighed by the benefits to be achieved by their design.

251.  Lisa Cowles was a person who would reasonably be expected to use or be affected by the subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components.

252.  The subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, suffered a catastrophic failure to slow, stop, and arrest a foreseeable user's forward motion down the zip-line at foreseeable speeds, causing Lisa Cowles to crash and causing serious and permanent injuries to Lisa Cowles.

253.  Defects in the subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, caused the crash that permanently injured Lisa Cowles.

254.  As a direct and proximate result and consequence of the conduct of the Bonsai Defendants, and the defective and unreasonably dangerous nature of their products, Plaintiff, Lisa Cowles suffered injuries, damages, and losses as described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

### COUNT II
### Negligence v. Bonsai Defendants

255.  Plaintiff incorporates all other allegations in this complaint as if set forth herein.

256.  At all relevant times, the Bonsai Defendants were in the business of designing, engineering, testing (or failing to adequately test), manufacturing, constructing, building, installing, maintaining, preparing, and/or inspecting zip-line courses and zip-line equipment and components including but not limited to the Game Creek course, and including but not limited to the braking system equipment and components used on the subject zip-line where Mrs. Cowles's

36

accident occurred on July 7, 2017.

257.  At all relevant times, the Bonsai Defendants had a duty to design, engineer, test, manufacture, construct, build, install, maintain, prepare, and inspect their zip-line courses and zip-line equipment and components, including but not limited to zip-lines, towers, platforms, zip-line course equipment and components, and braking system equipment and components, so that the zip-lines, towers, platforms, equipment, and components would be resistant to failure which the Defendants knew would pose serious risks to consumers using the equipment and components.

258.  At all relevant times, the Bonsai Defendants had a duty to ensure that the subject zip-line course and all fixtures, equipment, and components in use on the course would effective slow down, stop, and arrest the forward motion of guests down the zip-lines before they were subjected to a potentially injurious impact, including but not limited to crashes at unreasonably dangerous and fast speeds.

259.  The Bonsai Defendants' duties in this regard were especially critical because their design of the subject zip-line course, fixtures, equipment, and components did not provide guests on the course with any means to slow or stop themselves.

260.  The Bonsai Defendants were negligent in failing to exercise reasonable care to prevent the design of the subject zip-line course from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by the course while it was being used in a manner the Defendants might reasonably have expected.

261.  The Bonsai Defendants were negligent in failing to exercise reasonable care to prevent the subject zip-line course equipment, including but not limited to braking systems and braking system equipment and components, from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by the equipment and components while

they were being used in a manner the Defendants might reasonably have expected.

262.  Lisa Cowles is in that class of persons whom the Bonsai Defendants should reasonably have expected to use or be affected by the subject zip-line course and subject zip-line equipment and components including but not limited to the subject braking system equipment and components.

263.  The Bonsai Defendants were negligent in failing to exercise reasonable care to warn users of the subject zip-line course and subject zip-line equipment and components of the risk of harm associated with the foreseeable use of that course and the equipment and components.

264.  At the time the subject zip-line course was designed and built, the Bonsai Defendants were aware of the importance and need for proper design and construction of the course including but not limited to location and placement of zip-lines, towers, and platforms.

265.  At the time the subject zip-line equipment and components were designed, engineered, manufactured, and installed on the Game Creek course, including but not limited to the subject braking system equipment and components, the Bonsai Defendants were aware of the importance and need for proper design, manufacture, and installation of the equipment and components.

266.  At the time the subject zip-line course was designed and built and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were designed, engineered, manufactured, and installed on the course, the Bonsai Defendants were aware that failing to properly design and build the course and to design, manufacture, and install the equipment and components on the course would subject users to risk of serious injury or death, including but not limited to serious injury or death resulting from the failure of the equipment or components on the course to prevent serious injury or death.

38

267. At the time the subject zip-line course was designed and built, the Bonsai Defendants were aware of one or more flaws in their design and/or construction of the course, including but not limited to flaws in the placement and positioning of zip-lines, towers, and platforms that could subject foreseeable users to unreasonably high and dangerous speeds and/or deprive them of adequate sightlines and time to avoid a high-speed accident while using the course in its intended manner and for its intended purpose.

268. At the time the subject zip-line equipment and components were designed, engineered, manufactured, and installed on the course, including but not limited to the subject braking system equipment and components, the Bonsai Defendants were aware of one or more flaws in their designs, engineering, manufacturing, and installation of the equipment and components.

269. The Bonsai Defendants knew or should have known that their designs, engineering, manufacturing, and installation of the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were likely to produce equipment and components that lacked reasonable resistance to failure during foreseeable use and that were unreasonably susceptible to failure during foreseeable use.

270. The Bonsai Defendants knew or should have known that their designs, engineering, manufacturing, and installation of the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were likely to produce equipment and components that were likely to fail and cause serious injury or death to users during foreseeable use.

271. At the times the subject zip-line course was designed and built, the Bonsai Defendants knew or should have known that the flaws in their design and construction of the course

would subject users like Lisa Cowles to risk of serious injury or death when using the course under foreseeable conditions.

272. The Bonsai Defendants were aware of changes they could make to their design and construction of the subject course that would improve the positioning of zip-lines, towers, and platforms, improve course speeds and sightlines, and improve the overall safety of the course, but deliberately chose not to make those changes.

273. At the time the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were designed, engineered, manufactured, and installed on the Game Creek course, the Bonsai Defendants knew or should have known that the flaws in their designs, engineering, manufacturing, and installation of the equipment and components would subject users like Lisa Cowles to risk of serious injury or death when using the equipment and components under foreseeable conditions.

274. The Bonsai Defendants were aware of changes they could make to their designs, engineering, manufacturing, and installation of the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, that would improve the strength, durability, and resistance of the equipment and components to failure during foreseeable use, but deliberately chose not to make those changes.

275. The Bonsai Defendants' knowledge as described in this Complaint is believed to be reflected in internal communications, testing, and/or quality inspections.

