**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-1946-WJM-MEH

**LISA COWLES**, a citizen of Wisconsin,

Plaintiff,

v.

**BONSAI DESIGN LLC,** a Colorado limited liability company with its principal place of business in Colorado and with three members, who citizens of Colorado and/or citizens of North Carolina;
**VAIL RESORTS, INC.,** a Delaware corporation with its principal place of business in Colorado, et al.,

Defendants.

---

**PLAINTIFF'S CONDITIONAL RESPONSE BRIEF IN OPPOSITION TO VAIL'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES PURSUANT TO RULE 12(b)(6)**

---

Vail's[1] Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is a procedurally improper attempt to obtain dismissal of Plaintiff's entire case based on matters outside the pleadings – a liability waiver which is unenforceable under the circumstances of this case involving willful and wanton conduct and/or gross negligence. By seeking dispositive relief pursuant to Rule 12(b)(6) based on a liability waiver not referenced or incorporated in Plaintiff's complaint, Vail unfairly seeks a complete dismissal before the parties can complete substantial discovery on its waiver defense. Vail effectively seeks a Rule 12(b)(6) dismissal of fact-intensive matters more appropriately resolved under Rule 56 – all while withholding

[1] Defendants Vail Resorts, Inc., Vail Resorts Holdings, Inc., Vail Corporation, and Vail Resorts Management Company are collectively referred to as "Vail" in this Response.

discovery relevant to those factual disputes.[2]

Contemporaneously herewith, Plaintiff is submitting a motion for leave to file her proposed Second Amended Complaint, which moots many of the issues and defeats the remaining issues raised in Vail's motion. First, Plaintiff's Second Amended Complaint eliminates common law claims sounding in strict liability, negligence, breach of express and implied warranties, fraud, and joint venture liability (Counts IV, V, VI, VIII, and IX in the First Amended Complaint). Plaintiff made a determination to dismiss these Counts after reviewing documents recently produced by the Defendants.[3] While Vail contends these claims are insufficiently pled or are "preempted" by the Premises Liability Act, C.R.S. § 13-21-115 ("PLA"), the Court need not determine the viability of claims no longer asserted in the Second Amended Complaint.

Second, Plaintiff's remaining counts against Vail in the Second Amended Complaint are cognizable notwithstanding the waiver. The remaining counts, under the Premises Liability Act, the Exemplary Damages Statute, and common law gross negligence, respectively (Counts III, IV, and V in the Second Amended Complaint), each turn on Vail's willful and wanton conduct in causing Plaintiff's injuries. Under settled Colorado law, an exculpatory agreement does not bar a claim of willful and wanton conduct. Because the well-pled allegations in the Second Amended Complaint support plausible claims for relief based on Vail's willful and wanton conduct, Plaintiff's remaining claims are not subject to dismissal.

Finally, the Court may and should reject Vail's motion by simply declining to consider the

---

[2] *See* Plaintiff's concurrently-filed motion for an enlargement of time to respond to Vail's motion to dismiss, which sets forth Vail's refusal to produce documents.

[3] Plaintiff's streamlining of her claims should not be interpreted as a concession of the merits of Vail's legal arguments as to such claims. A Plaintiff is entitled to plead alternative and even inconsistent claims for relief and is not required to elect which claims to pursue at the outset of her case. *See* Fed. R. Civ. P. 8(d)(2), (3).

liability waiver attached as Exhibit A to its motion. Vail's sole basis for dismissing Plaintiff's Premises Liability Act claim is the waiver defense. But this Court has broad discretion to reject documents submitted with a party's Rule 12(b)(6) motion especially where, as here, the documents do not fall into any of the narrow exceptions permitting their consideration on such a motion. Absent consideration of the waiver, which is not properly before the Court[4] and which raises obvious issues of disputed material fact, there is no basis for a Rule 12(b)(6) dismissal of Plaintiff's Premises Liability Act claim. This Court should reject Vail's gambit to win a premature, early dismissal before it can be called to account on the merits.

