## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-1946-WJM-MEH

**LISA COWLES**, a citizen of Wisconsin,

Plaintiff,

v.

**BONSAI DESIGN LLC,** a Colorado limited liability
company with its principal place of business in Colorado
and with three members, who citizens of Colorado and/or
citizens of North Carolina;
**VAIL RESORTS, INC.,** a Delaware corporation with
its principal place of business in Colorado;
**VAIL RESORTS HOLDINGS, INC.,** a Colorado
corporation with its principal place of business in Colorado;
**THE VAIL CORPORATION**, a Colorado corporation
with its principal place of business in Colorado; and
**VAIL RESORTS MANAGEMENT COMPANY**, a
Colorado corporation with its principal place of business in
Colorado,

Defendants.

---

## PLAINTIFF'S <u>CONDITIONAL</u> MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a)

---

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff, Lisa Cowles, respectfully requests leave to file

her Second Amended Complaint, tendered contemporaneously herewith, to supplement her

general allegations with new information obtained from Defendants in the last few weeks,

including documents and discovery responses produced less than a week ago, and to assert a claim

for exemplary damages against Vail based on prima facie proof of its willful and wanton conduct

and circumstances of fraud in causing Plaintiff's injuries.

On the date of Plaintiff's injuries, Vail knew that the braking systems on its Game Creek

zip-line course were subject to sudden failures and malfunctions posing a substantial risk of serious injury to its guests. At least eleven consumers had been injured in accidents on its zip-line courses in the several years prior to the accident, including one guest injured in an accident on the Game Creek course just a week or two before Plaintiff's accident. A braking system of the same or substantially similar design as the subject zip-line failed on the Game Creek course just one week prior to Plaintiff's injuries, but Vail failed to properly notify the manufacturer of the incident and elected to keep operating the course instead of shutting down so the problem could be addressed. It also withheld from guests like Plaintiff that it knew the braking systems on the course were subject to sudden failures and malfunctions and that the braking system had failed just days or weeks earlier. Vail's conduct in this regard is the textbook definition of conscious disregard of a known risk of harm justifying amendment to assert a willful and wanton conduct claim against Vail.

Plaintiff's Second Amended Complaint also streamlines her claims against Vail[1] and Defendant Bonsai Design LLC ("Bonsai") while supplementing the well-pled allegations in her operative complaint based on new documents and information produced with Defendants' October 21, 2019 initial disclosures and November 6, 2019 responses to Plaintiff's first set of discovery requests. Plaintiff's remaining counts – strict liability and negligence as to Bonsai and premises liability, exemplary damages, and gross negligence as to Vail – are cognizable under the governing law and supported by well-pled allegations stating plausible claims for relief.

Given the absence of any undue delay or other reason to deny Plaintiff's motion, Plaintiff ought to be afforded opportunity to test her claims on the merits. Accordingly, Plaintiff's motion

---

[1] Defendants Vail Resorts, Inc., Vail Resorts Holdings, Inc., Vail Corporation, and Vail Resorts Management Company are collectively referred to as "Vail" in this Motion.

should be granted and her Second Amended Complaint accepted for filing.

**Certificate of Conferral Pursuant to D.C.COLO.LCivR 7.1(a)** – Undersigned counsel certify that they have conferred on the relief sought herein with counsel for Vail and for Bonsai. Vail has indicated that it opposes Plaintiff's motion for leave to file her Second Amended Complaint. Bonsai has indicated it is reviewing Plaintiff's proposed Second Amended Complaint and will let Plaintiff know if it will maintain its pending motion to dismiss or "proceed in another fashion."

