## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-1946-WJM-MEH

**LISA COWLES**, a citizen of Wisconsin,

Plaintiff,

v.

**BONSAI DESIGN LLC,** a Colorado limited liability
company with its principal place of business in Colorado
and with three members, who citizens of Colorado and/or
citizens of North Carolina;
**VAIL RESORTS, INC.,** a Delaware corporation with
its principal place of business in Colorado, et al.,

Defendants.

---

### PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT BONSAI DESIGN LLC'S RULE 12(b)(6) MOTION TO DISMISS

---

Defendant Bonsai Design LLC's ("Bonsai")  Motion to Dismiss is a procedurally improper attempt to obtain dismissal of Plaintiff's entire case based on factual disputes and matters outside the pleadings, filed without any real conferral on a stipulation to cure perceived defects with Plaintiff's operative Complaint by amendment. Indeed, based on review of discovery documents provided after the filing of Bonsai's motion – which its counsel refused to share with Plaintiff's counsel prior to filing – Plaintiff has elected to file a Second Amended Complaint that moots many of the issues and defeats the remaining issues raised in Bonsai's motion.

First, Plaintiff's Second Amended Complaint, attached as **Exhibit 1** [*see also* Doc. #66-1], omits her alternatively-pled statutory premises liability claim against Bonsai as well as common law claims sounding in breach of express and implied warranties, fraud, and joint venture liability (Counts III, VII, VIII, and IX in the First Amended Complaint, Doc. #9). While Bonsai contends

these claims are insufficiently pled or "preempted" by the Premises Liability Act, the Court need not determine their viability, nor the "preemptive" effect of the Act, as these claims are no longer asserted in the Second Amended Complaint.

Second, Plaintiff's remaining counts against Bonsai in the Second Amended Complaint are cognizable notwithstanding Bonsai's efforts to inject disputed factual matters and matters outside the pleadings into the Rule 12(b)(6) analysis. Plaintiff's strict liability claim is cognizable as pled and not barred by Bonsai's bald contentions that it was an "innocent seller" of the defective zip-lining equipment that injured Plaintiff and that its equipment was not defective because of alleged compliance with safety regulations almost two years before the subject accident. The gross negligence claim is likewise based on well-pled allegations demonstrating Bonsai's recklessness in supplying braking equipment it knew posed a substantial risk of injury and then doing nothing when alerted to a serious safety problem with that equipment a week before Plaintiff's accident.

Third, Bonsai's attempted reliance on an alleged liability waiver fails. Bonsai's purported waiver defense is not properly resolved on its Rule 12(b)(6) motion, and the waiver submitted by Bonsai is not properly before the Court on the motion.[1] Bonsai concedes that any recreational waiver would be unenforceable and void anyway as to Plaintiff's gross negligence claim; the same is true as to Plaintiff's strict liability claim. There is simply no sound basis for the Court to analyze the merits of a waiver issue on Bonsai's Rule 12(b)(6) motion. Disputes as to the enforceability of a waiver as against Plaintiff's negligence claim, including analysis under *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981), should instead be deferred until after the parties have developed a sufficient factual record through discovery, and Bonsai's motion should be denied in its entirety.

---

[1] Contemporaneously herewith, Plaintiff is filing a motion to strike the exhibits submitted by Bonsai with its motion or, alternatively – and conditionally – to convert the motion to a motion for summary judgment, following proper notice and opportunity to complete necessary discovery.

## I.      RELEVANT FACTS

1.      ***The Subject Accident.*** This lawsuit arises from a zip-lining accident on July 7, 2017 in Vail. On that date, Plaintiff and her husband took a zip-lining tour on the Game Creek zip-line course on Vail Mountain. As Plaintiff approached the bottom of a zip-line, a braking system designed, manufactured, and installed by Bonsai failed, causing Plaintiff to crash at a high rate of speed and suffer serious injuries. *Second Amended Complaint*, **Exhibit 1**, at ¶¶ 1, 235-240, 243.

