IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Lisa Cowles,
   Plaintiff,

v.

Bonsai Design LLC,
Vail Resorts, Inc.,
Vail Resorts Holdings, Inc.,
The Vail Corporation, and
Vail Resorts Management Company,
   Defendants.

Case No. 1:19-cv-01946-WJM-MEH

**Eugene Volokh's Objection to
Amended and Superseding Motion to Restrict**

Eugene Volokh objects under D.C.COLO.LCivR 7.2 to defendant Bonsai Design LLC's amended Motion to Restrict (ECF No. 119), specifically to the sealing of:

1. the Design and Build Agreement between Bonsai and Vail (ECF No. 45-2, 45-3, 56-2, 56-3, 61-1, 106-2, 106-3, 106-4, 106-5, 106-6);

2. the text messages from and to the CEO of Bonsai (ECF No. 66-4);

3. the email chain between Bonsai and Vail concerning various maintenance and possible warranty issues (ECF No. 66-5); and

4. any references to those documents in the proposed Second Amended Complaint, in the Motion to Dismiss, or in any other filings.

Volokh also objects to defendant Bonsai Design's request for a prior restraint barring him and other members of the public from "publish[ing] in any form any of the above listed documents or redacted portions of documents" (ECF No. 119 at 2; *see also id.* at 8)—all of which, except ECF No. 106, are currently public and were obtained

by Volokh from the public record (via Bloomberg Law, which in turn appears to get its documents via PACER).

## I. The public has a presumptive right to access all the documents in the file

"A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011). "[S]ecret court proceedings are anathema to a free society," *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996), and "parties should not routinely or reflexively seek to seal materials upon which they predicate their arguments for relief, particularly dispositive relief." *Lucero v. Sandia Corp.*, 495 F. App'x 903, 913 (10th Cir. 2012). "It is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter." *Vega v. Wiley*, No. CIV.A. 07-CV-01357LT, 2007 WL 4287730, at *1 (D. Colo. Dec. 5, 2007). D.C. Colo. LCivR 7.2 accordingly allows sealing of documents only for "compelling reasons."

In addition to this common-law right of access, there is also a First Amendment right of access to court documents in civil proceedings. The Supreme Court has expressly held that there is a First Amendment right of access to criminal trials, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality op.); *id.* at 585 (Brennan, J., concurring in the judgment), and courts have concluded that "the justifications for access to the criminal courtroom apply as well to the civil trial." *Brown & Williamson Tobacco Corp.*, 710 F.2d 1165, 1178 (6th Cir. 1983). "[T]he First

Amendment does secure to the public and to the press a right of access to civil proceedings." *Westmoreland v. Columbia Broad. Sys. Inc.*, 752 F.2d 16, 23 (2d Cir. 1984); *see also Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).

And this right applies to access to "pretrial court records" as well as to the trial itself. *Mokhiber v. Davis*, 537 A.2d 1100, 1108 (D.C. Cir. 1988); *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 139 F.R.D. 50, 56 (D.N.J. 1991). The Tenth Circuit has not yet ruled on whether a First Amendment right of access exists in civil cases, *see United States v. Pickard*, 733 F.3d 1297, 1302 n.4 (10th Cir. 2013), but the body of precedents from other circuits—indeed, the view of every circuit that has passed judgment on the question—counsels in favor of recognizing such a right.

In any event, whether under the common-law right of access or under the First Amendment right of access, Volokh is entitled to access to the documents in this case. The right of access extends to the evidentiary documents attached to the motion to dismiss (and to related responses and replies). When motions or their exhibits "directly bear on a dispositive issue," "a strong presumption of public access applies." *Fish v. Kobach*, 2017 WL 4422645, at *5 (D. Kan. Oct. 5, 2017) (so holding as to exhibits "attached to the motion for summary judgment"). The right of access also applies with equal force to the evidentiary documents attached to the Proposed Second Amended Complaint. "A complaint, which initiates judicial proceedings, is the cor-

3

nerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013).

