**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1946-WJM-MEH

LISA COWLES,

      Plaintiff,

v.

BONSAI DESIGN LLC, *et al.*

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

Plaintiff Lisa Cowles ("Plaintiff") filed this action against Bonsai Design LLC ("Bonsai"), Vail  Resorts, Inc., Vail Resorts Holdings, Inc., The Vail Corporation, and Vail Resorts Management Company (jointly, "Vail") following a zip-lining accident that occurred on July 7, 2017 in Vail, Colorado.  (ECF 1.)  Vail and Bonsai will collectively be referred to as the "Defendants."

The matters before the Court are the following:

1.     Bonsai's Rule 12(b)(6) Motion to Dismiss Counts II and IV of the Second Amended Complaint ("Motion to Dismiss"; ECF No. 131);

2.     Plaintiff's Partially Unopposed Motion for Leave to File Third Amended Complaint Pursuant to Fed. R. Civ. P. 15(a) ("Motion For Leave to File Third Amended Complaint"; ECF No. 146);

3.     Plaintiff's Motion to Strike Exhibit 1 to Bonsai's Rule 12(b)(6) Motion to Dismiss Counts II and IV of the Second Amended Complaint or, Alternatively, to Convert

the Motion to Dismiss to a Motion for Summary Judgment ("Motion to Strike

Exhibit 1"; ECF No. 142);

4.   Defendant Bonsai Design LLC's Motion to Strike References to the Proposed

Third Amended Complaint in Plaintiff's Response to Bonsai's Motion to Dismiss

the Second Amended Complaint ("Motion to Strike References to Third

Amended Complaint"; ECF No. 153); and

5.   Plaintiff's Motion to Strike Certain Portions of Defendant Bonsai Design LLC's

Reply in Support of its Rule 12(b)(6) Motion to Dismiss Counts II and IV of the

Second Amended Complaint or, Alternatively for Leave to File Surreply ("Motion

to Strike Bonsai's Reply"; ECF No. 159).

## I. Background

The following factual summary is drawn from Plaintiff's Second Amended

Complaint ("Second Amended Complaint"; ECF No. 130), except where otherwise

noted.  The Court assumes the allegations contained in the Second Amended

Complaint to be true for the purpose of deciding the instant Motion to Dismiss.  *See*

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Defendant Bonsai is a Colorado company "engaged in the business of designing,

testing, engineering, manufacturing, constructing, installing, inspecting, preparing,

maintaining, marketing, selling, and/or operating zip-line courses and zip-line course

components and equipment."  (ECF No. 130 at ¶ 3.)  It has developed large-scale zip-

line courses known as "canopy tours," which involve "multiple zip-lines and aerial

bridges between platforms built into trees or atop fabricated towers."  (*Id.* at ¶¶ 34, 37.)

2

Over time, zip-line canopy tours have become a popular form of recreational zip-lining, and are "marketed to consumers and tourists as a form of ecotourism and as an adventure sport." (*Id.* at ¶ 41.)

1.   Design and Construction of the Game Creek Zip-Line Course

In September 2012, Bonsai and Vail entered into a "Design and Build Agreement" for the construction of a zip-line course in the Game Creek bowl on the back side of Vail Mountain ("Game Creek Zip-Line Course"). (*Id.* at ¶ 72.) Under the terms of the parties' agreement, Vail engaged Bonsai to (1) design and build the Game Creek Zip-line Course; (2) manufacture and install "the zip-lines and zip-line fixtures, equipment, and components on the course (including but not limited to pulleys, sheaves, trolleys, harnesses, cables, robes, braking systems, and braking system equipment and components)"; (3) provide operations manuals and protocols for the inspection, maintenance, and operation of the course and all course equipment; (4) provide training and certification materials to Vail; and (5) provide "operational support including ongoing periodic maintenance and inspection of the course and the zip-lines and the zip-line fixtures, equipment, and components including but not limited to braking systems and braking system equipment and components." (*Id.* at ¶ 73.)

The Game Creek Zip-Line Course is comprised of seven zip-lines, which span a total of approximately 10,000 feet, "including one zip-line more than half a mile in length, another that propelled guests at speeds of fifty to sixty miles per hour, and another that carried guests approximately 300 feet above the ground." (*Id.* at ¶ 87.) The course employs a "cable-and-pulley system," which utilizes a "pulley encased inside a trolley." (*Id.* at ¶¶ 98–99.) Guests are suspended from a trolley by a harness

3

or seat and use gravity to carry themselves from platforms at the top end of the zip-line to platforms at the bottom of the zip-line.  (*Id.* at ¶¶ 99–101.)