276. The Bonsai Defendants' knowledge as described in this Complaint is believed to be reflected in reports of other incidents of accidents on similar zip-line courses and of other incidents of zip-line equipment and/or component failure, including but not limited to braking system and/or braking system equipment and/or component failure, and including other incidents involving zip-

40

line courses, zip-lines, towers, platforms, systems, equipment, and/or components with similarly defective designs and/or which were similarly engineered, manufactured, built, and/or installed under similarly defective processes and conditions.

277.   The Bonsai Defendants acted unreasonably in designing and building the subject zip-line course with defects and deficiencies making the course likely to result in accidents under conditions that would present an unreasonable risk of injury or death to users like Lisa Cowles.

278.   The Bonsai Defendants acted unreasonably in designing, engineering, manufacturing, and installing the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, with defects and deficiencies making the equipment and components likely to experience a failure under conditions that would present an unreasonable risk of injury or death to users like Lisa Cowles.

279.   At all relevant times, the Bonsai Defendants were also in the business of providing operational support for their large-scale zip-line courses like the Game Creek course, including but not limited to training, inspection, maintenance, operational policies and procedures, and repair services.

280.   At all relevant times, the Bonsai Defendants were negligent in failing to exercise reasonable care as described elsewhere herein and as further set forth below:

a.   Failing to provide adequate training on operational protocols and safe zip-line course operations including but not limited to protocols and operations relating to inspecting and maintaining braking systems and braking system equipment and components, sending and receiving guests from zip-line platforms, re-setting, re-positioning, and re-securing braking systems and braking system equipment and components on the zip-line before sending a guest down the zip-line, maintaining

41

radio communications to facilitate safe operations of the zip-line, braking systems, and braking system equipment and components, and the importance of following established operational and safety protocols at all times;

b. Failing to provide appropriate inspection and maintenance services including but not limited to timely inspection and maintenance of braking systems and braking system equipment and components, recognizing defects, damage, wear, and other conditions of such systems, equipment, and components, performing inappropriate modifications and/or repairs to such systems, equipment, and components, failing to timely perform appropriate modifications and/or repairs to such systems, equipment, and components, and recognizing when such systems, equipment, and components needed to be repaired or replaced before the zip-line could be safely operated;

c. Failing to develop and implement appropriate protocols for safe zip-line course operations including but not limited to protocols relating to inspecting and maintaining braking systems and braking system equipment and components, sending and receiving guests from zip-line platforms, re-setting, re-positioning, and re-securing braking systems and braking system equipment and components on the zip-line before sending a guest down the zip-line, maintaining radio communications to facilitate safe operations of the zip-line, braking systems, and braking system equipment and components, and the importance of following established operational and safety protocols at all times;

d. Failing to provide reasonable operational support as described elsewhere herein;

e. Providing operational support in an otherwise unreasonable fashion as described

elsewhere herein; and

    f.   Such other and further acts of negligence as may be revealed in discovery.

281.  As a direct and proximate result and consequence of the negligent and unlawful conduct of the Bonsai Defendants, Plaintiff, Lisa Cowles suffered injuries, damages, and losses as described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## COUNT III
### Breach of Express and Implied Warranties v. Bonsai Defendants

282.  Plaintiff incorporates all other allegations in this complaint as if set forth herein.

283.  At all relevant times, the Bonsai Defendants knew the particular purposes for which the subject zip-line course and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were required and were to be used, and that users such as Lisa Cowles would rely on the Bonsai Defendants' skill and judgment in designing, engineering, testing, manufacturing, building, constructing, installing, inspecting, and maintaining goods suitable for such purposes and uses.

284.  At all relevant times, the subject zip-line course and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were not fit for the particular purposes for which they were intended and for which they were used.

285.  At all relevant times, the subject zip-line course and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, did not conform to the warranties, affirmations, and representations made by the Bonsai Defendants.

286.   The defective and unreasonably dangerous condition of the subject zip-line course and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components,  constitutes a breach by the Bonsai Defendants of their express and/or implied warranties, rendering them liable for Plaintiff's injuries and damages caused by the defects and inadequacies in the design, engineering, testing, manufacturing, building, installation, inspection, and maintenance of the subject zip-line course and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components.

287. The Bonsai Defendants' breach of express and/or implied warranties was a proximate cause of the injuries and losses of Plaintiff, Lisa Cowles, as set forth elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## COUNTS AGAINST VAIL DEFENDANTS

### COUNT IV
### Strict Liability v. Vail Defendants

288.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

289.   At all relevant times, the Vail Defendants were in the business of designing, engineering, testing (or failing to adequately test), manufacturing, constructing, building, installing, maintaining, preparing, approving, and/or inspecting zip-line courses and zip-line equipment and components including but not limited to the Game Creek course, and including but not limited to the braking system equipment and components used on the subject zip-line where Mrs. Cowles's accident occurred on July 7, 2017.

290.   The Vail Defendants designed, engineered, tested (or failed to adequately test), manufactured, constructed, built, installed, maintained, prepared, and/or inspected the subject

Game Creek zip-line course, all fixtures on the course such as zip-lines, towers, and platforms, and all zip-line equipment and components used on the course on the date of Mrs. Cowles's zip-line accident, including but not limited to all braking systems and braking system equipment and components.

291.   Alternatively, the Vail Defendants provided, approved, and/or ratified one or more relevant specifications for the design, engineering, testing, manufacture, construction, building, installation, maintenance, preparation, and/or inspection of the subject Game Creek zip-line course, fixtures on the course such as zip-lines, towers, and platforms, and zip-line equipment and components used on the course on the date of Mrs. Cowles's zip-line accident, including but not limited to the zip-line where the subject accident occurred and/or the braking systems and braking system equipment and components in use on that zip-line at that time.

292.   At the time the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were provided by the Vail Defendants for use by guests on the Game Creek zip-line course, including but not limited to Plaintiff, they were defective and unreasonably dangerous to a person who might reasonably be expected to use them. The subject equipment and components were defective and unreasonably dangerous in one or more respects as set forth elsewhere herein.