## I. RELEVANT FACTS

1. This lawsuit arises from a zip-lining accident on July 7, 2017 in Vail. On that date, Plaintiff and her husband took a zip-lining tour on the Game Creek zip-line course on Vail Mountain. As Plaintiff approached the bottom of a zip-line, a braking system designed, manufactured, and installed by Defendant Bonsai Design LLC ("Bonsai") failed, causing Plaintiff to crash into the structure at the end the zip-line at a high rate of speed. Plaintiff suffered serious injuries as a result. *See Second Amended Complaint*, **Exhibit 1**, at ¶¶ 1, 235-240, 243.

2. Vail hired Bonsai to design and build the Game Creek zip-line course in 2012. Over the next several years, as Bonsai completed initial design and surveying work, Vail commissioned various changes to the design of the course, including the design of the subject zip-line. The redesigned Game Creek course featured seven zip-lines spanning approximately 10,000 feet, including one zip-line more than a half mile long, one that propelled guests at fifty to sixty miles

---

[4] Contemporaneously herewith, Plaintiff is filing a motion to strike Vail's Exhibits A and B, consisting of Vail's liability waiver and a copy of the Design and Build Agreement between Vail and Bonsai. Plaintiff hereby incorporates by reference herein the authorities and arguments set forth in that motion. Fed. R. Civ. P. 10(c).

per hour, and one that was 300 feet above the ground. **Exhibit 1**, at ¶¶ 72-96.

3. Bonsai designed and manufactured custom braking systems for all the zip-lines on the Game Creek course. Its braking system design included primary and secondary (or "emergency") brakes but did not include any way for guests to slow or stop themselves to avoid an accident. *See* **Exhibit 1**, at ¶¶ 97-120. Instead, course "guides" employed by Vail had to retrieve, redeploy, and reset the braking systems after each guest was safely "received" at the bottom. Vail's guides were required to maintain constant radio contact to confirm that the braking system had been safely reset before each guest was sent down the line. *See* **Exhibit 1**, at ¶¶ 123-139.

4. Vail and Bonsai each knew prior to the subject accident that zip-lining at high speeds was associated with risk of serious injury. They knew that large-scale zip-line courses like Game Creek exponentially increased these risks because of the taller towers, higher and longer zip-lines, and higher speeds. Serious and fatal injuries on zip-line courses were well-known to Defendants. Vail knew of at least <u>eleven</u> specific instances in just the few years before Plaintiff's accident where guests were injured in accidents on *its own* zip-line courses. *See* **Exhibit 1**, at ¶¶ 60-71.

5. Bonsai completed construction and turned over operational control of the Game Creek course to Vail in the fall of 2015. *See* **Exhibit 1**, at ¶¶ 121, 141. Bonsai continued to perform inspections and periodic maintenance on the Game Creek course, including "retrofitting" the braking systems in the summer of 2016 and the spring of 2017. Vail hired Bonsai to obtain and renew its commercial license with the State of Colorado. *See* **Exhibit 1**, at ¶¶ 142-147.

6. In late June, 2017, a guest was injured in an accident on the Game Creek course, and a primary braking system failed on one of the course's zip-lines. The design and components of the braking system that failed were the same or substantially similar to the design and

components of the braking system on the subject zip-line. *See* **Exhibit 1**, at ¶¶ 148-150.

7. As Bonsai contends,[5] Vail did not properly notify Bonsai of the braking system failure. Its risk manager sent a text message to Bonsai's CEO about a "Zip Stop issue" on June 30, 2017, but Vail did not formally notify Bonsai of any problems or malfunctions of its braking systems, or request Bonsai come out and do an inspection, or ask for advice on whether modifications or repairs were needed. Instead, Vail continued operating the Game Creek course, never advising its guests that the braking systems on the course were susceptible to sudden failure or that a guest had just been injured in an accident on the course. *See* **Exhibit 1**, at ¶¶ 151-157.