## I.        RELEVANT FACTS AND PROCEDURAL HISTORY

1.        *The Subject Accident.* This lawsuit arises from a zip-lining accident in Vail on July 7, 2017, in which Plaintiff, Lisa Cowles, suffered serious and permanent injuries. On that date, a braking system designed, manufactured, selected, assembled, and installed by Bonsai failed as Plaintiff approached the bottom of a zip-line on Vail's Game Creek zip-line course, causing her to crash into the structure at the end the zip-line at a high rate of speed and suffer traumatic injuries to her knee, legs, feet, and head. *Plaintiff's Second Amended Complaint*, **Exhibit 1**, at ¶¶ 1, 235-244.

2.        *Knowledge of the Danger.* Prior to the subject accident, Vail and Bonsai each knew that zip-lining at high speeds can be associated with risk of serious injury. They each knew that this risk increased exponentially on large-scale commercial zip-lining courses, "canopy tours," and "Sky Rider" courses like Game Creek because such courses are designed to transport guests between taller towers, on higher and longer zip-lines, and at considerably higher speeds than other types of zip-lines. Serious and fatal injuries on such commercial zip-line courses were widely known in the industry for years before Plaintiff's accident. Vail knew of at least <u>eleven</u> specific instances where guests were injured in accidents on its own zip-line courses just in the few years

before Plaintiff's accident, including a brake failure just days or weeks before Plaintiff's accident. *See* **Exhibit 1**, at ¶¶ 60-71, 352(a)-(g).

3.    ***Vail's Willful and Wanton Conduct.*** Vail, which operated the Game Creek course, was responsible for safely maintaining and operating the zip-line and braking systems designed and installed by Bonsai. In late June, 2017, a guest was injured in an accident on the course and an identical braking system on another zip-line failed. Vail failed to properly notify the manufacturer of these issues. Instead, Vail continued operating the course while concealing from its guests the fact that the braking systems on the course were subject to sudden failures and malfunctions creating a substantial risk of serious injury or death. Plaintiff's injuries on July 7, 2017 resulted from a dangerous condition of which Vail had actual knowledge and which it concealed from Plaintiff and other guests on the course. *See* **Exhibit 1**, at ¶¶ 121-157, 352(g)-(j), 353(a)-(r).

4.    ***The Subject Lawsuit.*** Plaintiff filed suit against Bonsai and Vail on July 5, 2019, asserting counts sounding in strict liability, negligence, breach of warranty, premises liability, fraud, joint venture liability, and gross negligence. [*See* Doc. #1].[2]

5.    Plaintiff tendered her First Amended Complaint on July 22, 2019, clarifying her allegations supporting the Court's exercise of subject matter jurisdiction over Bonsai. [*See* Doc. #5, 5-1, 5-2]. The Court accepted Plaintiff's First Amended Complaint for filing on July 22, 2019. [*See* Doc. #8]. The First Amended Complaint is currently the operative complaint in this matter [*See* Doc. #9].

6.    Both Vail and Bonsai requested and received unopposed extensions of time to

---

[2] On October 17, 2019, the parties filed stipulations for dismissal without prejudice of various Bonsai and Vail entities named as defendants in the First Amended Complaint. [*See* Doc. #51, 52].

4

respond to Plaintiff's complaint. On September 10, 2019, Vail filed an unopposed motion for a one-month extension of time to respond to the First Amended Complaint. [*See* Doc. #32]. Vail's extension was granted through October 14, 2019 by minute Order dated September 10, 2019. [*See* Doc. #33]. On September 18, 2019, Bonsai filed an unopposed motion for a one-month extension of time to respond to the First Amended Complaint. [*See* Doc. #39]. Bonsai's extension was granted through October 28, 2019 by minute Order dated September 19, 2019. [*See* Doc. #40].

7. ***Production of Initial Discovery Documents by Defendants.*** Following the parties' Fed. R. Civ. P. 26(f) telephone conference on October 6, 2019, Plaintiff served her initial interrogatories and requests for production on October 7, 2019.

8. On October 21, 2019, the parties served their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). Vail and Bonsai each produced roughly 1,250 pages of documents with their respective disclosures. Plaintiff's counsel promptly began reviewing the Defendants' initial document production at that time.