2.      ***Bonsai Retained to Design and Build the Game Creek Course.*** Vail hired Bonsai to design and build the Game Creek zip-line course in 2012. Bonsai marketed its large-scale, high speed zip-line course designs to resort operators like Vail, specifically highlighting how its designs facilitated quick turn-around times and high "through-put" of guests per day so as to "elevate [operators'] business to new heights." Bonsai marketed its custom braking systems to operators like Vail as well, claiming its braking systems "eliminated" the possibility of "patron-to-structure contact," i.e., accidents where course guests crashed at high speeds. **Exhibit 1**, at ¶¶ 38-40, 50-53.

3.      ***Construction of the Game Creek Course.*** Bonsai spent the next several years designing and building a massive zip-line course on Vail Mountain that featured seven zip-lines spanning approximately 10,000 feet, including one zip-line more than a half mile long, one that propelled guests at fifty to sixty miles per hour, and one that was 300 feet above the ground. **Exhibit 1**, at ¶¶ 72-96, 105.

4.      ***Bonsai's Custom Braking System.*** Bonsai designed, manufactured, tested, assembled, and installed its own custom braking systems on all the zip-lines on the Game Creek course, consisting of various components designed and manufactured to work together, including a brake bobbin assembly, a "Zip Stop" brake assembly, an "EAD" (or "emergency arrest device"), an All Stop assembly, and various cables and ropes connecting these and other components.

3

**Exhibit 1**, at ¶¶ 106-107.

5.      Per Bonsai's custom design, the "primary" and "secondary" (or "emergency") components in its braking system, all of which it either manufactured or selected, were designed and installed to work together as a single system and did not function unless assembled, installed, and used together. Bonsai designed, engineered, manufactured, tested, selected, assembled, prepared, and installed all of the zip-line braking systems and components on the entire Game Creek course to work as single integrated braking systems on each individual zip-line, including components fabricated by third parties but selected, assembled, installed, and prepared by Bonsai. **Exhibit 1**, at ¶¶ 54-57, 106-115.

6.      Critically, Bonsai's braking system design did not include hand brakes or any other equipment or means by which a guest on the Game Creek course could independently slow or stop themselves at the bottom of a zip-line. Instead, Bonsai's design put all control over the braking systems and braking components in the hands of guides on the course, who were responsible for regularly inspecting and maintaining the braking systems and components to ensure they were properly working and free of defects, and for properly retrieving, redeploying, and resetting the braking system components after each guest had been safely received at the bottom of a zip-line. Bonsai knew that its custom braking systems were susceptible to failure if the components were not appropriately maintained, retrieved, redeployed, and reset before a guest reached the bottom of a zip-line – such that its design did not, in fact, "eliminate" the possibility of catastrophic high speed accidents involving "patron to structure contact." *See* **Exhibit 1**, at ¶¶ 53, 116-120, 131-140.

7.      ***Bonsai's Ongoing Involvement with the Game Creek Course.*** After completing construction in October, 2015, Bonsai modified (or "retrofit") the braking systems on the Game Creek course a number of times prior to the subject accident, including modifications in June, 2016

and April, 2017. It continued providing operational support to Vail, including course inspections and maintenance, and supplied operational protocols and training materials for Vail to use in operating the braking systems on the course. Bonsai also obtained and renewed Vail's commercial license with the State of Colorado, including in June, 2017 – approximately one month prior to the subject accident. *See id.* at ¶¶ 93-94, 121-130, 141-147.

8.    ***Bonsai's Knowledge of the Risk.*** Bonsai knew prior to the subject accident that zip-lining at high speeds is associated with risks of serious injury and death. It knew that large-scale zip-line courses like Game Creek exponentially increase these risks because of the taller towers, higher and longer zip-lines, and higher speeds, heightening the importance of properly functioning braking systems on such courses. Serious and fatal injuries on large-scale, high speed zip-line courses like the Game Creek course it designed and built at Vail (including numerous injury accidents on other Vail-owned courses) were well-known to Bonsai. *See* **Exhibit 1**, at ¶¶ 59-71.[2]