Moreover, both these documents have been available in the court docket for weeks or months, and some were filed by the movant itself. This should counsel against retroactive sealing, as explained in *Gunn v. WCA Logistics, LLC*, No. 13-cv-02197-WJM-MEH, 2016 WL 7868827, at *1 (D. Colo. Jan. 12, 2016) (some citations omitted):

> The documents at issue in Defendants' motion were not filed under restriction. . . . Only [two weeks later] did Defendants seek to restrict the documents. Because Defendants failed to avail themselves of the protections provided by the District's local rules in filing [the document], any claim to confidentiality has been waived. The cat has already been let out of the bag. *Cf. Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("Once the cat is out of the bag, the ball game is over.") . . . . After-the-fact sealing should not generally be permitted. *See id.* at 144 (". . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").

## II. Harm to business interests is not a "clearly defined and serious injury" that justifies sealing the evidentiary documents

D.C.COLO.LCivR.7.2(c)(3) only allows sealing, even of portions of documents, if a movant "identif[ies] a clearly defined and serious injury that would result if access is not restricted." The amended Motion to Restrict does not identify such an injury; it only cites "potential harm to Bonsai's business interests." ECF No. 119, at 5.

"Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. "[T]he public interest in disclosure often outweighs a party's interest in

avoiding adverse publicity." *Fogle v. Elliott*, 2012 WL 5363800, at *11 (D. Colo. Sep. 18, 2012) (citing *Lobato v. Ford*, 05-cv-01436-LTB-CBS, 2007 WL 3342598, at *11 (D. Colo. Nov. 9, 2007), which cites *Brown & Williamson*). The interest in preserving corporate reputation likewise does not satisfy the "serious injury" threshold of Rule 7.2(c)(3). "Only in the rarest of cases is the sealing of documents appropriate—for example, cases involving intensely personal issues such as abortion or birth control, or cases pertaining to the welfare of abandoned or illegitimate children." *Vega*, 2007 WL 4287730, at *1.

Likewise, showing that the parties treat the documents as confidential does not suffice to justify sealing those documents once they are filed with courts. "[S]tipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction." D.C.COLO.LCivR.7.2(c)(2).

**A. The Design and Build Agreement.** In particular, the Design and Build Agreement ought not be sealed. Confidentiality agreements and stipulated protective orders do not warrant the sealing of a document that has been "placed . . . at the center of [a court] controversy," *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012), as the Design and Build Agreement has been. In *Colony Ins. Co.*, the Tenth Circuit refused to seal documents that "involve[d] the terms of confidential settlement agreements." *Id*. The Court found that "the parties' interests in keeping the terms of their agreements confidential" did not "outweigh[] the public interest in access, particularly in light of the centrality of these documents to the adjudication of this case."

*Id.*; *see also Gunn*, 2016 WL 7868827, at *2 (refusing to seal financial information "[g]iven the public's interest in accessing the central issues in a lawsuit").

The Design and Build Agreement is similarly central to adjudication of this case, as it was submitted to this Court for consideration as part of the defendant's Motion to Dismiss, ECF No. 61-1—a motion that, if granted, would dispose of the case altogether. The Agreement should therefore remain public, especially because the defendant has not "submitted any specific argument or facts indicating why the confidentiality of [the Agreement] outweighs the presumption of public access." *Colony Ins. Co.*, 698 F.3d at 1241.

"Non-trade secret but confidential business information is not entitled to the same level of protection from disclosure as trade secret information," *Littlejohn v. Bic Corp.*, 851 F.2d 673, 685 (3d Cir. 1988) (granting intervenors access to confidential corporate documents that were part of the court record), and Defendant Bonsai has not identified any bona fide trade secrets contained in the Design and Build Agreement. "[C]onfidentiality alone does not transform business information into a trade secret." *PCT Int'l Inc. v. Holland Electronics, LLC*, 2014 WL 6471419, at *2 (D. Ariz. Nov. 18, 2014) (citation omitted). "[O]nly in extremely limited circumstances will confidential information actually merit the sealing of court records." *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006), for the proposition that "conclusory statements about the contents of the documents" do not supply sufficiently compelling reasons to seal a document).