Bonsai designed and installed a "custom braking system" for the Game Creek Zip-Line Course, which "include[s] a 'primary' braking system' consisting of a brake shuttle/bobbin rigged to a Zip Stop component, and a 'secondary' or 'emergency' braking system" consisting of an emergency arrest device ("EAD").  (*Id.* at ¶¶ 106–08.) In the event that the primary braking system malfunctions, Bonsai's EAD system was designed to "safely slow, stop, and arrest the motion of a guest down the zip-line." (*Id.* at ¶ 114.)  The braking system design does not include hand brakes or other equipment components that guests can control to slow or stop themselves.  (*Id.* at ¶¶ 116–18.)

Bonsai completed construction work on the Game Creek Zip-Line Course in the fall of 2015.  (*Id.* at ¶¶ 91.)  As part of the licensing process with the State of Colorado, Bonsai, as the manufacturer of the Game Creek Zip-Line Course, was required to inspect and certify the course.  (*Id.* at ¶ 93.)  Even after Vail received a license to operate the course in the fall of 2015, "Bonsai continued to provide periodic maintenance, inspection, and related services[,] . . . including maintenance and inspection services related specifically to braking systems on the course." (*Id.* at ¶¶ 92–94.)  Vail's periodic modifications to course were made with the "knowledge and approval of Bonsai." (*Id.* at ¶¶ 141–45.)

Even after Vail assumed control over the zip-line course, Bonsai continued to provide training and operational support to Vail.  (*Id.* at ¶¶ 121–27.)  Bonsai helped Vail to develop various training protocols, including (1) protocols for retrieving and redeploying the braking system to its proper settings after each guest went down the

4

zip-line (*id.* at ¶ 129); (2) protocols requiring Vail guides to radio each other to advise when it was safe for the guide on the top platform to send the next guest down the zip-line (*id.* at ¶ 134); and (3) protocols requiring Vail guides to instruct guests to look for "red or orange flags showing that the braking system was property set and positioned on their approach towards the equipment and platform" (*id.* at ¶ 136). If the braking system was not "properly and timely retrieved, redeployed, and reset before a guest was sent down the zip-line," a guest could crash into the equipment. (*Id.* at ¶¶ 137–139.)

2.    Prior Zip-Lining Incidents at the Game Creek Zip-line Course

On or about June 5, 2017, Bonsai performed its annual inspection and certification of the Game Creek Zip-Line Course. (*Id.* at ¶ 146.) It certified that the course and all "zip-lines, zip-line fixtures, equipment, and components on the course were in an operable state and that any deficiencies identified or noted at the time of the inspection had been corrected." (*Id.* at ¶ 147.)

However, less than a month later, there were two incidents on the Game Creek Zip-line Course: (1) a guest was injured in an accident on or about June 24, 2017 (*id.* at ¶ 148); and (2) a braking system failed in late June 2017 (*id.* at ¶ 149). Following these incidents, a risk manager at Vail sent Bonsai's chief executive officer a text message asking for a return phone call about a "zip stop issue" on or about June 30, 2017. (*Id.* at ¶ 151.)

3.    Plaintiff's Zip-Lining Incident on July 7, 2017

On July 7, 2017, Plaintiff Lisa Cowles and her husband paid for a zip-lining tour on the Game Creek Zip-Line Course. (*Id.* at ¶ 159.) After being provided with zip-lining

gear and being placed into a group of six to eight guests, Plaintiff and her husband received a short instruction by Vail employees.  (*Id.* at ¶¶ 162, 164–75.)  They were instructed to "trust the equipment" and were reassured that the breaking system equipment and components would stop them at the bottom of the zip-line.  (*Id.* at ¶ 174.)  According to Plaintiff, neither the June 2017 guest injury nor the June 2017 braking system failure were disclosed to her prior to her zip-line tour.  (*Id.* at ¶ 155.)

During the initial three zip-lines on the course, Plaintiff witnessed Vail guides wait to receive an "all clear" signal by radio before sending the next guest.  (*Id.* at ¶ 181.)  The Vail guides remained in constant radio contact, and there were no apparent incidents.  (*Id.* at ¶ 185.)