293.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were insufficient to provide reasonable protection to guests on the Game Creek zip-line tour including but not limited to Plaintiff, Lisa Cowles.

294.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, failed to properly slow, stop, and arrest

Plaintiff's forward motion down the subject zip-line, allowing her to crash at high speed and causing her to suffer serious and permanent injuries.

295.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably susceptible to failing while being used in their intended manner.

296.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, lacked reasonable resistance to failing during foreseeable use.

297.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were designed and manufactured in a manner that resulted in failure during foreseeable use.

298.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were not appropriate or fit to be used to slow, stop, and arrest riders approaching the bottom of the zip-line or to otherwise protect their safety and protect them from risk of serious injury or death on the course.

299.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably dangerous and defective and not appropriate or fit for their intended use because they lacked a sufficient passive braking system and a sufficient secondary or emergency braking system.

300.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably dangerous and defective and not appropriate or fit for their intended use because they lacked any means for a guest on the course to independently slow or stop themselves so as to avoid a serious accident while on the

course.

301.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were unreasonably dangerous and defective and not appropriate or fit for their intended use because they lacked sufficient padding or other protective gear.

302.   The subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, lacked adequate warnings regarding their deficiencies and propensity to fail under foreseeable use and conditions.

303.   It is believed that the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, may suffer from additional unspecified defects which will be ascertained and confirmed upon the opportunity to conduct reasonable discovery.

304.   The subject zip-line course was also designed, built, specified, approved, and/or ratified by Defendants in an unreasonably dangerous and defective manner.

305.   The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built to cause guests like Plaintiff to arrive at the landing platform at the bottom of a zip-line at an unreasonably fast and dangerous rate of speed.

306.   The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built in a fashion that deprived guests like Plaintiff of the ability to clearly see and perceive the landing platform at the bottom of a zip-line from a safe distance up the zip-line.

307.   The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built in a fashion that deprived guests like Plaintiff of the ability to clearly

see and perceive the braking systems and braking system equipment and components at the bottom of a zip-line from a safe distance up the zip-line.

308.   The subject zip-line course was itself unreasonably dangerous and defective insofar as it was designed and built in a fashion that deprived guests like Plaintiff of the ability to independently slow, stop, and arrest their speed on approaching a landing platform at the bottom of a zip-line.

309.   Upon information and belief, the Vail Defendants designed, built, specified, approved, and/or ratified one or more relevant portions of the design and construction of the subject zip-line course as set forth herein.

310.   At the time the Vail Defendants provided the subject zip-line course for use by guests on the course, including but not limited to Plaintiff, Lisa Cowles, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it.

311.   At the time of the subject accident, the subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, were being used in a manner and fashion that was foreseeable to the Vail Defendants and in a manner in which they were intended to be used.

312.   The subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, were defective and unreasonably dangerous because their design, construction, manufacturing and/or installation processes created a risk of harm to persons which would not ordinarily be expected and which was not outweighed by the benefits to be achieved by their design.

313.   Lisa Cowles was a person who would reasonably be expected to use or be affected by the subject zip-line course and zip-line equipment and components, including but not limited

to the subject braking system and braking system equipment and components.

314.   The subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, suffered a catastrophic failure to slow, stop, and arrest a foreseeable user's forward motion down the zip-line at foreseeable speeds, causing Lisa Cowles to crash and causing serious and permanent injuries to Lisa Cowles.

315.   Defects in the subject zip-line course and zip-line equipment and components, including but not limited to the subject braking system and braking system equipment and components, caused the crash that permanently injured Lisa Cowles.

316.   As a direct and proximate result and consequence of the conduct of the Vail Defendants, and the defective and unreasonably dangerous nature of their products, Plaintiff, Lisa Cowles suffered injuries, damages, and losses as described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## COUNT V
### Negligence v. Vail Defendants

317.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

318.   At all relevant times, the Vail Defendants were in the business of designing, engineering, testing (or failing to adequately test), manufacturing, constructing, building, installing, maintaining, preparing, specifying, approving, ratifying, and/or inspecting zip-line courses and zip-line equipment and components including but not limited to the Game Creek course, and including but not limited to the braking system equipment and components used on the subject zip-line where Mrs. Cowles's accident occurred on July 7, 2017.

319.   At all relevant times, the Vail Defendants had a duty to design, engineer, test,

49

manufacture, construct, build, install, maintain, prepare, specify, approve, ratify, and inspect their zip-line courses and zip-line equipment and components, including but not limited to zip-lines, towers, platforms, zip-line course equipment and components, and braking system equipment and components, so that the zip-lines, towers, platforms, equipment, and components would be resistant to failure which the Defendants knew would pose serious risks to consumers using the equipment and components.

320.   At all relevant times, the Vail Defendants had a duty to ensure that the subject zip-line course and all fixtures, equipment, and components in use on the course would effectively slow down, stop, and arrest the forward motion of guests down the zip-lines before they were subjected to a potentially injurious impact, including but not limited to crashes at unreasonably dangerous and fast speeds.

321.   The Vail Defendants' duties in this regard were especially critical because their design of the subject zip-line course, fixtures, equipment, and components did not provide guests on the course with any means to slow or stop themselves.

322.   The Vail Defendants were negligent in failing to exercise reasonable care to prevent the design of the subject zip-line course from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by the course while it was being used in a manner the Defendants might reasonably have expected.

323.   The Vail Defendants were negligent in failing to exercise reasonable care to prevent the subject zip-line course equipment, including but not limited to braking systems and braking system equipment and components, from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by the equipment and components while they were being used in a manner the Defendants might reasonably have expected.

324.   Lisa Cowles is in that class of persons whom the Vail Defendants should reasonably have expected to use or be affected by the subject zip-line course and subject zip-line equipment and components including but not limited to the subject braking system equipment and components.

325.   The Vail Defendants were negligent in failing to exercise reasonable care to warn users of the subject zip-line course and subject zip-line equipment and components of the risk of harm associated with the foreseeable use of that course and the equipment and components.

326.   At the time the subject zip-line course was designed and built, the Vail Defendants were aware of the importance and need for proper design and construction of the course including but not limited to location and placement of zip-lines, towers, and platforms.