8. During their zip-line tour, Lisa Cowles and her husband were repeatedly told to just "trust the equipment" to safely stop them. After a weather delay, they were led back onto the course by Vail guides who were instructed to disregard normal operating procedures and to use a different procedure that caused confusion. After Vail's guides led Plaintiff to the subject zip-line, the guides did not maintain regular radio contact to confirm that each guest was safely received at the bottom and that the braking systems were properly reset. *See* **Exhibit 1**, at ¶¶ 173-176, 196-200, 211-212. This was a flagrant violation of Vail's operating procedures. *See id.*, at ¶¶ 124-134.

9. When Mrs. Cowles approached the bottom of the subject zip-line, both the primary and secondary braking systems failed, causing her to crash at high speed and suffer serious injuries requiring surgery, hospitalization, and subsequent surgeries and therapy. *See* **Exhibit 1**, at ¶¶ 235-240, 243.

10. A risk manager at Vail texted Bonsai's CEO several hours after Mrs. Cowles's accident, "Please call me [sic] we had a second incident on Game Creek. We need to talk ASAP." Bonsai's CEO texted back, "Crap." Vail closed down the Game Creek zip-line course for the rest

[5] *See 10/28/19 Scheduling Order* [Doc. #62], at p. 8 (second full paragraph).

of the 2017 summer season to retrofit and repair the braking systems on the course. *See* **Exhibit 1**, at ¶¶ 249-251, 259, 261.

11. Since Mrs. Cowles' accident, guests have continued to suffer injuries on Vail's zip-line courses, including an incident in July, 2019, in which a guest allegedly was injured by the failure of Vail's zip-line braking system. *See* **Exhibit 1**, at ¶¶ 272-275.

## II. GOVERNING LAW ON VAIL'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

12. Granting a Rule 12(b)(6) motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

13. "When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alexander v. Walmart Stores, Inc.*, 2008 WL 4830821, *3 (D. Colo. Nov. 5, 2008) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).[6] "Courts should look to the specific allegations of the complaint to determine whether they plausibly support a claim for relief – that is – a complaint must include enough facts to state a claim for relief that is plausible on its face." *Alexander, supra* (citing *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)) (internal quotations omitted).

14. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

[6] *See also Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

1194, 1201 (10th Cir. 2003); *see also Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "[S]o long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, [s]he has met the threshold pleading standard." *Trujillo v. City & County of Denver*, 2016 WL 5791208, *6 (D. Colo. Sep. 7, 2016) (citing *Twombly, supra*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). "Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias, supra*, 567 F.3d at 1169 (quoting *Twombly, supra*, 550 U.S. at 556).

15. "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Traynom v. Cinemark USA, Inc.*, 940 F.Supp.2d 1339, 1352 (D. Colo. 2013) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). "[T]he Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint . . . " *Traynom, supra*.

## III. VAIL's RULE 12(b)(6) MOTION SHOULD BE DENIED

### A. Vail's Motion is Rendered Partially Moot by Elimination of Counts IV, V, VI, VIII, and IX in the Second Amended Complaint.

16. Plaintiff has filed a motion for leave to file her Second Amended Complaint, omitting claims against Vail sounding in strict liability, negligence, breach of express and implied warranties, fraud, and joint venture liability and including additional factual allegations based on documents only just produced by the Defendants. *Compare* **Exhibit 1** and Plaintiff's First Amended Complaint [Doc. #9, Counts IV, V, VI, VIII, and IX]. Plaintiff asked Vail to withdraw its pending motion without prejudice and to refile its motion, if appropriate, as to the Second Amended Complaint, but Vail refused to do so. *Conferral Emails*, **Exhibit 2**.