9. Vail filed its motion to dismiss Plaintiff's First Amended Complaint on October 21, 2019. [*See* Doc. #56].[3] Bonsai filed its motion to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on October 28, 2019. [*See* Doc. #61].

10. Following an initial Scheduling Conference on October 28, 2019, this Court set case deadlines and entered a Scheduling Order. [*See* Doc. #60, 62]. As relevant here, the deadline for amendment of pleadings under the Scheduling Order is 180 days "after the resolution of any party's Federal Rule of Civil Procedure 12(b) motion … except amendments to assert any claims for exemplary damages, which shall be governed by Colorado statute." [Doc. #62, at 17, § 9(a)].

---

[3] Vail's initial motion to dismiss [Doc. #45] was stricken for non-compliance with Judge Martinez's Revised Practice Standard III.D.1. [*See 10/17/19 Minute Order*, Doc. #55].

11.     Vail and Bonsai served their respective answers to Plaintiff's first set of written discovery on November 6, 2019. Vail and Bonsai each produced several hundred pages of additional documents and information responsive to certain of Plaintiff's requests. Each have indicated they have yet to produce thousands of pages of additional discoverable documents including thousands of pages of emails and internal documents concerning the subject zip-line and accident.

12.     ***Vail Refuses to Agree to an Extension on Plaintiff's Response to its Motion to Dismiss.*** On November 7, 2019, Plaintiff's counsel conferred with Vail's counsel on an enlargement of time to respond to Vail's re-filed motion to dismiss, citing the dispositive nature of the motion, various documents attached as exhibits to the motion (despite the provisions of Fed. R. Civ. P. 12(d)), Defendants' recent document production and discovery answers, and the need for additional time for Plaintiff to consider and confer on potential amendments to the Complaint.

13.     Vail's counsel indicated that Vail would not agree to any extension of time for Plaintiff to respond to its Motion to Dismiss, including an extension of time to consider and prepare amendments to the Complaint based on new documents and information and responsive to arguments raised in the Defendants' respective motions to dismiss.

14.     ***Plaintiff's Proposed Second Amended Complaint.*** Plaintiff is now seeking leave to file her Second Amended Complaint, narrowing her claims and supplementing her allegations based on the new documents and information obtained from Defendants in the last few weeks, and without prejudice to tender additional amendments to her complaint upon completion of substantial discovery and production of substantial documents yet to be produced by Defendants.[4]

---

[4] Vail and Bonsai have each indicated that they will be producing email correspondence responsive to Plaintiff's discovery requests as well as other documents. Vail has indicated it will object to producing any documents concerning its analysis of the subject accident including, presumably,

## II.    GOVERNING LAW ON PLAINTIFF'S MOTION TO AMEND

### A. <u>Governing Law on Motions to Amend Pursuant to Fed. R. Civ. P. 15(a)(2)</u>

15.    "Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2). "If the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test her claim on the merits." *Id.*

16.    "The purpose of Rule [15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citations omitted). As such, "the general practice in this Circuit" is to not dismiss a case under Rule 12(b)(6) "until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations." *Virostek v. Indy-Mac Mortg. Servs.*, 2012 WL 10292, *2 (D. Colo. Jan. 3, 2012) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Consistent with the command of Fed. R. Civ. P. 15(a), federal courts in the Tenth Circuit and elsewhere routinely grant motions for leave to amend aimed at clarifying and streamlining the bases for a litigant's claims for relief, especially in connection with the filing of a motion to dismiss a litigant's entire case pursuant to Fed. R. Civ. P. 12(b)(6). *Accord Virostek, supra.*

---

witness statements, photographs, videos, and other discoverable materials. Plaintiff has yet to be provided with a privilege log setting out Vail's objections to this discovery. Bonsai is also objecting to production of documents concerning "other similar incidents" ("OSI") of users being injured on its zip-lines. *See, e.g., A.H. ex rel. Hadjih v. Evenflo Co., Inc.*, 2011 WL 3684807, *3-6 (D. Colo. Aug. 23, 2011) (citing *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000)); *see also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009). Plaintiff's counsel anticipates court intervention may be needed to resolve these discovery issues but will engage in further conferral with Defendants' respective counsel before seeking court intervention.