9.    ***Accidents and Malfunctions on the Game Creek Course.*** In late June, 2017, a guest was injured in an accident on the Game Creek course, and one of Bonsai's braking systems failed on the course. The design and components of the braking system that failed were the same or substantially similar to the design and components of the braking system on the subject zip-line. Although a Vail risk manager alerted Bonsai's CEO of the failure of one of its braking systems on June 30, 2017, there is no evidence that Bonsai responded to this report or did anything to

---

[2] Plaintiff has served Bonsai with requests for documents pertaining to other incidents where consumers were injured in accidents on its other zip-lining courses but Bonsai is refusing to produce any such documents, arguing they are not relevant. *But see, e.g., In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009). Plaintiff will likely be forced to seek Court intervention in order to obtain these relevant documents, which are believed to further demonstrate Bonsai's first-hand knowledge of the substantial injury risks posed by its products.

investigate the failure of its braking system prior to July 7, 2017, despite the obvious safety risk and Bonsai's ongoing operational support obligations with respect to the equipment in use on the course. *See* **Exhibit 1**, at ¶¶ 148-153.

10.     ***Mrs. Cowles is Injured When Bonsai's Braking System Fails.*** When Mrs. Cowles approached the bottom of the subject zip-line during her zip-lining tour on July 7, 2017, both the primary *and* secondary components of Bonsai's custom braking system failed, causing her to crash at high speed and suffer serious injuries resulting in permanent impairments and requiring surgery, hospitalization, and months of ongoing care. *See* **Exhibit 1**, at ¶¶ 159, 235-240, 243, 362.

11.     ***Bonsai's Post-Accident Conduct.*** A risk manager at Vail texted Bonsai's CEO several hours after Mrs. Cowles's accident, "Please call me [sic] we had a second incident on Game Creek. We need to talk ASAP." The Vail representative also asked, "Any chance bonsai [sic] has an extra EAD? We would want one if you have one. By the way the persons [sic] weight was 140." Bonsai's CEO texted back, "Crap," and "Let me check." *See* **Exhibit 1**, at ¶¶ 249-251.

12.     Vail closed down the Game Creek zip-line course for the rest of the 2017 summer season so that Bonsai could retrofit and repair the braking systems on the course. *See* **Exhibit 1**, at ¶¶ 259, 261. After the accident, Vail and Bonsai failed to reach agreement as to the cause of the accident, effectively blaming each other for the accident. *See id.* at ¶ 257.

13.     Over one year after the accident, a Vail representative contacted Plaintiff and advised that her accident was caused by defective braking equipment designed and manufactured by Bonsai. *See* **Exhibit 1**, at ¶ 269.

## II.     GOVERNING LAW ON BONSAI'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

14.     Granting a Rule 12(b)(6) motion to dismiss "is a harsh remedy which must be

cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

15.     "When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alexander v. Walmart Stores, Inc.*, 2008 WL 4830821, *3 (D. Colo. Nov. 5, 2008) (citations omitted). "Courts should look to the specific allegations of the complaint to determine whether they plausibly support a claim for relief – that is – a complaint must include enough facts to state a claim for relief that is plausible on its face." *Alexander, supra*.

16.     "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). "[S]o long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, [s]he has met the threshold pleading standard." *Trujillo v. City & County of Denver*, 2016 WL 5791208, *6 (D. Colo. Sep. 7, 2016) (citations omitted).

17.     "[T]he Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint . . ." *Traynom v. Cinemark USA, Inc.*, 940 F.Supp.2d 1339, 1352 (D. Colo. 2013) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias, supra*, 567 F.3d at 1169.

### III.     BONSAI'S RULE 12(b)(6) MOTION SHOULD BE DENIED

**A.  <u>Bonsai's Motion is Rendered Partially Moot by Elimination of Counts III, VII, VIII, and IX from the Second Amended Complaint</u>.**

18.     Plaintiff has filed a motion for leave to file her Second Amended Complaint [*see* Doc. #66, 66-1], omitting claims against Bonsai sounding in breach of express and implied warranties, premises liability, fraud, and joint venture liability and including additional factual allegations based on documents only just produced by the Defendants. *Compare* **Exhibit 1** and Plaintiff's First Amended Complaint [Doc. #9, Counts III, VII, VIII, and IX].[3]