The Tenth Circuit cases cited in the defendant's Amended and Superseding Motion to Restrict, ECF No. 119 at 5, do not control here. Those cases concerned the sealing of financial information that was submitted as part of voluminous appendixes on appeal, rather than presented to the court as a key piece of evidence attached to a dispositive filing. In *Braun v. Medtronic Sofamor Danek, Inc.*, 719 F. App'x 782, 801 n.8 (10th Cir. 2017), the information sealed was "highly detailed and specific technical and financial information about [defendant's] spinal products in development"—precisely the type of information that the trade secret exception is designed to protect; moreover, some of the sealed information had not even come into evidence at trial. In *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1162 n.8 (10th Cir. 2016), the court only sealed proprietary business information that was "unnecessary to [its] disposition of [the] appeal." And *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013), likewise allowed limited sealing of portions of a multi-volume appendix that (1) "were [not] necessary 'to determine [the] litigants' substantive legal rights'" and that (2) contained "commercial competitive information of third parties who [were] not litigants" in the case. The commercial information here does not implicate third parties, but rather the defendants in the lawsuit; and it is relevant to the parties' legal rights, which is why it is referred to in the motion to dismiss and the proposed complaint.

Nor does *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978), authorize sealing the documents in this case. *Nixon* did not purport to articulate a rule for when court filings can be sealed: the Court said it "need not decide how the balance would

7

be struck" between privacy and public access in a typical case, because of a "unique element" present in the case—a statute providing for eventual release of the sealed tapes involved in that case. *Id.* at 603. The *Nixon* opinion did contemplate sealing in cases where an opposing party has filed confidential business information for "improper purposes," *id.* at 598, but the documents seem to have been filed for eminently legitimate purposes. And in any event, in the four decades since *Nixon* was decided, the case law governing the common-law right of access has made clear that harm to business standing resulting from disclosures commonplace in an open justice system is not, without more, sufficient cause to seal the record. *See Huntsman-Christensen Corp. v. Entrada Industries, Inc.*, 639 F. Supp. 733, 738 (D. Utah 1986) ("possible adverse impact upon the ability" of a company to "attract investors" did not outweigh the public right of access); *see also In re Avandia Marketing, Sales Practice and Products Liability Litigation*, 924 F.3d 662, 676 (3d Cir. 2019) (noting that "vague assertions that the transcript contains secretive business information, and that disclosure would render [a company] at a tactical disadvantage" are insufficient to overcome the "strong presumption" of public access) (internal quotation marks and citation omitted).

**B. The text messages and email chain.** Exhibits 3 and 4 to the Second Amended Complaint likewise do not seem to contain any trade secrets. To be sure, some observers could interpret the information in those exhibits as reflecting badly on the business, which could cause it to lose customers. But courts have refused to seal records where "[t]he potential harm asserted by the corporate defendants is in

disclosure of poor management in the past," as such information is "hardly a trade secret." *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982); *see also Parson v. Farley*, 352 F. Supp. 3d 1141, 1155 (N.D. Okla. 2018) (refusing to seal statements that were "potentially injurious" to the plaintiff's "reputation and business dealings").

When "it is the company's public image that is at stake," "[t]hat is not enough to rebut the presumption of access." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991). The evidence in virtually every tort case against a business risks causing some harm to the business's interests. Such harm therefore cannot satisfy Rule 7(c)(3)'s "serious injury" standard, because "the asserted interests for sealing cannot be generic interests that would apply with equal force to every case." *United States v. Apperson*, 642 F. App'x 892, 903 (10th Cir. 2016).