However, after Plaintiff's group completed the initial three zip-lines on the course, the Vail guides temporarily suspended operations due to lightening in the area.  (*Id.* at ¶¶ 185–86.)  Plaintiff and her husband were led from the course to a waiting vehicle, which returned them to the lodge at Vail Mountain.  (*Id.* at ¶ 187.)  After the weather cleared, Plaintiff and her husband elected to resume their zip-lining tour and were led back to the next tower with a group of ten to twelve other guests.  (*Id.* at ¶¶ 194, 202.)

Upon returning to the zip-lining course, Vail's course supervisor advised Plaintiff and the other guests that they would be "led down the remaining zip-lines one at a time rather than in small groups as had been done during the first half of the tour."  (*Id.* at ¶ 196.)  The course supervisor then instructed the Vail guides that they were "each going to be stationed at individual tower platforms along the remaining zip-lines, where they would send and receive guests one at a time, rather than being assigned to

accompany and guide a small group of guests down the remaining zip-lines on the course." (*Id.* at ¶ 198.)  As the Vail guide began to send the guests down the zip-line, Plaintiff and her husband "did not observe the guide regularly waiting for a radio communication from the guide at the bottom tower that the braking system and braking system equipment and components had been properly retrieved, redeployed, and reset such that it would be safe to send the next guest down the zip-line." (*Id.* at ¶ 212.)

When it was her turn, Plaintiff embarked on the zip-line, which traveled through a cluster of trees for approximately half a mile.  (*Id.* at ¶¶ 207–08, 221.)  Upon emerging from the trees near the bottom of the zip-line, Plaintiff found herself traveling at a much faster rate than she had anticipated.  (*Id.* at ¶ 223.)  She looked for the red or orange flag on the braking system equipment, but she "could not see a flag." (*Id.* at ¶ 225.)  She did, however, observe a Vail guide "jumping up and down and waving his arms." (*Id.* at ¶ 228.)  According to Plaintiff, the guide attempted to verbally call out to her before "running and/or jumping out of the way to avoid being struck as she approached the platform at a high rate of speed." (*Id.* at ¶¶ 229, 234.)

Plaintiff then "collided with the first component of the braking system on the zip-line," which did not "slow, stop, or arrest Mrs. Cowles's momentum down the zip-line" and instead appeared to "break, fail, or explode as [Plaintiff] struck it." (*Id.* at ¶¶ 235–37.)  The "emergency" components of the braking system also failed, causing Plaintiff to collide with other objects, "including but not limited to other components of the braking system and/or the tower, landing platform, and/or other fixtures, equipment, or components of the zip-line, at a high rate of speed." (*Id.* at ¶¶ 238–40.)

As a result of her collision, Plaintiff suffered the following injuries: "a type 1 open

7

patellar fracture, traumatic right knee arthrotomy, sprained right ankle, sprained left great toe, multiple bruises, lacerations, and abrasions to her legs and face, and a concussion and traumatic brain injury." (*Id.* at ¶ 243.)  She was also admitted to the local hospital for emergency knee surgery. (*Id.* at ¶ 248.)

4.    The Instant Action

Plaintiff filed her initial Complaint on July 5, 2019 and her First Amended Complaint on July 22, 2019.  (ECF Nos. 1, 9.)  Vail and Bonsai moved to dismiss the First Amended Complaint on October 21, 2019 and October 28, 2019, respectively. (ECF Nos. 56, 61.)

On October 29, 2019, U.S. Magistrate Judge Michael E. Hegarty entered a scheduling order setting various discovery deadlines in this action.  ("Scheduling Order"; ECF No. 62.)  According to the Scheduling Oder, the deadline for amendment of pleadings is "one hundred and eighty (180) days after the resolution of any party's Federal Rule of Civil Procedure 12(b) motion . . . , except amendments to assert any claims for exemplary damages, which shall be governed by Colorado Statute." (*Id.* at 17, ¶ 9(a).)  The deadlines for fact discovery and dispositive motions are July 31 and October 31, 2020, respectively.  (*See id.* at ¶¶ 9(a)-(c).)