327.   At the time the subject zip-line equipment and components were designed, engineered, manufactured, and installed on the Game Creek course, including but not limited to the subject braking system equipment and components, the Vail Defendants were aware of the importance and need for proper design, manufacture, and installation of the equipment and components.

328.   At the time the subject zip-line course was designed and built and the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were designed, engineered, manufactured, and installed on the course, the Vail Defendants were aware that failing to properly design and build the course and to design, manufacture, and install the equipment and components on the course would subject users to risk of serious injury or death, including but not limited to serious injury or death resulting from the failure of the equipment or components on the course to prevent serious injury or death.

329.   At the time the subject zip-line course was designed and built and the subject zip-

line equipment and components, including but not limited to the subject braking system equipment and components, were designed, engineered, manufactured, and installed on the course, the Vail Defendants were aware that approving defective or unreasonably dangerous course designs or build-outs, or defective or unreasonably dangerous equipment and component designs, manufacturing, or installations, would subject users to risk of serious injury or death, including but not limited to serious injury or death resulting from the failure of the equipment or components on the course to prevent serious injury or death.

330.   At the time the subject zip-line course was designed and built, the Vail Defendants were aware of one or more flaws in the design and/or construction of the course, including but not limited to flaws in the placement and positioning of zip-lines, towers, and platforms that could subject foreseeable users to unreasonably high and dangerous speeds and/or deprive them of adequate sightlines and time to avoid a high-speed accident while using the course in its intended manner and for its intended purpose.

331.  At the time the subject zip-line equipment and components were designed, engineered, manufactured, and installed on the course, including but not limited to the subject braking system equipment and components, the Vail Defendants were aware of one or more flaws in the designs, engineering, manufacturing, and installation of the equipment and components.

332.  The Vail Defendants knew or should have known that the designs, engineering, manufacturing, and installation of the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were likely to produce equipment and components that lacked reasonable resistance to failure during foreseeable use and that were unreasonably susceptible to failure during foreseeable use.

333.  The Vail Defendants knew or should have known that the designs, engineering,

manufacturing, and installation of the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were likely to produce equipment and components that were likely to fail and cause serious injury or death to users during foreseeable use.

334.   At the times the subject zip-line course was specified, designed, built, approved, and/or ratified by the Vail Defendants, the Defendants knew or should have known that flaws in the design and construction of the course would subject users like Lisa Cowles to risk of serious injury or death when using the course under foreseeable conditions.

335.   The Vail Defendants were aware of changes that could have been made to the design and construction of the subject course that would improve the positioning of zip-lines, towers, and platforms, improve course speeds and sightlines, and improve the overall safety of the course, but deliberately chose not to make those changes.

336.   At the time the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, were specified, designed, engineered, manufactured, approved, ratified, and/or installed on the Game Creek course by the Vail Defendants, the Vail Defendants knew or should have known that flaws in their designs, engineering, manufacturing, and installation of the equipment and components would subject users like Lisa Cowles to risk of serious injury or death when using the equipment and components under foreseeable conditions.

337.   The Vail Defendants were aware of changes that could have been made to the designs, engineering, manufacturing, and installation of the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, that would improve the strength, durability, and resistance of the equipment and components to

failure during foreseeable use, but deliberately chose not to make those changes.

338.  The Vail Defendants' knowledge as described in this Complaint is believed to be reflected in internal communications, testing, and/or quality inspections.

339.  The Vail Defendants' knowledge as described in this Complaint is believed to be reflected in reports of other incidents of accidents on similar zip-line courses and of other incidents of zip-line equipment and/or component failure, including but not limited to braking system and/or braking system equipment and/or component failure, and including other incidents involving zip-line courses, zip-lines, towers, platforms, systems, equipment, and/or components with similarly defective designs and/or which were similarly engineered, manufactured, built, and/or installed under similarly defective processes and conditions.

340.  The Vail Defendants acted unreasonably in designing, building, specifying, approving, and/or ratifying the subject zip-line course with defects and deficiencies making the course likely to result in accidents under conditions that would present an unreasonable risk of injury or death to users like Lisa Cowles.

341.  The Vail Defendants acted unreasonably in designing, engineering, manufacturing, installing, specifying, ratifying, and/or approving the subject zip-line equipment and components, including but not limited to the subject braking system equipment and components, with defects and deficiencies making the equipment and components likely to experience a failure under conditions that would present an unreasonable risk of injury or death to users like Lisa Cowles.

342.  At all relevant times, the Vail Defendants were also in the business of operating, inspecting, maintaining, and/or repairing large-scale commercial zip-line courses including the Game Creek zip-line course.

343.  At all relevant times, the Vail Defendants were also in the business of operating,

inspecting, maintaining, and/or repairing zip-line fixtures, equipment, and components in use on large-scale commercial zip-line courses including on the Game Creek zip-line course, including but not limited to the braking systems and braking system equipment and components on the subject zip-line where Mrs. Cowles's accident occurred on July 7, 2017.

344.   At all relevant times, the Vail Defendants owed a duty of reasonable care as to their operation, inspection, maintenance, and repair of the Game Creek zip-line course and zip-line fixtures, equipment, and components, including but not limited to the braking systems and braking system equipment and components on the subject zip-line where Mrs. Cowles's accident occurred on July 7, 2017.