17. "Generally, when an amended complaint is filed, the previous complaint is wiped out and the operative complaint is the most recently filed version." *Calvert v. Siemen Water Tech. Corp.*, 2010 WL 724380, *2 (D. Colo. Mar. 2, 2010) (citing *Robinson v. Dean Foods Co.*, 2009 WL 723329, *4 (D. Colo. Mar. 18, 2009); *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002)). Where a plaintiff omits from an amended complaint claims that are subject to a Rule 12(b)(6) motion filed as to the previous complaint, the motion is subject to dismissal as moot. *See id.* "Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." *Scott v. Buckner Co.*, 388 F.Supp.3d 1320, 1324 (D. Colo. 2019). This Court therefore does not need to reach Vail's arguments as to why Counts IV, V, VI, VIII, and IX should be dismissed if the Second Amended Complaint is accepted for filing.

**B. Plaintiff's Second Amended Complaint States Cognizable Claims for Relief Based on Vail's Willful and Wanton Conduct in Causing Plaintiff's Injuries.**

18. ***Plaintiff's Second Amended Complaint.*** "[T]he general practice in this Circuit" is to not dismiss a case under Rule 12(b)(6) "until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations." *Virostek v. Indy-Mac Mortg. Servs.*, 2012 WL 10292, *2 (D. Colo. Jan. 3, 2012). Plaintiff has done exactly this, tendering her Second Amended Complaint, which includes supplemental allegations supporting her Premises Liability Act and gross negligence claims against Vail and adds an additional count of willful and wanton conduct and fraud under the Exemplary Damages Statute, C.R.S. § 13-21-102.

19. The allegations supporting the Premises Liability Act, Exemplary Damages, and gross negligence counts in Plaintiff's proposed Second Amended Complaint are set forth in the Complaint itself. *See* **Exhibit 1**. In summary, Plaintiff contends that Vail engaged in willful,

wanton, and fraudulent conduct by continuing to operate the Game Creek course when it had actual knowledge that the braking systems on the course were subject to sudden failure and *had indeed failed* weeks earlier such that continuing operations posed a substantial and unreasonable risk of serious injury or death to guests. *See id.*, at ¶¶ 149-151, 352-353. It withheld this information from Plaintiff and other course guests (as well as the manufacturer) while advising Plaintiff to "trust the equipment" – the same equipment it knew could fail at any moment and *that it knew did fail just weeks earlier*. *See id.*, at ¶¶ 149-151, 155, 352-353. It also directed its employees to disregard normal operating procedures following a weather delay, instead following a procedure that apparently confused its employees relating to the mandatory resetting of the braking systems after each guest. *See id.*, at ¶¶ 123-134, 196-200, 205, 211-212, 352-353.

20. ***Exemplary Damages Claims in Colorado.*** Colorado law permits a plaintiff to amend their complaint to assert a claim for exemplary damages where "the action complained of was attended by circumstances of fraud, malice, or willful and wanton conduct." C.R.S. § 13-21-102(1)(a). Colorado statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." C.R.S. § 13-21-102(1)(b).

21. The Colorado Supreme Court has characterized "willful and wanton conduct" as synonymous with "gross negligence," i.e., "such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness." *White v. Hansen*, 837 P.2d 1229, 1233 & n.5 (Colo. 1992) (quoting *Black's Law Dictionary*, 1185-86 (4th ed. 1986)). The Court has also characterized Colorado's standard for asserting an exemplary damages claim – prima facie proof – as "a lenient standard." *Stamp v. Vail Corp.*, 172 P.3d 437, 450 (Colo. 2007).

"A plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of a case," *id.*, and trial courts should afford a plaintiff "some leeway in establishing [her] prima facie case." *Leidholt v. District Court*, 619 P.2d 768, 771 (Colo. 1980), *rev'd in part on other grounds*; *accord Wake v. SSC Greeley Centennial Operating Co., LLC*, 2012 WL 6608537 (D. Colo. Dec. 18, 2012) (granting plaintiff's motion for leave to assert exemplary damages claim).