B. <u>**Governing Law on Exemplary Damages**</u>

17.     Colorado's Exemplary Damages Statute, C.R.S § 13-21-102, provides that "[a]

claim for exemplary damages … may not be included in any initial claim for relief." C.R.S. § 13-

21-102(1.5)(a). Instead, "[a] claim for exemplary damages … may be allowed by amendment to

the pleadings only after the exchange of initial disclosures … and the plaintiff establishes prima

facie proof of a triable issue" of exemplary damages, i.e., "that the action complained of was

attended by circumstances of fraud, malice, or willful and wanton conduct." *Id.* § 13-21-102(1),

(1.5).[5]

18.     Under Colorado statute, "willful and wanton conduct" is defined as "conduct

purposefully committed which the actor must have realized as dangerous, done heedlessly and

recklessly, without regard to consequences, or of the rights and safety of others, particularly the

plaintiff." C.R.S. §§ 13-21-102(1)(b). The Colorado Supreme Court has construed this definition

to include "conduct that creates a substantial risk of harm to another and is purposefully performed

with an awareness of the risk in disregard of the consequences." *Palmer v. A.H. Robins Co.*, 684

P.2d 187, 215 (Colo. 1984).

19.     As contrasted with intentional tortious conduct, the Colorado Supreme Court has

characterized "willful and wanton conduct" as synonymous with "gross negligence," i.e., "such a

gross want of care and regard for the rights of others as to justify the presumption of willfulness

and wantonness." *White v. Hansen*, 837 P.2d 1229, 1233 & n.5 (Colo. 1992) (quoting *Black's Law*

*Dictionary*, 1185-86 (4th ed. 1986)); *accord Martinez v. Estate of Bleck*, 2016 CO 58, ¶ 32 ("willful

and wanton conduct is not merely negligent; instead, it must exhibit a conscious disregard for the

---

[5] The October 28, 2019 Scheduling Order provides that "amendments to assert any claims for
exemplary damages … shall be governed by Colorado Statute." [Doc. #62, p. 17, § 9(a)]

danger"); *Carlson v. McNeill*, 114 Colo. 78, 162 P.2d 226, 230-31 (1945) (defining willful and wanton conduct as conduct evincing "an utter disregard of consequences, aside from any intentional malice in its odious or malevolent sense"; C.R.S. §§ 13-21-102(1)(a) ("malice" and "willful and wanton conduct" are separate and independent bases for an award of exemplary damages).

20.     "Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007). "Prima facie proof of a triable issue of exemplary damages is established by a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.*

21.     The Colorado Supreme Court has characterized this as "a lenient standard," observing that "[a] plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of a case." *Stamp, supra*, 172 P.3d at 450; *accord Wake v. SSC Greeley Centennial Operating Co., LLC*, 2012 WL 6608537 (D. Colo. Dec. 18, 2012) (granting plaintiff's motion for leave to assert exemplary damages claim).

22.     The Court has likewise observed, consistent with Rule 15(a) and "the general practice in this Circuit," *Virostek, supra*, that trial courts should afford a plaintiff "some leeway in establishing [her] prima facie case. *Leidholt v. District Court*, 619 P.2d 768, 771 (Colo. 1980), *rev'd in part on other grounds*.