19.     "Generally, when an amended complaint is filed, the previous complaint is wiped out and the operative complaint is the most recently filed version." *Calvert v. Siemen Water Tech. Corp.*, 2010 WL 724380, *2 (D. Colo. Mar. 2, 2010) (citations omitted). "Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." *Scott v. Buckner Co.*, 388 F.Supp.3d 1320, 1324 (D. Colo. 2019). At minimum, this Court does not need to reach Bonsai's requests for dismissal of Counts III, VII, VIII, and IX if the Second Amended Complaint is accepted for filing.[4]

B.     **Plaintiff's Strict Liability and Gross Negligence Claims Against Bonsai are Not Subject to Rule 12(b)(6) Dismissal Under These Circumstances.**

20.     ***Plaintiff's Second Amended Complaint.*** "[T]he general practice in this Circuit" is to not dismiss a case under Rule 12(b)(6) "until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations." *Virostek v. Indy-Mac Mortg. Servs.*, 2012 WL 10292, *2 (D. Colo. Jan. 3, 2012). To the extent Bonsai contends that Plaintiff's remaining counts fail for lack of sufficient allegations, Plaintiff's Second Amended Complaint sets

---

[3] Plaintiff asked Bonsai to withdraw its pending motion without prejudice and to refile its motion, if appropriate, as to the Second Amended Complaint, but Bonsai refused to do so.

[4] Plaintiff's withdrawal of her alternatively-pled premises liability claim against Bonsai – based on production of documents indicating Bonsai is not a "landowner" under the Premises Liability Act – similarly moots Bonsai's argument that her remaining common law claims are "preempted" by the Act. *Accord Vigil v. Franklin*, 103 P.3d 322, 328-29 (Colo. 2004).

forth numerous additional allegations supporting her strict liability, negligence, and gross negligence claims against Bonsai. These claims are each cognizable under Colorado law.

21.     ***Strict Liability Claim Cognizable as Pled***. Under Colorado law, "a manufacturer may be held strictly liable for harm caused by any product in a defective condition unreasonably dangerous to the user or consumer." *Walker v. Ford Motor Co.*, 2017 CO 102, ¶ 10 (citing *Restatement (Second) of Torts* § 402A (Am. Law Inst. 1965)); *see also Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1244 (Colo. 1987); C.R.S. § 13-21-401(1), (2). Plaintiff's Second Amended Complaint contains well-pled allegations supporting a cognizable claim for strict products liability against Bonsai as the manufacturer and seller of the defective braking system and of all of the components alleged to have caused her injuries in the subject accident. *See* **Exhibit 1**, at ¶¶ 50-57, 93-94, 106-120, 131-133, 137-140, 142-147, 277-304.[5]

22.     ***Bonsai Not an "Innocent Seller."*** Bonsai's "innocent seller" argument does not alter the analysis. Under Colorado law, a "manufacturer" includes any entity that "designs, *assembles*, fabricates, produces, constructs, or *otherwise prepares*" a product or product component. C.R.S. §13-21-401(1) (emphasis added). Irrespective of whether a third party initially manufactured certain components Bonsai integrated into its custom braking system, Bonsai selected, "assembled" and "otherwise prepared" those components for use in that system. *See* **Exhibit 1**, at ¶¶ 54-57, 106-120, 277-304. The Zip Stop component in Bonsai's braking system, for example, was useless until Bonsai assembled and installed it to work together with the other components of its custom braking systems such as the brake bobbin, EAD, and rigging cables. *See, e.g., id.* at ¶¶ 107-113. Because Bonsai was a manufacturer and a seller of the components it

---

[5] *See also First Amended Complaint* [Doc. #9], at ¶¶ 1, 3, 7, 37-47, 54-59, 64, 69-77, 81-95, 102-110, 186-195, 228-254.

contends were the sole cause of Plaintiff's injuries, its innocent seller defense fails as a matter of law on the facts pled by Plaintiff. *Accord* C.R.S. § 13-21-402(1); *Miller v. Solaglas, Inc.*, 870 P.2d 559, 563-65 (Colo. App. 1993) (installer of replacement windshield a "manufacturer" under section 401(1)).[6]

23.     Moreover, Bonsai does not deny that it designed and manufactured other components of the braking system that Plaintiff alleges also failed and caused her injuries. *See* **Exhibit 1**, at ¶¶ 51, 54-57, 107-115. Plaintiff was injured when *both* the "primary" *and* "secondary" components of Bonsai's braking system failed – including a brake bobbin, riggings, and an "EAD" indisputably designed and manufactured by Bonsai. *See id.* at ¶¶ 51, 114, 239-240.