**C.** Finally, if there are any parts of the exhibits that do need to remain confidential to protect trade secrets, only those parts should be redacted. *See* D.C.COLO.LCivR 7.2(d) (expressing a preference for "alternative[s] to restriction" such as "redaction, summarization, [or] restricted access to exhibits or portions of exhibits").

### III. The proposed injunction would be an unconstitutional prior restraint on publication

"'[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards.'" *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (quoting *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 102 (1979)). That was true even as to the civil liability threatened in *Bartnicki*—and it is doubly true for "prior restraints on speech and publication," which are "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

(1976). "The gagging of publication" is an "extraordinary remedy" that is "acceptable only in exceptional cases," *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).

Even in an extraordinarily unusual case in which the Colorado Supreme Court authorized such a restraint, it stressed that "potential harm to an economic interest is not sufficient to justify a prior restraint." *People v. Bryant*, 94 P.3d 624, 629 (Colo. 2004). "[P]rivate litigants' interest in protecting their vanity or commercial self-interest simply does not qualify as grounds for imposing a prior restraint. It is not even grounds for keeping the information under seal." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F. 3d 219, 225 (6th Cir. 1996). Indeed, Bonsai Design does not cite any authorities that support the extraordinary speech restriction that it seeks. *See* Amended and Superseding Motion to Restrict (ECF No. 119, at 2, 8).

Enjoining publication is especially clearly unconstitutional "where the government has made certain information publicly available," *Florida Star v. B.J.F.*, 491 U.S. 524, 535 (1989), as it has in this case. *Id.* In *Florida Star*, the Court held that members of the media have a First Amendment right to publish government records they have lawfully obtained, even when the records have been erroneously released to them. Here, the right is even clearer: the records were not released erroneously but rather posted on PACER as part of the public court record. Indeed some were filed in the open court record by the movant itself. *See* Motion to Dismiss, Exh. A, ECF No. 61-1; *see also* Reply to Response to Motion to Dismiss, Exh. F, ECF No. 98-1.

Members of the public thus have a right to republish documents that they had lawfully accessed; and they do not lose this right just because they are members of the bar, as Volokh is. Indeed, the most useful commentary on court cases will often come from commentators who are legally trained. While lawyers who are representing parties in a particular case might sometimes be subjected to speech restrictions stemming from that role, that exception does not extend to commentators who are simply writing about someone else's case, but who happen to be lawyers. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1054 (1991) (plurality op.) (rejecting the theory that "the practice of law brings with it comprehensive restrictions" that can "impinge upon First Amendment freedoms"); *id.* at 1081 (O'Connor, J., concurring) (approving of some restrictions on lawyer speech, but only on the theory that "a State may regulate speech by lawyers *representing clients in pending cases* more readily than it may regulate the press" (emphasis added)).

"Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496 (1975). Even if this Court decides the information may be sealed after the fact, which would keep the clerk's office from distributing it further, "the government may not prohibit or punish the publication of that information once it falls into the hands of the press, unless the need for secrecy is manifestly overwhelming." *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 849 (1978) (Stewart, J., concurring). That "manifestly overwhelming" standard is not satisfied here.

## Conclusion

The public has a First Amendment and common-law right to access the court record in this case, including the exhibits attached to the Proposed Second Amended Complaint, the Motion to Dismiss, and related documents. The public likewise has a First Amendment right to write about information lawfully obtained from public court records. Volokh therefore asks that access to these documents not be restricted, and that the defendant's extraordinary request for an order enjoining publication be denied.

Respectfully submitted,

*/s/ Eugene Volokh*

Eugene Volokh, pro se
Jennifer Wilson, law student
    appearance application pending
UCLA School of Law
385 Charles E. Young Dr E.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

## CERTIFICATE OF SERVICE

I certify that on January 9, 2020, I served this material by ECF on all parties.

*Eugene Volokh*

Eugene Volokh, pro se
UCLA School of Law
385 Charles E. Young Dr E.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

13