On November 12, 2019, Plaintiff filed a motion for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a).  (ECF No. 66.) This motion was granted on January 13, 2020 (ECF No. 129), and Plaintiff filed the Second Amended Complaint on January 24, 2020 (ECF No. 130).  Plaintiff's claims in this pleading include: (1) strict liability by Bonsai ("Claim I"; ECF No. 130 at ¶¶ 277–304); (2) negligence by Bonsai ("Claim II"; *id.* at ¶¶ 305–31); premises liability by

Vail ("Claim III"; *id.* at ¶¶ 332–44); (4) gross negligence by both Vail and Bonsai ("Claim IV"; *id.* at ¶¶ 305–31); and (5) exemplary damages by Vail ("Claim V"; *id.* at ¶¶ 345–355).[1]  Vail filed its Answer and Affirmative Defenses to the Second Amended Complaint on February 7, 2020.  (ECF No. 132.)

5.      Bonsai's Motion to Dismiss and Related Motions to Strike

On February 7, 2020, Bonsai filed its Motion to Dismiss Counts II (negligence) and IV (gross negligence) of the Second Amended Complaint.  (ECF No. 131.)  Plaintiff filed her response to Bonsai's Motion to Dismiss on March 27, 2020 (ECF No. 147), and Bonsai filed its reply on April 10, 2020 (ECF No. 151).

Bonsai attaches a document entitled "Ski Area & Summer Activity Release of Liability, Waiver of Claims, Assumption of Risk & Indemnity Agreement," as Exhibit 1 to its Motion to Dismiss.  ("Waiver"; ECF No. 131-1).  This Waiver, which was purportedly signed by Plaintiff on July 7, 2017, states the following:

> IN CONSIDERATION FOR BEING ALLOWED TO PARTICIPATE IN THE ACTIVITY, I AGREE TO WAIVE ANY AND ALL CLAIMS AGAINST AND TO HOLD HARMLESS, RELEASE, INDEMNIFY, AND AGREE NOT TO SUE the Activity Operator . . . [and] equipment manufacturer . . . FROM ANY AND ALL LIABILITY and/or claims for injury or death to persons or damage to property arising from Activity participation, INCLUDING THOSE INJURIES AND DAMAGES CAUSED BY ANY RELEASED PARTY'S ALLEGED OR ACTUAL NEGLIGENCE (including failure to take reasonable steps to protect against the risks of the Activity).

(ECF No. 131-1 at ¶ 5.)

---

[1]  Plaintiff's request for exemplary damages against Vail was also labeled as Claim IV in the Second Amended Complaint.  However, for purposes of this Order, the Court will reference the claim for exemplary damages as Claim V to avoid confusion with the other Claim IV (gross negligence), which was the subject of Bonsai's Motion to Dismiss.

On March 27, 2020, Plaintiff filed a Motion to Strike Exhibit 1 to Bonsai's Motion to Dismiss or, Alternatively to Convert the Motion to Dismiss to a Motion for Summary Judgment.  (ECF No. 142.)  Bonsai filed its response on April 17, 2020 (ECF No. 157), and Plaintiff filed her reply on May 1, 2020 (ECF No. 161).

On April 21, 2020, Plaintiff filed a "Motion to Strike Certain Portions of Defendant Bonsai Design LLC's Reply in Support of its Rule 12(b)(6) Motion to Dismiss Counts II and IV of the Second Amended Complaint or, Alternatively, for Leave to File Surreply," in which Plaintiff alleges that Bonsai improperly raised an argument for the first time in its reply to its Motion to Dismiss.  (ECF No. 159.)  Bonsai's response and Plaintiff's reply were filed on May 12, 2020 and May 26, 2020, respectively.  (ECF Nos. 163, 166.)

6.      Plaintiff's Motion For Leave to File a Third Amended Complaint and Bonsai's Related Motion to Strike

Plaintiff filed her Motion for Leave to File Third Amended Complaint for the purpose of "supplement[ing her] allegations of gross negligence against [Bonsai]" on March 27, 2020.  (ECF Nos. 143 at 1.)  Vail has represented that it does not oppose this Motion.  (ECF No. 148 at 2.)  Bonsai, however, filed a response opposing Plaintiff's Motion on April 10, 2020 (ECF No. 152), and Plaintiff filed her reply on April 17, 2020 (ECF No. 158).

On April 10, 2020—after Plaintiff filed both her Motion for Leave To File Third Amended Complaint and response to Bonsai's Motion to Dismiss—Bonsai filed a "Motion to Strike References to the Proposed Third Amended Complaint in Plaintiff's Response to Bonsai's Motion to Dismiss Second Amended Complaint."  (ECF No. 153.) Plaintiff filed her response on May 1, 2020 (ECF No. 160) and Bonsai filed its reply in

support of its Motion to Strike on May 15, 2020 (ECF No. 165).