345.   At all relevant times, the Vail Defendants breached their duty and were negligent by one or more of the follows:

    a.  Failing to follow their own established protocols for operations of the zip-line course;

    b.  Failing to follow their own established protocols for sending and receiving guests on zip-line platforms;

    c.  Failing to follow their own established protocols for inspecting, maintaining, repairing, re-setting, re-positioning, and re-securing zip-lines and zip-line equipment and components, including but not limited to braking systems and braking system equipment and components, before sending another guest down the zip-line;

    d.  Failing to follow their own established protocols for maintaining appropriate radio communications so as to facilitate and ensure safe course operations;

    e.  Failing to follow their own established protocols for assigning guides with groups

and on the course;

f.  Failing to follow their own established protocols for timely and appropriately inspecting, maintaining, and repairing equipment, fixtures, and components in use on the course including but not limited to braking systems and braking system equipment and components;

g.  Failing to appropriately train their employees and guides on their established protocols governing course operations, inspection, maintenance, and repair;

h.  Failing to appropriately operate their course in a safe and reasonable fashion so as to minimize risk of serious injury or death to their guests on the course;

i.  Failing to timely and appropriately inspect, maintain, and repair equipment, fixtures, and components in use on the course including but not limited to braking systems and braking system equipment and components;

j.  Failing to timely and appropriately discover and remedy defects, damage, wear, and other adverse conditions of equipment on the course that could jeopardize the safety of their guests, including but not limited to braking systems and braking system equipment and components;

k.  Allowing employees, supervisors, guides, and/or guests on the course to participate in unsafe practices;

l.  Performing inappropriate modifications and/or repairs to equipment used on the course including but not limited to braking systems and braking system equipment and components;

m. Failing to timely perform appropriate modifications and/or repairs to equipment used on the course including but not limited to braking systems and braking system

equipment and components;

n.  Failing to timely and appropriately follow protocols and provide training on maintaining safe and appropriate speeds and sightlines on the Game Creek zip-line course;

o.  Failing to ensure the safety of guests on the Game Creek zip-line course;

p.  Failing to abide by and adhere to applicable laws, rules, and standards governing the operation of zip-line courses like the Game Creek course; and

q.  Such other and further acts of negligence as may be revealed in discovery.

346.   As a direct and proximate result and consequence of the conduct of the Defendants, Lisa Cowles suffered injuries, damages, and losses as described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper

**Count VI**
**Breach of Express and Implied Warranties v. Vail Defendants**

347.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

348.   At all relevant times, the Vail Defendants knew the particular purposes for which the subject zip-line course and zip-line course and equipment, including but not limited to the subject braking system equipment and components, were required and were to be used, and that users such as Lisa Cowles would rely on the Vail Defendants' skill and judgment in designing, engineering, testing, manufacturing, building installing, inspecting, preparing, and maintaining goods suitable for such purposes and uses.

349.   At all relevant times, the subject zip-line course and zip-line course and equipment, including but not limited to the subject braking system equipment and components, were not fit for the particular purposes for which they were intended and for which they were used.

350.   At all relevant times, the subject zip-line course and zip-line course and equipment, including but not limited to the subject braking system equipment and components, did not conform to the warranties, affirmations, and representations made by the Vail Defendants.

351.   The defective and unreasonably dangerous condition of the subject zip-line course and zip-line course and equipment, including but not limited to the subject braking system equipment and components, constitutes a breach by the Vail Defendants of their express and/or implied warranties, rendering them liable for Plaintiff's injuries and damages caused by the defects and inadequacies in the design, engineering, testing, manufacturing, building, installation, inspection, preparation, and maintenance of the subject zip-line course and zip-line course and equipment, including but not limited to the subject braking system equipment and components.

352.   The Vail Defendants' breach of express and/or implied warranties was a proximate cause of the injuries and losses of Plaintiff, Lisa Cowles, as set forth elsewhere herein

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper

## COUNTS AGAINST ALL DEFENDANTS

### Count VII
### Premises Liability

353.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

354.   At all relevant times, the provisions of Colorado's Premises Liability Act, C.R.S. § 13-21-115, were in effect.

355.   At all relevant times, the Bonsai Defendants and the Vail Defendants were "landowners" of the Game Creek zipline course as that term is defined by statute. *See* C.R.S. § 13-21-115(1).

356.   At all relevant times, Plaintiff, Lisa Cowles, was an "invitee" on the Game Creek zipline course as that term is defined by statute. *See* C.R.S. § 13-21-115(5)(a).

357.   At all relevant times, the Defendants were legally responsible for the condition of the premises and/or for the activities conducted and/or the circumstances existing on the Game Creek zip-line course, which have been described elsewhere herein.

358.   At all relevant times, the Defendants owed Plaintiff, Lisa Cowles, a duty of reasonable care to protect against dangers of which they actually knew or should have known. *See* C.R.S. § 13-21-115(3)(c)(I).

359.   At all relevant times, the Defendants breached their duty by unreasonably failing to exercise reasonable care to protect Plaintiff, Lisa Cowles, and others, against dangers of which they actually knew or should have known, as described elsewhere herein and including but not limited to by the following acts and omissions:

   a.   Failing to operate the Game Creek zip-line course in a safe and responsible manner;

   b.   Failing to train and supervise their employees to operate the Game Creek zip-line course in a safe and responsible manner;

   c.   Failing to adopt and enforce protocols for the safe operation of the Game Creek zip-line course and to ensure the safety of guests on the course including Plaintiff;

   d.   Failing to follow their own protocols for the safe operation of the Game Creek zip-line course;

   e.   Operating the Game Creek zip-line despite its defective and unreasonably dangerous design and construction, including but not limited to the placement of zip-lines, towers, and platforms so as to promote and allow unreasonably high and dangerous speeds, the lack of adequate sightlines, and the lack of adequate distance

59

for the forward motion of users down a zip-line to be slowed, stopped, and arrested;

f.   Operating the Game Creek zip-line course with defective and unreasonably dangerous zip-line equipment and components including but not limited to defective and unreasonably dangerous braking systems and braking system equipment and components;

g.   Failing to timely and appropriately inspect zip-lines, towers, platforms, trees, and other objects and fixtures on the Game Creek zip-line course so as to prevent guests from reaching unreasonably dangerous and fast speeds after being sent down a zip-line and to otherwise ensure adequate sightlines and adequate distances for slowing, stopping, and arresting the forward motion of guests sent down a zip-line;

h.   Failing to timely and appropriately inspect, repair, and maintain the equipment and components on the Game Creek zip-line course including but not limited to braking systems and braking system equipment and components;

i.   Performing inappropriate alterations to the location and positioning of zip-lines, towers, platforms, trees, and other objects and fixtures on the Game Creek zip-line course so as to allow guests to reach unreasonably dangerous and fast speeds after being sent down a zip-line and to otherwise deprive guests of adequate sightlines and adequate distances for slowing, stopping, and arresting their forward motion after being sent down a zip-line;

j.   Performing inappropriate modifications and/or repairs to equipment used on the course including but not limited to braking systems and braking system equipment and components;

k.   Subjecting guests including Plaintiff to unreasonable risk of serious injury or death