22. As set forth in Plaintiff's Conditional Motion for Leave to File her Second Amended Complaint, filed contemporaneously herewith, the allegations in her Second Amended Complaint state a cognizable claim for relief based on prima facie proof of Vail's willful and wanton conduct and circumstances of fraud attending Plaintiff's injuries.[7] Put simply, when a guest was injured and a brake system failed on the same course just weeks earlier, Vail should have taken some action – properly notify Bonsai, shut down the course, fix the defective condition – to ensure guest safety. Instead, it told guests to "trust" equipment it knew had recently failed and then abandoned its mandatory safety procedures in the face of a weather delay. Proceeding in the face of a known risk of harm is classic evidence supporting an exemplary damages claim. *See, e.g., Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1092-94 (Colo. 2011) (upholding $18 million against damages award against telecommunication company that failed to implement periodic pole inspection program it knew was necessary to avoid pole rot and collapse); *Bodah v. Montgomery Ward & Co.*, 724 P.2d 102, 104 (Colo. App. 1986) (affirming exemplary damages award against retailer that failed to correct known dangerous condition in its store); *Rowan v. Vail Holdings, Inc.*, 31 F.Supp.2d 889, 900 (D. Colo. 1998) (permitting willful and wanton conduct claim based on,

---

[7] Plaintiff incorporates by reference herein the arguments and authorities set out in her Conditional Motion for Leave to File the Second Amended Complaint. Fed. R. Civ. P. 10(c).

*inter alia*, prior notice of hazard to ski resort operator); *accord Wake, supra* (exemplary damages claim allowed as to nursing home that used mechanical lift it knew was not working properly).

23. ***PLA Exclusivity Does Not Bar Plaintiff's Remaining Claims***. Vail argues in its motion that all of Plaintiff's "common law claims" are "preempted" by the Premises Liability Act. This argument fails with respect to counts in both First and Second Amended Complaints.

24. First, the Premises Liability Act does not bar claims based on willful and wanton conduct or gross negligence. Under the Act, an invitee like Plaintiff can recover under "all of the circumstances under which a trespasser or licensee could recover," including "damages *willfully or deliberately caused* by the landowner." C.R.S. § 13-21-115(3)(a)-(c), (3.5) (emphasis added). The phrase "willfully or deliberately caused" is an obvious reference to "willful and wanton conduct," which is synonymous with "gross negligence." *White*, *supra*, 837 P.2d at 1233 & n.5; *see also* C.R.S. § 13-21-102(1)(b) (definition of "willful and wanton conduct"). Rather than "preempting" common law claims for gross negligence, the Premises Liability Act reflects the Colorado General Assembly's decision to impose a *statutory* duty on landowners to refrain from acts of willful and wanton conduct or "gross negligence." *Accord Vigil v. Franklin*, 103 P.3d 322, 329-30 (Colo. 2004) (General Assembly possesses authority to "retain" common law duties and defenses in statutory enactments). Plaintiff's gross negligence claim is not "preempted" by the Premises Liability Act because the duty on which the claim depends appears in the plain language of the Act itself.

25. Second, the Premises Liability Act does not bar a willful and wanton conduct claim under the Exemplary Damages Statute. The Act is clear that a landowner sued under the PLA "shall be liable only as provided in subsection (3) of this section." C.R.S. § 13-21-115(2). Subsection 3 defines the scope of the duties of care owed by a landowner to "invitees," "licensees,"

and "trespassers" injured on their property. *Id.* § 13-21-115(3)(a)-(c). Under the Act, a landowner owes a duty to refrain from "willfully or deliberately causing" injury to invitees, licensees, and trespassers alike. *See id.* § 13-21-115(3)(a), (3.5). Reading the Act and Exemplary Damages Statute *in pari materia*, it is clear that the Act reveals no evidence of legislative intent to immunize landowners who engage in willful and wanton conduct from exemplary damages liability. *Accord Union Pac. R. Co. v. Martin*, 209 P.3d 185, 189 (Colo. 2009).[8] Indeed, immunizing landowners from such liability would frustrate the legislative intent clear from the plain language of the Act.[9]