### III.     PLAINTIFF'S MOTION SHOULD BE GRANTED AND HER SECOND AMENDED COMPLAINT ACCEPTED FOR FILING

#### A.  Prima Facie Proof of a Triable Issue of Exemplary Damages as to Vail

23.     ***Vail's Actual Knowledge of the Danger.*** Prior to Plaintiff's accident, Vail knew that zip-lining was associated with risk of serious injury or death and that this risk increases

9

exponentially on large-scale commercial zip-lining courses like Game Creek, which was designed to transport guests between taller towers, on higher and longer zip-lines, and at considerably higher speeds than other zip-lines. *See, e.g.,* **Exhibit 1**, at ¶¶ 62-63, 352(a), (b). It knew that properly functioning zip-line braking systems were critically important to preventing serious injuries and deaths in accidents on its course and that operating the course with faulty equipment, or without following critical safety procedures, created a substantial and unreasonable risk of serious injury or death to course guests. *See id.*, at ¶¶ 70-71, 352(c), (d). It knew about numerous widely reported accidents where users were injured or killed on large-scale zip-lines like Game Creek as well as at least eleven separate such accidents on its own zip-line courses just in the few years before Plaintiff's accident. *See id.*, at ¶¶ 60-69, 352(e), (f); *see also Vail's Responses to Plaintiff's First Set of Discovery Requests*, **Exhibit 2**, at 11-12 (response to interrogatory #11).

24.    ***Vail's Actual Knowledge of the Danger Specific to Game Creek.*** In late June, 2017, only a week or two before the subject accident, a guest was injured in an accident on the Game Creek zip-line course and a braking system failed and malfunctioned on the course. *See* **Exhibit 1**, at ¶¶ 148-49, 352(g), (h); *see also* **Exhibit 2**, at 11-12 (response to interrogatory #11); *Vail-Bonsai Text Messages*, **Exhibit 3** (VAIL001211); *Vail-Bonsai Post-Accident Emails*, **Exhibit 4** (VAIL001222). The design and components of the braking system that failed were the same or substantially similar as the design and components of the braking system on the subject zip-line, putting Vail on ample notice that the braking system on the subject zip-line could suddenly fail and malfunction during foreseeable use. *See id.* at ¶¶ 150, 156-57, 352(i), (j); *see also Bonsai's Feb. 8, 2017 Letter to Vail re Head Rush Policy Re: Zip-line Emergency Brakes*, **Exhibit 5** (VAIL001212).

25.    ***Vail's Deliberate Acts in Conscious Disregard of the Danger.*** When a guest was

10

injured in an accident on the Game Creek zip-line course and a braking system failed and malfunctioned in late June, 2017, Vail knew there was a problem on the course that required immediate resolution to avoid endangering the safety of its guests. *See* **Exhibit 1**, at ¶¶ 69-71, 148-157, 352(g)-(j); *see also* **Exhibit 3**; **Exhibit 4** (VAIL001222).

26.   Instead of properly notifying the manufacturer of an apparent problem with the braking systems, Vail continued operating the Game Creek zip-line course through July 7, 2017. *See* **Exhibit 1**, at ¶¶ 149-154; *see also* **Exhibit 2**, at 12 (response to interrogatory #12). It failed to properly request an inspection or repairs by the manufacturer, did not take steps to verify the braking systems were safe to continue using, and did not advise its guests of the apparent problem with those systems. *See* **Exhibit 1**, at ¶¶ 153, 353(a)-(l); *see also* **Exhibit 3**, *supra*; *Plaintiff's Offer of Proof*, **Exhibit 6**, at ¶ 3. Making matters worse, it directed its guides to falsely advise Plaintiff and other guests to "trust the equipment" it knew was experiencing sudden failure and to disregard normal operating procedures intended to prevent accidents due to miscommunication and misuse of that equipment. *See* **Exhibit 1**, at ¶¶ 166, 173-176, 353(m)-(r); *see also* **Exhibit 6**, at ¶ 2, 5-6.