24.     ***Regulatory Compliance Irrelevant on Bonsai's Motion.*** Bonsai's contention that the strict liability claim is barred under C.R.S. § 13-21-403(1)(b) similarly fails. Under the Product Liability Act, alleged compliance with a governmental regulation "does not conclusively establish" that a product "was not defective." *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579, 591 (Colo. 1984).[7] The rebuttable presumption under section 403(1)(b) is "by no means … conclusive on the issue of defect," as Bonsai suggests. *Id.* at 592. Plaintiff is not required to affirmatively plead that Bonsai's braking system failed to comply with a regulation in order to state a cognizable strict liability claim. *Accord* Fed. R. Evid. 301 (presumptions do not shift burden of persuasion); *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("A plaintiff

---

[6] The one innocent seller case Bonsai cites is factually distinguishable. In *Mandy's Ltd. v. Salon and Beauty Source, Inc.*, 2016 WL 7868829 (D. Colo. June 3, 2016), Judge Daniel determined in an unpublished opinion that there was no triable factual issue as to whether the defendant was a manufacturer of the subject beauty chair and its components. *See id.* at *3-4. The allegations in Plaintiff's complaint here are decidedly otherwise.

[7] "Because the focus in a strict liability claim is on the product itself, and not on the degree of care employed by the seller or distributor of the product … a product may be in a defective condition unreasonably dangerous to the user or consumer notwithstanding the supplier's compliance with a safety regulation related to that product." *Id.* at 591-92.

need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense.").[8]

25.      ***Gross Negligence Claim Cognizable as Pled***. "Gross negligence is willful and wanton conduct, that is, action committed recklessly, with conscious disregard for the safety of others." *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo. App. 2011).[9] "Where a defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result," the requirements of gross negligence are met. *Heinrich v. Master Craft Eng'r, Inc.*, 131 F.Supp.3d 1137, 1161 (D. Colo. 2015) (citations omitted).

26.      Plaintiff alleges Bonsai obtained the Game Creek contract by leveraging its alleged expertise in designing and building large scale, high speed zip-lining courses featuring custom braking systems that "eliminated" the possibility of high-speed crashes. *See* **Exhibit 1**, at ¶¶ 30-31, 37-42, 48-53, 72-91, 356. Bonsai then designed and installed a braking system for the Game Creek course that it knew would *fail* to prevent high-speed crashes under foreseeable conditions. *See id.* at ¶¶ 106-120, 131-133, 137-140, 233-240, 314-324, 330(f)-(m), 356. Bonsai knew full well that its actions created a substantial risk of serious injury or death in high speed accidents caused by braking system failures. *See id.* at ¶¶ 59-71, 326, 356. Yet, when Vail advised Bonsai's CEO of a braking system failure approximately one week prior to Plaintiff's accident, Bonsai took no steps to investigate this critical safety issue or to advise Vail to shut down operations until the

---

[8] Similarly, CJI-Civ. 14:1.5 is "not law, not authoritative, and not binding." *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009).

[9] *See also Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("Conduct is willful and wanton if it is a dangerous course of action that is consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result."); *United Blood Servs. v. Quintana*, 827 P.2d 509, 523 n.10 (Colo. 1992) ("Willful misconduct consists of conduct purposely committed under circumstances where the actor realizes that the conduct is dangerous but nonetheless engages in the conduct without regard for the safety of others.").

braking systems could be inspected and repaired – despite the fact it was continuing to be paid for ongoing course inspections and maintenance. *See id.* at ¶¶ 92-94, 122-130, 141-153, 249-251, 356. This is classic gross negligence. *Accord Qwest Servs. Corp. v. Blood*, 252 P.3d 1071 (Colo. 2011) (sustaining $18 million punitive damages award based on evidence that Qwest failed to implement periodic pole inspection program despite knowing one was necessary to prevent serious injury).