## II. Motion to Dismiss

### A.    Legal Standard on a Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### B.    Claim II—Negligence

Bonsai argues that Plaintiff's negligence claim fails as a matter of law because Plaintiff signed a broad exculpatory agreement that releases Bonsai—as the zip-line

manufacturer—from negligence liability.  In support of its argument, Bonsai attaches the Waiver, which was purportedly signed by Plaintiff on July 7, 2017, as Exhibit 1 to its Motion to Dismiss.

In analyzing whether Plaintiff has alleged a plausible negligence claim, the Court must first determine whether it can consider the Waiver on a Rule 12(b)(6) motion to dismiss.

### 1.    Consideration of the Waiver On a Rule 12(b)(6) Motion to Dismiss

In her Motion to Strike Exhibit 1, Plaintiff argues that the Waiver is outside of the pleadings and should not be considered on a Rule 12(b)(6) motion to dismiss.  (ECF No. 142 at 3.)  However, a court may consider an exhibit attached to a motion to dismiss if "it is mentioned in the complaint, it is central to [the] claims [being challenged], and its authenticity is not disputed."  *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).  Bonsai argues that the outside-the-pleadings nature of this document results from a pleading ploy by Plaintiff, not a true factual dispute, and should be considered by the Court.  (ECF No. 157 at 4.)  The Court agrees.

In her extensive, 68-page Second Amended Complaint, Plaintiff makes no reference to signing a waiver and artfully constructs her pleading to avoid mentioning the role that such waivers play when parties sign up for a zip-line tour.  She does not, however, dispute that she signed a waiver form on July 7, 2017.[2]  Nor does Plaintiff

---

[2] Although the Court is not relying on this information in ruling on the Waiver, the Court notes that Plaintiff admitted in her December 12, 2019 responses to Bonsai's Request for Admission that she "recalls signing one or more documents in connection with her visit to Vail on the date of the subject accident but does not recall the specific printed language of the document(s)" and "admits that one of the signatures appearing on the [Waiver] appears to be a copy of her signature."  (ECF No. 157-1 at 2.)

dispute that she had a copy of the Waiver prior to filing the Second Amended Complaint.[3]  The conspicuous lack of reference to the Waiver seems to be little more than a deliberate tactic to avoid dismissal of Plaintiff's negligence claim.  Thus, although Plaintiff does not mention a waiver in her Complaint, the Court finds that the Waiver should be deemed "mentioned" for purposes of this Rule 12 analysis by its conspicuous absence in this particular circumstance.  *See Kissing Camel Surgery Ctr., LLC v. Centura Health Corp.*, 12-cv-3012, 2016 WL 8416760, at *8 (D. Colo. July 13, 2016).

Moreover, the Court finds that the Waiver is "central to" Plaintiff's negligence claim because the document is intrinsically tied with the claim's merits.  Finally, despite raising a series of vague, hypothetical questions about the Waiver (*see* ECF No. 142 at 5), Plaintiff has in fact asserted nothing that would make the Court doubt the authenticity of the Waiver.  As a signatory to the document, Plaintiff should be able to determine whether the Waiver is authentic. She neither argues that she did not sign the Waiver, nor that its terms have been altered.  The Court, therefore, finds that neither party has challenged the authenticity of the Waiver.

The Court chooses not to exalt form over substance and finds that the Waiver should be considered.  "If the rule were otherwise, a plaintiff [or counterclaimant] with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff [or counterclaimant] relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) (recognizing

---

[3]  A copy of the Waiver was included as an exhibit to Bonsai's previous motion to dismiss the First Amended Complaint.  (ECF No. 61-2.)

that "it would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when the delayed consideration of the remaining documents would lead to dismissal of that claim").  Thus, Plaintiff's Motion to Strike Exhibit 1 (ECF No. 142) is denied, and the Court will turn to whether Plaintiff has adequately stated a negligence claim.