60

by operating the Game Creek zip-line course in an unreasonable and unsafe manner;

l.  Failing to timely and appropriately advise guests including Plaintiff as to the risks and hazards on the Game Creek zip-line course;

m. Failing to timely and appropriately instruct guests including Plaintiff as to how to avoid or minimize such risks and hazards on the Game Creek zip-line course;

n.  Failing to timely and appropriately provide guests including Plaintiff with appropriate zip-line equipment that was free from defects including but not limited to properly functioning braking systems and braking system equipment and components;

o.  Failing to timely and appropriately provide guests including Plaintiff with appropriate zip-line equipment that would provide such guests with an independent means of slowing, stopping, and/or arresting their speed so as to avoid serious injury or death on the Game Creek zip-line course;

p.  Designing and building the Game Creek zip-line course in an unsafe and unreasonable manner so as to expose guests on the course, including Plaintiff, to unreasonable risk of serious injury or death;

q.  Allowing employees, supervisors, guides, and/or guests on the course to participate in unsafe practices on the Game Creek zip-line course that subjected guests to unreasonable risk of serious injury or death;

r.  Making false representations to guests including Plaintiff as to the risks and hazards of the Game Creek zip-line course;

s.  Failing to disclose and/or concealing material information concerning such risks

61

and hazards from guests on the Game Creek zip-line course including Plaintiff;

t.  Failing to ensure the safety of guests on the Game Creek zip-line course;

u.  Failing to abide by and adhere to applicable laws, rules, and standards governing the operation of zip-line courses like the Game Creek zip-line course; and

v.  Such other and further acts and omissions reflecting an unreasonable failure to exercise reasonable care to protect against dangers of which they actually knew or should have known as may be revealed in discovery.

360.  Upon information and belief, at all relevant times, Defendants knew or should have known that the above acts and omissions subjected guests like Plaintiff to an unreasonable risk of serious injury or death and created and enhanced a substantial risk of an injurious accident such as occurred in this case.

361.  Upon information and belief, Defendants elected to engage in those acts and omissions despite their knowledge in this regard.

362.  Upon information and belief, Defendants purposefully, intentionally, and willfully engaged in certain of those acts and omissions in order to induce guests such as Plaintiff, Lisa Cowles, to pay them for zip-line tours on the Game Creek zip-line course.

363.  As a direct and proximate result and consequence of the negligent and unlawful conduct of the Defendants, Plaintiff, Lisa Cowles suffered injuries, damages, and losses as described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

### Count VIII
### Fraud

364.  Plaintiff incorporates all other allegations in this complaint as if set forth herein.

365.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the design of the Game Creek zip-line course was safe.

366.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the equipment and components in use on the Game Creek zip-line course were safe.

367.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the equipment and components in use on the Game Creek zip-line course would prevent her from suffering serious injury during her zip-line tour including in approaching a landing platform at the bottom of a zip-line.

368.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that she should "trust the equipment" at all times on the Game Creek zip-line course.

369.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that she would be able to safely reach and land on the landing platforms as long as she "trusted the equipment."

370.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the braking systems and braking system equipment and components in use on the course would slow, stop, and arrest her speed in approaching a landing platform.

371.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the braking systems and braking system equipment and components in use on the course would slow, stop, and arrest her speed in approaching a landing platform so as to allow her to safely reach and land on the landing platform and to avoid serious injury or death from a high-speed crash on the course.

372.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that course guides would use certain specific arm and/or hand signals to indicate to her whether she

should try to tuck her body into a cannonball-like position or try to make her body bigger by stretching out and spreading her legs while approaching a landing platform at the bottom of a zip-line.

373.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that this procedure would be sufficient to safely manage Mrs. Cowles's speed on approach to the landing platforms and to avoid serious injury or death in a high-speed crash on the course.

374.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the course equipment would slow, stop, and arrest her and protect her safety on the course irrespective of the hand signals provided by course guides.

375.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the equipment and components on the Game Creek zip-line course were in good working condition and free from defects and unreasonable hazards, including but not limited to the braking systems and braking system components.

376.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the equipment and components on the Game Creek zip-line course were in good working condition, were free from defects and unreasonable hazards, and were in such condition as to protect her safety while on the course, including but not limited to the braking systems and braking system components, and including but not limited to as it relates to slowing, stopping, and arresting her forward motion and speed on approach to the landing platforms at the bottom of the zip-lines on the course.

377.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the supervisors, guides, and employees on the course were appropriately trained on how to safely operate the course and safely guide guests like Mrs. Cowles down the course, including as it relates

64

to safely and appropriately sending and receiving guests on the tower landing platforms and properly using all equipment and components on the course including but not limited to braking systems and braking system equipment and components.

378.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the supervisors, guides, and employees on the course would safely operate the course and safely guide guests like Mrs. Cowles down the course throughout the entire zip-line tour, including by safely and appropriately sending and receiving guests on the tower landing platforms and by properly using all equipment and components on the course including but not limited to braking systems and braking system equipment and components.

379.   At all relevant times, the Defendants represented to Plaintiff, Lisa Cowles, that the subject zip-line course was reasonably safe and free of defects relating to unreasonably dangerous and fast speeds, inadequate sightlines, and inadequate distance in which to be slowed, stopped, and arrested at the bottom of a zip-line.

380.   At all relevant times, the above representations were material to Mrs. Cowles's decision to go on a zip-line tour on the Game Creek zip-line course.

381.   At all relevant times, the above representations were material to Mrs. Cowles's decision to continue with her zip-line tour on the Game Creek zip-line course throughout the day on July 7, 2017.