**C. <u>Vail's Liability Waiver Does Not Provide a Basis for Dismissal in This Case</u>.**

26. ***The Affirmative Defense of Waiver is Not Properly Resolved on a Rule 12(b)(6) Motion***. "Rule 8(c)(1) lists 'waiver' as an affirmative defense." *Statebridge Co., LLC v. Martin-Powell, LLC*, 2019 WL 2866692, *5 (D. Colo. July 3, 2019) (citing Fed. R. Civ. P. 8(c)(1)). "Therefore it is generally Defendant's burden to plead the waiver defense in its answer rather than raising it in a motion to dismiss." *Id.* (citing, *inter alia*, *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009)).

27. The enforcement of an exculpatory agreement purportedly barring a plaintiff's claim constitutes an affirmative defense of waiver. *Accord Eburn v. Capitol Peak Outfitters, Inc.*, 882 F.Supp.2d 1248, 1252 (D. Colo. 2012); *Squires ex rel. Squires v. Goodwin*, 829 F.Supp.2d 1062, 1067 (D. Colo. 2011); *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 783 (Colo. 1989).

28. While, "[o]n occasion … it is proper to dismiss a claim on the pleadings based on

---

[8] "[I]t is a well-accepted tenet of statutory construction that in the absence of a contrary indication, statutes should be construed to assume the existence of other parts of the same statutory scheme and create a single, harmonious whole." *Id.*

[9] *Accord Sixta v. Bass Pro Outdoor World, LLC*, No. 1:17-cv-01517-LTB-SKC (D. Colo. Dec. 14, 2018) (order granting plaintiff's motion to assert exemplary damages claim based on willful and wanton conduct in Premises Liability Act case), **Exhibit 3**; *Complaint in Sixta v. Bass Pro Outdoor World* (reflecting Plaintiff's Premises Liability Act claim), **Exhibit 4**.

an affirmative defense … that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Statebridge Co., LLC, supra*.

29. Such is not the case here. Neither of Plaintiff's Complaints "admit" the elements of Vail's waiver defense or otherwise allege that she signed an exculpatory agreement. *See generally Plaintiff's First Amended Complaint* [Doc. #9]; **Exhibit 1**, *supra*. Indeed, both her First Amended Complaint and her proposed Second Amended Complaint allege facts supporting Premises Liability and gross negligence claims that would bar enforcement of such a liability waiver. *See, e.g., Plaintiff's First Amended Complaint* [Doc. #9], at ¶¶ 62-63, 95, 97-104, 126-128, 150-156, 158, 164-165, 186, 188-192, 195, 353-414, 422-426; *see also* **Exhibit 1**, *supra*.

30. An affirmative defense of waiver is not properly resolved on a Rule 12(b)(6) motion, outside the rarest of cases, because the *Defendant* bears the burden of pleading and proving up the defense. *Squires, supra*, 829 F.Supp.2d at 1067; *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("A plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense."). Indeed, *every* single case Vail cites in support of its waiver defense was decided on a summary judgment motion; none were decided on a Rule 12(b)(6) motion.[10]

31. ***Exculpatory Agreements are Unenforceable as to Claims of Gross Negligence***

[10] *See, e.g., Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243 (10th Cir. 2018) (entry of summary judgment on waiver defense); *Patterson v. PowderMonarch, LLC*, 926 F.3d 633 (10th Cir. 2019) (same); *Raup v. Vail Summit Resorts, Inc.*, 734 Fed. App'x 543 (10th Cir. May 8, 2018) (unpublished) (same); *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150 (10th Cir. 2016) (same); *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105 (10th Cir. 2002) (same); *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465 (Colo. 2004) (same); *B&B Livery, Inc. v. Riehl*, 960 P.2d 134 (Colo. 1998) (same); *Heil Valley Ranch, supra* (same); *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981) (same); *Hamill v. Cheley Colo. Camps*, 262 P.3d 945 (Colo. App. 2011) (same); *Squires, supra* (entering summary judgment on waiver defense); *Bauer v. Aspen Highlands Skiing Corp.*, 788 F.Supp. 472 (D. Colo. 1992) (same).