27.   ***Vail's Unlawful Conduct Causes Plaintiff's Injuries.*** When Plaintiff and her husband were led back out onto the zip-line course, Vail's guides did not appear to be following the procedure followed during the first half of the tour; guests were being sent down the zip-line one at a time in a continuous fashion instead of as a group and the guides did not appear to be maintaining constant radio communication to ensure it was safe to send the next guest down the zip-line. *See* **Exhibit 1**, at ¶¶ 197-200, 211-213; **Exhibit 6**, at ¶¶ 4, 7-9. When Plaintiff was sent down the zip-line and approached the braking equipment at the bottom of the line, the primary and secondary/emergency components of the system failed, causing her to crash at a high rate of speed. **Exhibit 1**, at ¶¶ 226-240; **Exhibit 6**, at ¶¶ 10-13.

28.     ***Courts Permit Exemplary Damages Claims on Similar Facts.*** State and federal courts in Colorado have repeatedly permitted plaintiffs to assert exemplary damages claims under similar circumstances evidencing a defendant's conscious disregard of the danger. *Estate of Martinez, supra.* In *Stamp*, for example, the Colorado Supreme Court permitted the plaintiffs to assert an exemplary damages claim against Vail where its employee drove a snowmobile up a ski slope that was in use by skiers, including the plaintiffs' daughter, who was killed when the Vail employee struck her as he crossed over the crest of a blind knoll while she travelled down the slope. *See Stamp, supra*, 172 P.3d at 440-41, 449-50. Likewise, in *Rowan v. Vail Holdings, Inc.*, 31 F.Supp.3d 889, 900 (D. Colo. 1998), this Court permitted the plaintiffs' claim for willful and wanton conduct to go to the jury, where the plaintiffs contended that Vail failed to add protections to a picnic deck installed at the bottom of a ski run, including after several "close calls" where skiers were injured by colliding with the deck. Similarly, in *Wake*, this Court permitted the plaintiffs to assert an exemplary damages against a defendant nursing home which knew that a mechanical lift it was using to transfer patients was in a state of disrepair but kept using it anyway. *Wake, supra*, 2012 WL 6608537, at *2.

29.     Prima facie proof of a triable issue is not a close call based on Plaintiff's submission here. The Court should accept Plaintiff's proposed addition of an exemplary damages claim against Vail.

## B. Plaintiff's Remaining Amendments Should be Granted as Well.

30.     ***Amendments Based on New Discovery Documents and Information.*** As noted above, Plaintiff's proposed amendments in the Second Amended Complaint are largely based on new documents and discovery answers that Defendants just provided within the last several weeks. *See, e.g.,* **Exhibit 2** through **Exhibit 5**, *supra*. Defendants produced approximately 3,000 pages of

documents beginning with service of their initial disclosures on October 21, 2019 and continuing through service of their respective discovery answers on November 6, 2019. *See* **Exhibit 2**; *see also Vail's Initial Rule 26(a)(1) Disclosures*, **Exhibit 7**; *Bonsai's Initial Rule 26(a)(1) Disclosures*, **Exhibit 8**; *Bonsai's Responses to Plaintiff's First Set of Production Requests*, **Exhibit 9**. As relevant here, Defendants' recent document production includes a "Design and Build Agreement" for the Game Creek zip-line course project; Form of Change Orders memorializing Vail's requests that Bonsai make certain changes to the design of the course; an Amendment to the Design and Build Agreement pertaining to those changes; documents and correspondence concerning turnover of the course from Bonsai to Vail upon completion of construction in the fall of 2015, including testing and inspection documents relating to initial licensing of the course by the State of Colorado for commercial operation in the fall of 2015 and various parts and operation manuals Bonsai provided to Vail upon completion of construction; documents concerning course inspections and maintenance performed by Bonsai after Vail assumed operational control over the course; documents concerning modifications Bonsai and Vail made to the braking systems on the course in 2016 and in 2017, prior to Plaintiff's accident; documents concerning the brake system failure that occurred on the Game Creek zip-line course in late June, 2017, approximately one week before Plaintiff's accident; and limited documents concerning Vail's and Bonsai's correspondence after the subject July 7, 2017 zip-lining accident.