27.     Bonsai is asking this Court to ignore Plaintiff's well-pled allegations and to decide the issue of gross negligence as a matter of law before substantial completion of discovery or even a single deposition. But "[w]hether a defendant's conduct is purposeful or reckless is ordinarily a question of fact …" *Hamill, supra*. Only where "the record is devoid of sufficient evidence to raise a factual issue" may the question of gross negligence "be resolved by the court as a matter of law." *Id*.[10] Resolution of disputed factual issues on Bonsai's Rule 12(b)(6) motion is not appropriate in view of Plaintiff's well-pled allegations on such issues, and Bonsai's motion should be denied.

## C.   The Liability Waiver Does Not Justify Rule 12(b)(6) Dismissal of Any of Plaintiff's Claims Against Bonsai.

28.     ***Bonsai's Waiver Defense is Not Properly Resolved on a Rule 12(b)(6) Motion***. Under Fed. R. Civ. P. 8(c)(1), "waiver" is an affirmative defense. *Statebridge Co., LLC v. Martin-Powell, LLC*, 2019 WL 2866692, *5 (D. Colo. July 3, 2019) (citations omitted). "Therefore it is generally Defendant's burden to plead the waiver defense in its answer rather than raising it in a motion to dismiss." *Id*.

29.     The enforcement of an exculpatory agreement purportedly barring a plaintiff's

---

[10] *Accord U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543, 549-50 (Colo. App. 2008) (trial court erred in granting summary judgment for insurer on insured's willful and wanton conduct claim); *Squires ex rel. Squires v. Goodwin*, 829 F.Supp.2d 1062, 1076-79 (D. Colo. 2011) (summary judgment denied based on triable fact issues as to ski school's gross negligence); *Lawton v. Hotspur Sports Co.*, 2017 WL 2672110, *6-10 (D. Colo. June 21, 2017) (summary judgment denied based on triable fact issues as to ski rental shop's gross negligence).

claim is an affirmative defense of waiver. *Accord Eburn v. Capitol Peak Outfitters, Inc.*, 882 F.Supp.2d 1248, 1252 (D. Colo. 2012); *Squires ex rel. Squires v. Goodwin*, 829 F.Supp.2d 1062, 1067 (D. Colo. 2011); *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 783 (Colo. 1989). Such a defense is not properly resolved on a Rule 12(b)(6) motion, outside the rarest of cases,[11] because the *Defendant* bears the burden of pleading and proving up the defense. *Squires, supra*, 829 F. Supp. 2d at 1067; *see also Fernandez, supra*. Indeed, *every* single case Bonsai cites in support of its waiver defense was decided on a summary judgment motion; none were decided on a Rule 12(b)(6) motion.[12]

30.     ***The Liability Waiver is Not Properly Before the Court on Bonsai's Rule 12(b)(6) Motion.*** "Generally, when ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a court should not look beyond the contents of the complaint itself." *Hampton v. Root9B Technologies, Inc.*, 2016 WL 7868823, *2 (D. Colo. Aug. 3, 2016) (citations omitted). While the Court has discretion to consider materials beyond the pleadings under narrow circumstances, none of those circumstances are present here: the liability waiver is not incorporated by reference in either the First or Second Amended Complaints; it is not "referred to" in either Complaint or "central to"

---

[11] Here, resolution of Bonsai's waiver defense under Rule 12(b)(6) is unwarranted because neither of Plaintiff's Complaints "admit" any elements of the defense. *Statebridge Co., LLC, supra*. Indeed, both her First Amended Complaint and her proposed Second Amended Complaint allege facts supporting strict liability and gross negligence claims that would bar enforcement of such a liability waiver. *See, e.g., Plaintiff's First Amended Complaint* [Doc. #9], at ¶¶ 1, 3, 7, 37-47, 54-77, 81-110, 186-195, 228-281, 388-390, 394-399, 422-426; *see also* **Exhibit 1**, *supra*; *accord Boles v. Sun Ergoline*, 223 P.3d 724, 726-28 (Colo. 2010); *Hamill, supra*, 262 P.3d at 954.