2.    Plaintiff Has Failed to State a Negligence Claim

Colorado law has long disfavored exculpatory agreements and "it is well-established that such agreements cannot 'shield against a claim for willful and wanton conduct, regardless of the circumstances or intent of the parties.'"  *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018) (citing *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 726 (Colo. 2010)).  "But claims of negligence are a different matter.  Colorado common law does not categorically prohibit the enforcement of contracts seeking to release claims of negligence."  *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1152 (10th Cir. 2016).

"The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine."  *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981).  Accordingly, the Colorado Supreme Court has instructed courts to consider the following four factors when determining the enforceability of an exculpatory agreement:  "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language [collectively, the '*Jones* factors']."  *Id*.  An exculpatory agreement "must satisfy all four factors to be enforceable."  *Raup v. Vail Summit Resorts, Inc.*, 734 F. App'x 543, 546 (10th Cir.

14

2018).  The Court will consider each factor in turn.

With regard to the first *Jones* factor—the existence of a duty to the public—Colorado law "distinguishe[s] businesses engaged in recreational activities, which are not practically necessary and with regard to which the provider owes no special duty to the public." *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004) (citing *Jones*, 623 P.2d at 377).  Numerous prior cases have confirmed that exculpatory waivers may be enforced in the context of recreational services and activities because such activities do not involve a duty to the public of a kind that would make enforcement of such contractual waivers against public policy.[4]  Zip-lining, which involves no matter of great public importance, is clearly recreational in nature.  Thus, there is no duty to the public preventing enforcement of the Waiver.

The second *Jones* factor requires consideration of the "nature of the service performed."  *Jones*, 623 P.2d at 376.  This factor involves an assessment of whether the activity can be described as an "essential service," which largely overlaps with the first factor.  *See Hamill v. Cheley Colorado Camps, Inc.*, 262 P.3d 945, 949 (Colo. App. 2011) (analyzing first and second factors together); *Rowan v. Vail Holdings, Inc.,* 31 F. Supp. 2d 889, 897 (D. Colo. 1998) (recognizing that "[t]his factor is linked to the first factor" and that "skiing is not an essential service").  As detailed above, Colorado case law establishes that recreational services are not an "essential service."  Thus, this

---

[4] *See, e.g.*, *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1262 (10th Cir. 2018) (skiing); *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1110 (10th Cir. 2002) (lift-served mountain biking);  *Squires v. Goodwin*, 829 F. Supp. 2d 1062, 1071 (D. Colo. 2011); *Lahey v. Covington*, 964 F. Supp. 1440, 1445 (D. Colo.1996) (whitewater rafting); *Brooks v. Timberline Tours, Inc.*, 941 F. Supp. 959, 962 (D. Colo. 1996) (snowmobiling); *Jones*, 623 P.2d at 376–77 (skydiving).

factor does not bar enforcement of the Waiver.

The third *Jones* factor is "whether the contract was fairly entered into." *Jones*, 623 P.2d at 376. Because zip-lining is "not an essential activity," Plaintiff was not "at the mercy" of Bonsai's negligence when she agreed to the exculpatory contract terms as a condition of zip-lining at Vail. *See Hamill*, 262 P.3d at 949–50; *Mincin*, 308 F.3d at 1111 (because mountain biking was not an essential activity, no inferior bargaining power was identified). Plaintiff was not forced to participate in the zip-line course and was free to "walk away if [she did] not wish to assume the risks described in the exculpatory agreement." *Brigance*, 883 F.3d at 1253–54 (internal quotations omitted).

Finally, the fourth *Jones* factor requires consideration of "whether the intention of the parties is expressed in clear and unambiguous language." *Jones*, 623 P.2d at 376. Courts analyzing this factor will "examin[e] the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions." *Chadwick,* 100 P.3d at 467; *see also Rowan*, 31 F. Supp. 2d at 899 ("If the plain language of the waiver is clear and unambiguous, it is enforced as a matter of law."). After carefully analyzing the Waiver, the Court finds that it was the unambiguous intent of the parties to extinguish liability for negligence. The provisions are not inordinately long (less than a page) or complicated. *See Lahey*, 964 F. Supp. at 1445 (concluding that a release agreement of "just over one page" was "short"). At the top of the page, the Waiver prominently states: "THIS IS A RELEASE OF LIABILITY & WAIVER OF CERTAIN LEGAL RIGHTS INCLUDING THE RIGHT TO SUE OR CLAIM COMPENSATION." (ECF No. 131-1.) It goes on to specifically waive liability stemming from negligence:

16

> IN CONSIDERATION FOR BEING ALLOWED TO
> PARTICIPATE IN THE ACTIVITY, I AGREE TO WAIVE
> ANY AND ALL CLAIMS AGAINST AND TO HOLD
> HARMLESS, RELEASE, INDEMNIFY, AND AGREE NOT
> TO SUE the Activity operator, Vail Resorts, Inc., The Vail
> Corporation, . . . [the] equipment manufacturer . . . FROM
> ANY AND ALL LIABILITY and/or claims for injury or death to
> persons or damage to property arising from Activity
> participation, INCLUDING THOSE INJURIES AND
> DAMAGES CAUSED BY ANY RELEASED PARTY'S
> ALLEGED OR ACTUAL NEGLIGENCE (including failure to
> take reasonable steps to protect against the risks of the
> Activity).

(ECF No. 131-1 at ¶ 5.)  This language cannot reasonably be understood as expressing

anything other than a release from negligence liability.  It is thus beyond dispute that it

was the parties' intention to extinguish liability for claims stemming from negligence and

that this intention was clearly and unambiguously expressed.  The fourth *Jones* factor

does not, therefore, bar enforcement of the Waiver.

The Court finds that all four of the *Jones* factors are satisfied and that the

Waiver's provisions are valid as a matter of law.  *See Anderson v. Eby*, 998 F.2d 858,

862 (10th Cir. 1993) ("If the plain language of the waiver is clear and unambiguous, it is

enforced as a matter of law.").  Based on the foregoing, Plaintiff has failed to allege a

plausible negligence claim.

The Court also finds that further amendments to this claim would be futile in light

of the practical impossibility of stating a plausible negligence claim where there is an

unambiguous waiver of that claim.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213,

1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails

to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."

(citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))).  Accordingly,

17

Plaintiff's simple negligence claim against Bonsai (Claim II) is dismissed with prejudice.

## C.     Claim IV—Gross Negligence

As discussed in Section III below, the Court is granting Plaintiff leave to supplement her gross negligence claim by filing a third amended complaint.  For this reason, the portion of Bonsai's Motion to Dismiss that seeks to dismiss Plaintiff's gross negligence claim is denied as moot.[5]  *See Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("[I]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."  (internal quotation marks omitted)).

### III. Motion For Leave to File Third Amended Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, a court should allow a party to amend its pleadings "when justice so requires."  Fed. R. Civ. P. 15(a).  The purpose of the Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).  "[T]he grant or denial of an opportunity to amend is within the discretion" of the Court, but an "outright refusal to grant the leave without any justifying reason" is an abuse of discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Refusing leave to amend is generally only justified upon a showing of undue

---

[5] In Plaintiff's Motion to Strike Bonsai's Reply, Plaintiff argues that a portion of Bonsai's gross negligence argument should be stricken from its reply brief because it raises that argument for the first time in its reply.  (ECF No. 159 at 2–3.)  Because the Court is granting Plaintiff leave to amend her gross negligence claim, this motion is denied as moot.  Likewise, Bonsai's Motion to Strike References to Third Proposed Amended Complaint (ECF No. 153) is denied as moot for the same reason.

delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Proposed amendments are futile when the amended complaint "would be subject to dismissal for any reason." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001).  "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

In requesting leave to file a third amended complaint, Plaintiff seeks to "supplement allegations of gross negligence against [Bonsai]" based on discovery documents Defendants recently produced.  (ECF Nos. 143 at 1.)  Bonsai, on the other hand, argues that Plaintiff's request should be denied for two primary reasons: (1) Plaintiff's proposed amendments are untimely and are made in bad faith; and (2) the proposed amendments are futile because they do not cure the deficiencies in Plaintiff's gross negligence claim.  The Court disagrees.

The Court acknowledges that this case has been pending for nearly a year and that Plaintiff has already amended her pleading on two prior occasions.  However, despite the passage of time, Bonsai has not shown any prejudice that would result from allowing further amendment of the pleadings.  The alleged facts that Plaintiff seeks to add to her pleadings have already been the subject of the parties' discovery.  Moreover, Plaintiff's proposed amendments come within the time frame contemplated by the Scheduling Order. (*See* ECF No. 57 at 17, ¶ 9(a) (allowing amendment of the pleadings within 180 days "after the resolution of any party's Federal Rule of Civil Procedure 12(b)

motion").)