382.   Upon information and belief, at all relevant times, the Defendants made the above representations with knowledge that the representations were false or with awareness that they did not know whether the representations were true or false.

383.   Upon information and belief, at all relevant times, the Defendants made the above representations purposefully, intentionally, and willfully in order to induce Plaintiff and others to

rely on those representations by paying for zip-line tours on the Game Creek zip-line course.

384.   Upon information and belief, at all relevant times, the Defendants made the above representations with the intent that Plaintiff, Lisa Cowles, her husband, and other guests on the Game Creek zip-line course would rely on those representations, including by paying Defendants for a zip-line tour on the course and by continuing on the tour following the weather delay on July 7, 2017 and not seeking a partial refund.

385.   At all relevant times, Plaintiff, Lisa Cowles justifiably relied on the representations including by taking the Defendants' tour down the Game Creek course, by using and riding down the Game Creek course, and by placing her safety and well-being in the hands of the Defendants while on the course.

386.   As a result of her justified reliance on the above false representations of the Defendants, Plaintiff, Lisa Cowles, suffered injuries, damages, and losses described elsewhere herein.

387.   Similarly, at all relevant times, the Defendants concealed and/or failed to disclose the fact that the design of the Game Creek zip-line course was not safe.

388.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the equipment and components in use on the Game Creek zip-line course were not safe.

389.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the design of the course would subject her to unreasonable risk of serious injury or death during her zip-line tour including but not limited to unreasonably dangerous and fast speeds, inadequate sightlines, and inadequate distances in which to be slowed, stopped, or arrested upon approaching a landing tower at the bottom of a zip-line.

390.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that

the equipment and components in use on the Game Creek zip-line course would not prevent her from suffering serious injury during her zip-line tour including but not limited to injuries caused by the failure of such equipment to protect and prevent her from crashing into course equipment, fixtures, and components at an unreasonably dangerous and fast speed.

391. At all relevant times, the Defendants concealed and/or failed to disclose the fact that Plaintiff could be subjected to an unreasonable risk of serious injury or death by "trusting the equipment" while on the Game Creek zip-line course including but not limited to as it relates to "trusting the equipment" to appropriately slow, stop, and arrest her forward motion on approaching a landing platform at the bottom of a zip-line.

392. At all relevant times, the Defendants concealed and/or failed to disclose the fact that Plaintiff might not be able to safely reach and land on the landing platforms if she just "trusted the equipment."

393. At all relevant times, the Defendants concealed and/or failed to disclose the fact that Plaintiff could suffer serious and permanent injuries from "trusting the equipment" upon approaching a landing platform at the bottom of a zip-line.

394. At all relevant times, the Defendants concealed and/or failed to disclose the fact that the zip-line equipment and components used on the course, including but not limited to braking systems and braking system equipment and components, might fail to appropriately slow, stop, and arrest her forward motion on approaching a landing platform at the bottom of a zip-line.

395. At all relevant times, the Defendants concealed and/or failed to disclose the fact that the zip-line equipment and components used on the course, including but not limited to braking systems and braking system equipment and components, might fail to appropriately slow, stop, and arrest her forward motion on approaching a landing platform at the bottom of a zip-line and

might fail to protect and prevent her from crashing into equipment, fixtures, and components at the bottom of the zip-line at an unreasonably dangerous and fast speed.

396.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the equipment and components in use on the course, including but not limited to braking systems and braking system equipment and components, would be insufficient to protect her from injury in a high-speed crash on the course in the event the course guides failed to follow appropriate safety protocols during a zip-line tour.

397.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the equipment and components on the Game Creek zip-line course were not in good working condition or free from defects and unreasonable hazards, including but not limited to the braking systems and braking system components, and that such equipment and components were in fact unreasonably dangerous and defective.

398.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the equipment and components on the Game Creek zip-line course were not in good working condition, were not free from defects and unreasonable hazards, and were not in such condition as to protect her safety while on the course, including but not limited to the braking systems and braking system components, and including but not limited to as it relates to slowing, stopping, and arresting her forward motion and speed on approach to the landing platforms at the bottom of the zip-lines on the course so as to avoid serious injury or death from a crash at an unreasonably dangerous and fast speed.

399.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the equipment and components on the Game Creek zip-line course were unreasonably dangerous and defective so as to be incapable of slowing, stopping, and arresting her forward motion and

speed on approach to the landing platforms at the bottom of the zip-lines on the course and so as to be incapable of protecting her from risk of serious injury or death in a high-speed crash at the bottom of a zip-line.

400.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the supervisors, guides, and employees on the course were not appropriately trained on how to safely operate the course and safely guide guests like Mrs. Cowles down the course, including as it relates to safely and appropriately sending and receiving guests on the tower landing platforms and properly using all equipment and components on the course including but not limited to zip-lines, braking systems, and braking system equipment and components.

401.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that the supervisors, guides, and employees on the course would not or might not safely operate the course or safely guide guests like Mrs. Cowles down the course throughout the entire zip-line tour, including by failing to safely and appropriately send and receive guests on the tower landing platforms and by failing to properly use all equipment and components on the course including but not limited to braking systems and braking system equipment and components.

402.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that guides on the course might fail to appropriately inspect, use, re-set, re-position, or re-secure equipment and components on the course, including but not limited to braking systems and braking system equipment and components, before sending guests down a zip-line towards the landing platform at the bottom of the zip-line.

403.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that guides on the course might fail to give Plaintiff the specific arm and/or hand signals discussed by the guides earlier that day on her approach to a landing platform at the bottom of a zip-line.

69

404.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that guides on the course might try to physically or verbally signal Plaintiff in ways she had not been instructed on and in ways she might be unable to accurately perceive or understand.

405.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that guides on the course might fail to ensure guests on the course were not subjected to unreasonably dangerous and fast speeds, inadequate sightlines, or inadequate distances within which they could be slowed, stopped, or arrested after being sent down a zip-line.

406.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that they would not follow their ordinary operational protocols after leading their guests, including Plaintiff, Lisa Cowles, back out onto the Game Creek course and resuming zip-line operations following the weather delay on July 7, 2017.