***and Willful and Wanton Conduct.*** "[A]greements to release a party from liability for its simple negligence, although not void as against public policy in every instance, are closely scrutinized for particular circumstances or context that might nevertheless render them invalid." *Boles v. Sun Ergoline*, 223 P.3d 724, 726 (Colo. 2010). For example, the Colorado Supreme Court has made clear that "in no event [can] public policy permit an exculpatory agreement to shield against a claim for willful and wanton conduct, regardless of the circumstances or intent of the parties." *Id.*

32. The basic principle that recreational waivers are unenforceable in the context of a willful and wanton conduct or gross negligence claim is not a controversial one. The Colorado Supreme Court and the Tenth Circuit have each repeatedly reaffirmed it. *See, e.g., Boles, supra*; *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 468 (Colo. 2004); *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018); *accord Rowan, supra*. Vail does not argue otherwise in its motion, despite Plaintiff's assertion of a gross negligence claim in her First Amended Complaint. The waiver does not bar Plaintiff's claims based on Vail's willful and wanton conduct in this case.

33. ***The Liability Waiver is Not Properly Before the Court on Vail's Rule 12(b)(6) Motion.*** "Generally, when ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a court should not look beyond the contents of the complaint itself." *Hampton v. Root9B Technologies, Inc.*, 2016 WL 7868823, *2 (D. Colo. Aug. 3, 2016) (citing *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002)). While the Court has discretion to consider materials beyond the pleadings under certain narrow circumstances, *see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), none of those circumstances are present here. Vail's liability waiver is not incorporated by reference in either the First or Second Amended Complaints; it is not "referred to" in either Complaint or "central to" any of Plaintiff's claims; and it is not a "matter[] of which the court may

take judicial notice." *Gee, supra*.

34. Contemporaneously herewith, Plaintiff is filing a Motion to Strike Certain Exhibits to Vail's Motion to Dismiss or, alternatively, to convert Vail's motion to a Motion for Summary Judgment. Plaintiff incorporates the arguments and authorities set forth in that motion herein by reference. Fed. R. Civ. P. 10(c). As set forth in that Motion, Vail's Rule 12(b)(6) motion is simply not an appropriate vehicle for the Court to decide disputed factual issues concerning the enforceability of Vail's liability waiver under the circumstances of this case. Resolution of those issues should wait until another day and occur based on a developed factual record.

WHEREFORE, Plaintiff, Lisa Cowles, respectfully requests this Court DENY Vail's Motion to Dismiss her First Amended Complaint for Damages Pursuant to Rule 12(b)(6) and grant her such other and further relief as the Court deems just.

Dated this 12th day of November, 2019.[11]

**THE KOMYATTE LAW FIRM LLC**

By:

/s/ Paul J. Komyatte
Paul J. Komyatte (No. 22750)
David P. Mason (No. 41333)
The Komyatte Law Firm, LLC
1536 Cole Blvd., Ste. 300
Lakewood, CO 80401
*Attorneys for Plaintiff*

[11] Pursuant to D.C.COLO.LCivR 7.1(d) and Fed. R. Civ. P. 6(a)(1)(C) and 6(a)(6)(A), Plaintiff's Conditional Response to Vail's motion is timely filed given the deadline to file her response brief was extended from November 11, 2019 to November 12, 2019. *Accord* 5 U.S.C. § 6103(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November, 2019, a true and accurate copy of the foregoing was electronically filed with the Court and served upon all counsel of record via the Court's CM/ECF system:

**THE KOMYATTE LAW FIRM LLC**

*s/ David P. Mason*
David P. Mason, Esq.