31. Plaintiff's proposed amendments extensively rely on information contained in these new discovery documents and discovery answers, which were not available to Plaintiff before her First Amended Complaint was filed. It is reasonable for Plaintiff to supplement her general allegations and legal claims with new discovery documents and information only recently provided by Defendants especially when the deadline for amendments under the Scheduling Order is still

months away. [*See* Doc. #62, at 17, § 9(a)].

32.     ***Omission of Certain Claims***. The Second Amended Complaint eliminates various counts asserted against Vail and Bonsai in the First Amended Complaint. Plaintiff's Premises Liability Act claim against Bonsai is eliminated based on documents showing that Bonsai completed construction and surrendered operational control over the Game Creek zip-line course to Vail in the fall of 2015. *See, e.g., Bonsai's October 25, 2015 Letter to Vail re: "Game Creek Sky-Rider Tour: official course handoff and operational liability notification*," **Exhibit 10** (VAIL000125-126). Common law claims against Vail and Bonsai based on breach of warranties, fraud, and joint venture are eliminated based on review of the discovery documents and applicable legal authorities, as is the strict liability claim against Vail, based on review of apparently complete copies of the Defendants' September 19, 2012 "Design and Build Agreement" and their February 23, 2015 Amendment to that Agreement, delineating the parties' respective responsibility for the design and manufacture of the course and the fixtures, equipment, and components used on the course.

33.     "In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." *Foman*, *supra* (internal quotations omitted).

34.     Here, there is no basis for this Court to deny Plaintiff's request to file her Second Amended Complaint. Her amendments are largely based on new documents and information only provided by Defendants in the last several weeks, and the deadline for amendments pursuant to the Scheduling Order is months away. There is no evidence of undue delay, bad faith, or dilatory

14

motive on Plaintiff's part, her proposed amendments are well-supported by the discovery obtained to date and not futile, and Defendants will not be unduly prejudiced by acceptance of her Second Amended Complaint for filing.

35.     If anything, acceptance of the Second Amended Complaint will allow for more efficient determination of issues raised in Defendants' respective motions to dismiss that are not mooted by the new Complaint. *Accord Calvert v. Siemen Water Tech. Corp.*, 2010 WL 724380, *2 (D. Colo. Mar. 2, 2010) (citing *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002)).[6]

WHEREFORE, Plaintiff, Lisa Cowles, respectfully requests this Court GRANT her Motion for Leave to File Second Amended Complaint Pursuant to Fed. R. Civ. P. 15(a), tendered contemporaneously herewith as **Exhibit 1**,[7] for filing, and grant her such other and further relief as the Court deems just.

Dated this 12th day of November, 2019.

THE KOMYATTE LAW FIRM LLC

By:
/s/ Paul J. Komyatte
Paul J. Komyatte (No. 22750)
David P. Mason (No. 41333)
The Komyatte Law Firm, LLC
1536 Cole Blvd., Ste. 300
Lakewood, CO 80401
*Attorneys for Plaintiff*

---

[6] "Generally, when an amended complaint is filed, the previous complaint is wiped out and the operative complaint is the most recently filed version." *Id.* Thus, where a plaintiff omits claims in an amended complaint that are subject to a Rule 12(b)(6) motion filed as to the previous complaint, the motion is subject to dismissal as moot. *See id.*

[7] A clean copy of the Second Amended Complaint is attached as **Exhibit 1**. A copy with changes called out is also attached for the Court's review as **Exhibit 1-A**.

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November, 2019, a true and accurate copy of the foregoing was electronically filed with the Court and served upon all counsel of record via the Court's CM/ECF system:

**THE KOMYATTE LAW FIRM LLC**

*s/ David P. Mason*
David P. Mason, Esq.