[12] *See, e.g., Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243 (10th Cir. 2018) (entry of summary judgment on waiver defense); *Patterson v. PowderMonarch, LLC*, 926 F.3d 633 (10th Cir. 2019) (same); *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150 (10th Cir. 2016) (same); *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105 (10th Cir. 2002) (same); *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465 (Colo. 2004) (same); *Heil Valley Ranch, supra* (same); *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981) (same); *Hamill v. Cheley Colo. Camps*, 262 P.3d 945 (Colo. App. 2011) (same).

any of Plaintiff's claims; and it is not a "matter[] of which the court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

31.     Bonsai's Rule 12(b)(6) motion is not an appropriate vehicle for the Court to decide disputed factual issues concerning the enforceability of a liability waiver under the facts of this case. Consideration of Bonsai's waiver defense as to Plaintiff's negligence claim, for example, including under the *Jones v. Dressel* factors, should wait until another day after the parties have developed a sufficient factual record through necessary discovery.[13]

32.     ***The Liability Waiver is Unenforceable as a Matter of Law as to Plaintiff's Strict Liability and Gross Negligence Claims.*** Even if the Court elects to reach the merits of the waiver issue on Bonsai's Rule 12(b)(6) motion, the motion still fails because any waiver would be unenforceable in this case.

33.     "[A]greements to release a party from liability for its simple negligence, although not void as against public policy in every instance, are closely scrutinized for particular circumstances or context that might nevertheless render them invalid." *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 726 (Colo. 2010). Bonsai concedes that "exculpatory agreements are not a bar to civil liability for gross negligence," *Hamill*, *supra*, 262 P.3d at 954, "regardless of the circumstances or intent of the parties." *Boles, supra*, 223 P.3d at 726; *Bonsai's Motion*, at p. 5. Similarly, "an agreement releasing a manufacturer from strict products liability for personal injury … necessarily violates the public policy of this jurisdiction and is void." *Boles, supra*, 223 P.3d at 727-28.

---

[13] Contemporaneously herewith, Plaintiff is filing a Motion to Strike Certain Exhibits to Bonsai's Motion to Dismiss or, alternatively, to convert Bonsai's motion to a Motion for Summary Judgment. Plaintiff incorporates the arguments and authorities set forth in that motion herein by reference. Fed. R. Civ. P. 10(c).

14

34.     The principle that liability waivers are void and unenforceable against strict liability and gross negligence claims is well-settled. The Colorado Supreme Court and the Tenth Circuit have each repeatedly said as much. *See, e.g., Boles, supra*; *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 468 (Colo. 2004); *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018); *accord Rowan v. Vail Holdings, Inc.,* 31 F. Supp. 2d 889, 900 (D. Colo. 1998). Bonsai does not argue otherwise in its motion. As such, if the Court even decides to reach the merits of Bonsai's waiver defense, any liability waiver would be unenforceable as to Plaintiff's strict liability and gross negligence claims. Bonsai's motion should therefore be denied.

WHEREFORE, Plaintiff, Lisa Cowles, respectfully requests this Court DENY Bonsai's Rule 12(b)(6) Motion to Dismiss and grant her such other and further relief as the Court deems just.

Dated this 2nd day of December, 2019.

**THE KOMYATTE LAW FIRM LLC**

By:

/s/ Paul J. Komyatte
Paul J. Komyatte (No. 22750)
David P. Mason (No. 41333)
The Komyatte Law Firm, LLC
1536 Cole Blvd., Ste. 300
Lakewood, CO 80401
*Attorneys for Plaintiff*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of December, 2019, a true and accurate copy of the foregoing was electronically filed with the Court and served upon all counsel of record via the Court's CM/ECF system:

**THE KOMYATTE LAW FIRM LLC**

*s/ David P. Mason*
David P. Mason, Esq.