The Court finds that Plaintiff's delay in seeking leave to amend her gross negligence claim is not the result of undue delay, bad faith, or dilatory motive. Rather, Plaintiff seeks to amend her gross negligence claim to allege additional facts based on documents produced by Defendants. In particular, Plaintiff seeks to add facts suggesting that (1) Bonsai was aware of numerous braking system issues on the Game Creek Zip-Line Course, including a braking malfunction that occurred less than two weeks prior to Plaintiff's accident (*see* ECF No. 143-1 at ¶¶ 67–68, 142–149; 152–156, 165–173); and (2) Bonsai failed to make necessary safety repairs or modifications to the Game Creek Zip-Line Course (*see id.* at ¶¶157–164, 174). These factual allegations address a number of arguments raised by Bonsai in its motion to dismiss. Therefore, the Court finds that amendment of Plaintiff's gross negligence claim serves a legitimate purpose and would not be futile.[6]

Given the liberal policy in favor of amendment and the absence of prejudice to Defendants in this case, the Court finds that Plaintiff should be granted leave to amend her gross negligence claim. However, Plaintiff will not be permitted to amend her simple negligence claim, which has now been dismissed with prejudice. Moreover, because the alleged facts being added to the pleadings have already been the subject of considerable discovery, Plaintiff will not be entitled to use the opportunity to file a

---

[6] The Court need not address Bonsai's argument that Plaintiff's proposed amendments are futile because Bonsai owes no duty to Plaintiff. Even if the Court were to accept Bonsai's argument and deny Plaintiff leave to amend on this basis, Plaintiff's gross negligence claim would still survive Bonsai's motion to dismiss because Bonsai failed to raise this argument in its opening brief. *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

Third Amended Complaint as a basis to extend the current discovery deadlines in the absence of good cause of a compelling, extraordinary nature.  Accordingly, Plaintiff's Motion for Leave to File Third Amended Complaint is granted in part, and Plaintiff is permitted to file a Third Amended Complaint fully consistent with this order by no later than June 15, 2020.

In granting Plaintiff's Motion for Leave to File Third Amended Complaint, the Court is wary of setting off another round of expensive and time-consuming motion practice.  If Plaintiff files a Third Amended Complaint, the Court cannot preclude the Defendants from filing a new round of motions to dismiss one or more of the claims asserted in that Complaint.  It is highly unlikely, however, that any new motions to dismiss will be decided before the upcoming deadlines for fact discovery (July 31, 2020) and dispositive motions (October 31, 2020).  (*See* ECF No. 62 at ¶ 9(a)-(c).)  In these circumstances defense counsel are on notice that any dismissal arguments in all likelihood are better suited for resolution in the context of a motion for summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS the following:

1.  Defendant Bonsai's Motion to Dismiss Counts II and IV of the Second Amended Complaint (ECF No. 131) is GRANTED IN PART AND DENIED IN PART;

2.  Plaintiff's Count II is DISMISSED WITH PREJUDICE;

3.  Plaintiff's Motion to Strike Exhibit 1 to Bonsai's Rule 12(b)(6) Motion to Dismiss Counts II and IV of the Second Amended Complaint or, Alternatively, to Convert the Motion to Dismiss Into a Motion for Summary Judgment (ECF No. 142) is

DENIED;

4.      Plaintiff's Partial Unopposed Motion for Leave to File Third Amended Complaint Pursuant to Fed. R. Civ. P. 15(a) (ECF No. 146) is GRANTED IN PART AND DENIED IN PART;

5.      Plaintiff is granted leave to file a Third Amended Complaint consistent in all respects with this Order on or before **June 15, 2020**;

6.      Defendants shall answer or otherwise respond to Plaintiff's Third Amended Complaint on or before **June 29, 2020**;

7.      Defendant Bonsai's Motion to Strike References to Proposed Third Amended Complaint in Plaintiff's Response to Bonsai's Motion to Dismiss Second Amended Complaint (ECF No. 153) is DENIED AS MOOT; and

8.      Plaintiff's Motion to Strike Certain Portions of Defendant Bonsai Design LLC's Reply in Support of its Rule 12(b)(6) Motion to Dismiss Counts II and IV of the Second Amended Complaint or, Alternatively for Leave to File Surreply (ECF No. 159) is also DENIED AS MOOT;

Dated this 5th day of June, 2020.

BY THE COURT:


William J. Martinez
United States District Judge