407.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that radio clearances would not be obtained before consecutive guests were sent down the zip-line including but not limited to clearances confirming that the braking systems and braking system equipment and components on the subject zip-line had been re-set, re-positioned, and re-secured before the next guest was sent down the zip-line.

408.   At all relevant times, the Defendants concealed and/or failed to disclose the fact that they might instruct their guides to guide guests down the course using protocols with which they were unfamiliar and that deviated from Defendants' own safety protocols and subjected guests including Plaintiff, Lisa Cowles, to unreasonable risk of serious injury and/or death.

409.   At all relevant times, the Defendants owed Plaintiff, Lisa Cowles, and other guests on the Game Creek zip-line course a legal duty to disclose the above facts.

410.   Upon information and belief, at all relevant times, the Defendants concealed and/or

failed to disclose one or more of the above facts with the purpose and intent to induce reliance on their concealment and/or nondisclosure by guests on the Game Creek zip-line course including but not limited to Plaintiff, Lisa Cowles.

411.   Upon information and belief, at all relevant times, the Defendants concealed and/or failed to disclose one or more of the above facts purposefully, intentionally, and willfully in order to induce Plaintiff and others to rely on those representations by paying for zip-line tours on the Game Creek zip-line course.

412.   Upon information and belief, at all relevant times, the Defendants concealed and/or failed to disclose one or more of the above facts with the intent to induce Plaintiff, Lisa Cowles to pay for a zip-line tour on the Game Creek zip-line, to continue with her tour throughout the day on July 7, 2017, and/or to not to seek a refund money paid for the second half of her tour following the weather delay on that date.

413.   At all relevant times, Plaintiff, Lisa Cowles, justifiably relied on Defendants' fraudulent concealment and/or nondisclosure of the above facts including by taking the Defendants' tour down the Game Creek course, by using and riding down the Game Creek course, and by placing her safety and well-being in the hands of the Defendants while on the course.

414.   As a result of her justified reliance on the Defendants' fraudulent concealment and/or nondisclosure of the above facts, Plaintiff, Lisa Cowles, suffered injuries, damages, and losses described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

### Count IX
### Joint Venture Liability

415.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

416.   At all relevant times, the Defendants were engaged in a joint venture as that term is described in law with respect to their design, engineering, testing (or failure to adequately test), manufacturing, constructing, building, installing, maintaining, preparing, inspecting, specifying, approving, ratifying, operating, and/or repairing of the Game Creek zip-line course and/or fixtures, equipment, and/or components on the course.

417.   Upon information and belief, at all relevant times, the Defendants had a joint interest in the Game Creek zip-line course and/or fixtures, equipment, and/or components on the course and/or in the operations thereof.

418.   Upon information and belief, at all relevant times, the Defendants expressly or impliedly agreed to share jointly in the profits and losses from operation of the Game Creek zip-line course and/or fixtures, equipment, and/or components on the course.

419.   Upon information and belief, at all relevant times, the Defendants engaged in conduct showing joint cooperation with respect to the Game Creek zip-line course and/or fixtures, equipment, and/or components on the course.

420.   At all relevant times, the Defendants, and each of them, are vicariously liable for the tortious acts and omissions of the others under the law of joint venture.

421.   The negligent and unlawful conduct of the Defendants as described herein is, by law, the negligent and unlawful conduct of all remaining Defendants.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## Count X
## Gross Negligence

422.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

423.   In engaging in one or more of the acts and omissions set forth herein causing

Plaintiff's injuries, Defendants acted willfully, wantonly, and recklessly, without regard for the consequences or the rights and safety of the Plaintiff.

424.  As such, Defendants were grossly negligent and that gross negligence was a cause of Plaintiff's injuries.

425.  Defendants' acts of gross negligence include but are not limited to the following acts and omissions set forth elsewhere herein.

426.  Defendants' gross negligence was a proximate cause of Plaintiff's accident and of her injuries and damages.[2]

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## CAUSATION & DAMAGES
### (All Defendants)

427.  Plaintiff incorporates all other allegations in this complaint as if set forth herein.

428.  As a direct and proximate result of the negligent and unlawful conduct of the Defendants as described herein, the Defendants' breaches of warranty described herein, and the defective and unreasonably dangerous condition of the subject zip-lining course, fixtures, equipment, and components as described herein, Plaintiff, Lisa Cowles, has incurred, will in the future incur, and seeks recovery of the following general and special damages:

    a.   Pain and suffering, mental anguish, and emotional distress, past and future;

---

[2] Plaintiff is precluded from asserting a claim for exemplary damages "in any initial claim for relief." C.R.S. § 13-21-102(1.5)(a). Plaintiff hereby reserves right to seek amendment of her Complaint to assert a claim for exemplary damages against the Defendants based on prima facie proof of a triable issue after the exchange of initial disclosures as provided by Colorado statute, *see id.*, and as consistent with the Federal Rules of Civil Procedure and pursuant to any Scheduling Orders entered by this Court.

b. Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medication, therapy, and other expenses, past and future;

c. Inconvenience;

d. Loss of enjoyment of life and/or impairment of the quality of life;

e. Loss of earnings and earning capacity;

f. Physical impairment;

g. Disfigurement and scarring; and

h. Any other losses and damages sustained by Plaintiff and to which she is legally entitled either pursuant to statute or the common law.

**WHEREFORE,** Plaintiff prays for and demands an award of damages to be fixed by the trier of fact in a reasonable amount. Additionally, Plaintiff asks for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which she is or may be legally entitled and as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated this 22nd day of July, 2019.

Respectfully submitted,

By:     s/ *Paul J. Komyatte*
Paul J. Komyatte #22750
David P. Mason #41333
The Komyatte Law Firm LLC
1536 Cole Blvd., Bldg. 4, Suite 300
Lakewood, CO 80401
Phone No. (720) 975-8553
Fax No. (720) 528-8072
Email  paul@komyattelawfirm.com
Email  dave@komyattelawfirm.com

**ATTORNEYS FOR PLAINTIFF**